**No.26-2581**

# In the United States Court of Appeals
## FOR THE SEVENTH CIRCUIT

AMERICANS FOR CITIZEN VOTING PAC,
PLAINTIFF-APPELLEE,
*v.*
MEAGAN WOLFE, *et al.*,
DEFENDANTS-APPELLEES,

APPEAL OF: WISCONSIN STATE LEGISLATURE,
PROPOSED INTERVENOR

On Appeal From The United States District Court
For The Eastern District of Wisconsin
Case No.2:26-cv-786
The Honorable Lynn Adelman, District Judge

**PRINCIPAL BRIEF AND REQUIRED SHORT APPENDIX OF THE WISCONSIN STATE LEGISLATURE**

CARSON A. COX
TROUTMAN PEPPER LOCKE LLP
1001 Haxall Point, 15th Floor
Richmond, VA 23219
(804) 697-1338
carson.cox@troutman.com

ALEXANDER J. HILL
TROUTMAN PEPPER LOCKE LLP
600 Peachtree St. NE #3000
Atlanta, GA 30308
(404) 885-2763
alex.hill@troutman.com

MISHA TSEYTLIN
*Counsel of Record*
KEVIN M. LEROY
TROUTMAN PEPPER LOCKE LLP
225 W. Randolph St., Suite 2600
Chicago, IL 60606
(608) 999-1240 (MT)
(312) 759-1938 (KL)
(312) 443-0336 (fax)
misha.tseytlin@troutman.com
kevin.leroy@troutman.com

*Counsel for Proposed Intervenor Wisconsin State Legislature*

Save As Clear Form



**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 26-2581

Short Caption: Wisconsin State Legislature v. Wolfe

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Wisconsin State Legislature

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
Troutman Pepper Locke LLP

(3) If the party, amicus or intervenor is a corporation:

i) Identify all its parent corporations, if any; and

ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

---

Attorney's Signature: s/Misha Tseytlin Date: 08/06/2026

Attorney's Printed Name: Misha Tseytlin

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes** ☑ **No** ☐

Address: Troutman Pepper Locke LLP
111 S. Wacker Dr., Suite 4100, Chicago, Illinois 60606

Phone Number: (608) 999-1240 Fax Number: (312) 443-0336

E-Mail Address: misha.tseytlin@troutman.com

Save As Clear Form



**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 26-2581

Short Caption: Wisconsin State Legislature v. Wolfe

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Wisconsin State Legislature

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
Troutman Pepper Locke LLP

(3) If the party, amicus or intervenor is a corporation:

i) Identify all its parent corporations, if any; and

ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

---

Attorney's Signature: s/Kevin M. LeRoy Date: 08/06/2026

Attorney's Printed Name: Kevin M. LeRoy

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes** ☐ **No** ☑

Address: Troutman Pepper Locke LLP
111 S. Wacker Dr., Suite 4100, Chicago, Illinois 60606

Phone Number: (312) 759-1938 Fax Number: (312) 443-0336

E-Mail Address: kevin.leroy@troutman.com

Save As Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 26-2581

Short Caption: Wisconsin State Legislature v. Wolfe

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Wisconsin State Legislature

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
Troutman Pepper Locke LLP

(3) If the party, amicus or intervenor is a corporation:

i) Identify all its parent corporations, if any; and

ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

---

Attorney's Signature: s/Carson A. Cox Date: 08/06/2026

Attorney's Printed Name: Carson A. Cox

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes** ☐ **No** ☑

Address: Troutman Pepper Locke LLP

1001 Haxall Point, Suite 1500, Richmond, Virginia 23219

Phone Number: (678) 315-5148 Fax Number: (804) 697-1339

E-Mail Address: carson.cox@troutman.com

Save As Clear Form



## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 26-2581

Short Caption: Wisconsin State Legislature v. Wolfe

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Wisconsin State Legislature

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
Troutman Pepper Locke LLP

(3) If the party, amicus or intervenor is a corporation:

i) Identify all its parent corporations, if any; and

ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

---

Attorney's Signature: s/Alexander J. Hill Date: 09/09/2026

Attorney's Printed Name: Alexander J. Hill

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes** ☐ **No** ☑

Address: Troutman Pepper Locke LLP

600 Peachtree Street NE; Suite 3000; Atlanta, GA 30308

Phone Number: 404.885.2763 Fax Number: 404.885.3900

E-Mail Address: alex.hill@troutman.com

## TABLE OF CONTENTS

JURISDICTIONAL STATEMENT ........ 1
STATEMENT OF THE ISSUES ........ 3
INTRODUCTION ........ 4
STATEMENT OF THE CASE ........ 6
A. Legal Background ........ 6
B. Factual And Procedural Background ........ 10
SUMMARY OF ARGUMENT ........ 17
STANDARD OF REVIEW ........ 22
ARGUMENT ........ 23
I. The Legislature Is Entitled To Intervene As Of Right Per Rule 24(a)(2) Under *Berger* ........ 23
A. *Berger* Provides Controlling Guidance On How To Analyze The Legislature's Motion To Intervene ........ 23
B. The Legislature Satisfies Each Of Rule 24(a)(2)'s Four Elements ........ 27
1. The Legislature's Intervention Motion Was Timely ........ 27
2. *Berger* Dictates The Conclusion That The Legislature Has An Interest In This Litigation ........ 28
3. This Lawsuit Directly Impairs The Legislature's Interests under *Berger*, Given That Plaintiff Seeks To Invalidate Act 126 ........ 32
4. No Other Party Adequately Represents The Legislature's Interests Under *Berger* ........ 33
C. In Light Of *Berger*, There Was No Reason For the District Court To Entertain The Attorney General's Separation-Of-Powers Arguments, Which Are Meritless In Any Event ........ 40
II. The Legislature Should Have Been Permitted To Intervene Under Rule 24(b)(1)(B), And The District Court Legally Erred In Concluding That The Wisconsin Constitution Somehow Limited The Federal Court's Authority To Grant Permissive Intervention ........ 48
CONCLUSION ........ 54

## TABLE OF AUTHORITIES

**Cases**

*Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*,
576 U.S. 787 (2015) .......... 31

*Berger v. North Carolina State Conference of the NAACP*,
597 U.S. 179 (2022) .......... *passim*

*Bost v. Ill. State Bd. of Elections*,
75 F.4th 682 (7th Cir. 2023) .......... 2, 22, 23

*Bothfeld v. Wis. Elections Comm'n*,
27 N.W.3d 508 (Wis. 2025) .......... 38

*City of Sun Prairie v. Davis*,
595 N.W.2d 635 (Wis. 1999) .......... 54

*Cook Cnty. v. Texas*,
37 F.4th 1335 (7th Cir. 2022) .......... 27, 32

*Crawford v. Marion Cnty. Election Bd.*,
553 U.S. 181 (2008) .......... 31

*Democratic Nat'l Comm. v. Bostelmann*,
451 F. Supp. 3d 952 (W.D. Wis. 2020) .......... 38

*Democratic Nat'l Comm. v. Bostelmann*,
949 N.W.2d 423 (Wis. 2020) .......... 30, 31

*Democratic Nat'l Comm. v. Bostelmann*,
976 F.3d 764 (7th Cir. 2020) .......... 30

*Democratic Nat'l Comm. v. Bostelmann*,
977 F.3d 639 (7th Cir. 2020) .......... 28, 30, 31

*Disability Rts. Wis. v. Wis. Elections Comm'n*,
20 N.W.3d 790 (Wis. Ct. App. 2025) .......... 38, 39

*Disability Rts. Wis. v. Wis. Elections Comm'n*,
No.2024AP1347, 2025 WL1805851 (Wis. Ct. App. July 1, 2025) .......... 39

*Disability Rts. Wis. v. Wis. Elections Comm'n*,
No.2026AP535 (Wis. Aug. 26, 2026) .......... 39

*Disability Rts. Wis. v. Wis. Elections Comm'n*,
No.2026AP535 (Wis. Sept. 9, 2026) .......... 39

*Disability Rts. Wis. v. Wis. Elections Comm'n*,
No.24CV1141 (Wis. Cir. Ct. Dane Cnty. Jan. 26, 2026) .......... 16

*Driftless Area Land Conservancy v. Huebsch*,
969 F.3d 742 (7th Cir. 2020) .......... *passim*

*Eu v. S.F. Cnty. Democratic Cent. Comm.*,
489 U.S. 214 (1989) ........................................ 31

*Evers v. Marklein*,
22 N.W.3d 789 (Wis. 2025) ........................................ 44

*Evers v. Marklein*,
8 N.W.3d 395 (Wis. 2024) ........................................ *passim*

*Frami v. Ponto*,
255 F. Supp. 2d 962 (W.D. Wis. 2003) ........................................ 8, 10, 37

*Gabler v. Crime Victims Rts. Bd.*,
897 N.W.2d 384 (Wis. 2017) ........................................ 43, 49

*Hollingsworth v. Perry*,
570 U.S. 693 (2013) ........................................ 28, 31

*Illinois v. City of Chicago*,
912 F.3d 979 (7th Cir. 2019) ........................................ 2, 27

*INS v. Chadha*,
462 U.S. 919 (1983) ........................................ 46

*Kaul v. Wis. State Legislature*,
21 N.W.3d 513 (Wis. 2025) ........................................ 43, 47, 48

*Krislov v. Rednour*,
226 F.3d 851 (7th Cir. 2000) ........................................ 37

*League of Women Voters of Wis. v. Evers*,
929 N.W.2d 209 (Wis. 2019) ........................................ 44

*Liebert v. Millis*,
733 F. Supp. 3d 698 (W.D. Wis. 2024) ........................................ 51, 52

*Liebert v. Wis. Elections Comm'n*,
345 F.R.D. 169 (W.D. Wis. 2023) ........................................ 15, 51

*Liebert v. Wis. Elections Comm'n*,
No.23-cv-672 (W.D. Wis. Nov. 6, 2023) ........................................ 51

*Lopez-Aguilar v. Marion Cnty. Sheriff's Dep't*,
924 F.3d 375 (7th Cir. 2019) ........................................ 28, 31, 33

*Luft v. Evers*,
963 F.3d 665 (7th Cir. 2020) ........................................ 11, 20, 36, 37

*Marbury v. Madison*,
5 U.S. (1 Cranch) 137 (1803) ........................................ 45, 49, 50

*Meridian Homes Corp. v. Nicholas W. Prassas & Co.*,
683 F.2d 201 (7th Cir. 1982) ........................................ 28

*Minneapolis, St. P. & Sault Ste. Marie Ry. Co. v. R.R. Comm'n of Wis.*,
116 N.W. 905 (Wis. 1908) ........ 44

*Planned Parenthood of Wisconsin, Inc. v. Kaul*,
942 F.3d 793 (7th Cir. 2019) ........ 20, 42

*Rise, Inc. v. Wis. Elections Comm'n*,
11 N.W.3d 241 (Wis. Ct. App. 2024) ........ 39

*Sec. Ins. Co. of Hartford v. Schipporeit, Inc.*,
69 F.3d 1377 (7th Cir. 1995) ........ 48, 50

*Service Emps. Int'l Union, Loc. 1 v. Vos*,
946 N.W.2d 35 (Wis. 2020) ........ 44, 46, 47, 48

*Shelby Cnty. v. Holder*,
570 U.S. 529 (2013) ........ 53

*Sosebee v. Astrue*,
494 F.3d 583 (7th Cir. 2007) ........ 23

*State ex rel. Bilder v. Delavan Twp.*,
334 N.W.2d 252 (Wis. 1983) ........ 54

*Tetra Tech EC, Inc. v. Wis. Dep't of Revenue*,
914 N.W.2d 21 (Wis. 2018) ........ 54

*Tsareff v. ManWeb Servs., Inc.*,
794 F.3d 841 (7th Cir. 2015) ........ 23

*Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*,
834 F.3d 562 (5th Cir. 2016) ........ 53

*Williams v. Katz*,
23 F.3d 190 (7th Cir. 1994) ........ 22, 48, 53

**Constitutions**

U.S. Const. art. I, § 8 ........ 44

U.S. Const. art. II, § 3 ........ 44

U.S. Const. art. VI ........ 52

Wis. Const. art. III, § 2 ........ 31, 32, 33

Wis. Const. art. IV, § 17 ........ 31

**Statutes And Rules**

28 U.S.C. § 1291 ........ 2

28 U.S.C. § 1331 ........ 1

28 U.S.C. § 2071 ........ 22, 50, 52

28 U.S.C. § 2072 ........ 48, 53

28 U.S.C. § 2077 .......... 22
42 U.S.C. § 1983 .......... 1
2005 Wis. Act 451 .......... 8
2025 Wis. Act 126 .......... 1, 9, 10, 31
7th Cir. R. 3 .......... 1
7th Cir. R. 28 .......... 1, 2
Fed. R. App. P. 4 .......... 2
Fed. R. Civ. P. 24 .......... *passim*
N.C. Gen. Stat. § 120–32.6 .......... 27
Wis. Stat. § 5.05 .......... 6
Wis. Stat. § 6.02 .......... 10, 37
Wis. Stat. § 8.01 .......... 6
Wis. Stat. § 8.07 .......... 6
Wis. Stat. § 8.10 .......... 7, 9, 10
Wis. Stat. § 8.15 .......... 6, 7, 8, 9
Wis. Stat. § 8.16 .......... 6, 7, 37
Wis. Stat. § 8.20 .......... 9, 10
Wis. Stat. § 8.40 .......... 8, 10
Wis. Stat. § 9.10 .......... 10
Wis. Stat. § 13.365 .......... 29, 33
Wis. Stat. § 803.09 .......... *passim*

**Other Authorities**

J.R. Ross, Elections Commission Recommends Charges Against 13 Involved In Failed Vos Recall, State Affairs, (Feb. 27, 2026) .......... 9
Oxford English Dictionary (J.A. Simpson & E.S.C. Weiner, eds., 2d ed. 1989) .. 45, 46
Rep. Jim Piwowarczyk, *Testimony Before The Assembly Comm. On Campaign And Elections* (June 3, 2025) .......... 9
WEC, *Candidate Ballot Access Procedures: Nomination Papers* (Oct. 2023) .......... 6, 7
WEC, *Letter Re: Robin Vos v. Matthew Snorek et al (EL-2450)* (Feb. 27, 2026) .......... 9

## JURISDICTIONAL STATEMENT

Proposed Intervenor the Wisconsin State Legislature ("Legislature"), a proposed Intervenor-Defendant in the District Court below, submits the following jurisdictional statement. *See* Seventh Circuit Rules ("Cir. R.") 3(c)(1), 28(a).

The District Court had jurisdiction over this action under 28 U.S.C. § 1331. Cir. R. 28 (a)(1). On April 29, 2026, Plaintiff filed this action for injunctive relief against Defendants pursuant to 42 U.S.C. § 1983 in Wisconsin's Waukesha County Circuit Court, seeking to enjoin Defendants' enforcement of 2025 Wisconsin Act 126 ("Act 126") on First Amendment grounds. App.1–13.[1] Defendants then removed this case to the U.S. District Court for the Eastern District of Wisconsin, Milwaukee Division, pursuant to 28 U.S.C. §§ 1441(a) and 1446, filing their Notice Of Removal on May 4, 2026. R.1. Removal was proper because the District Court has federal-question jurisdiction over this case under 28 U.S.C. § 1331, given that Plaintiff asserts pursuant to 42 U.S.C. § 1983 that Act 126 violates the First Amendment, R.1-1 at 11, and because Defendants timely filed their Notice Of Removal within 30 days of the filing of the Complaint, R.1; 28 U.S.C. § 1446. On May 13, 2026, the Legislature moved to intervene as a defendant in the District Court under Federal Rule of Civil Procedure 24(a)(2) and 24(b)(1)(B). R.19; App.77–102. The District Court denied the Legislature's intervention motion with an Order issued on July 14, 2026. SA.1–17.

---

[1] Citations of "R.___" refer to docket entries in the District Court. Citations of "Dkt.___" refer to this Court's docket. Citations of "SA.___" refer to the required Short Appendix, included with this Principal Brief. Citations of "App.___" refer to the Separate Appendix filed with this Principal Brief.

This Court has jurisdiction over this appeal under 28 U.S.C. § 1291. Cir. R. 28 (a)(2). The District Court's July 14, 2026 Order denying the Legislature's Motion To Intervene is a final order that is immediately appealable as of right by the Legislature. *See, e.g.*, *Bost v. Ill. State Bd. of Elections*, 75 F.4th 682, 686 (7th Cir. 2023); *Driftless Area Land Conservancy v. Huebsch*, 969 F.3d 742, 745–46 (7th Cir. 2020); *Illinois v. City of Chicago*, 912 F.3d 979, 984 (7th Cir. 2019). That is "[b]ecause denial of a motion to intervene essentially ends the litigation for the movant," meaning that "such orders are final and appealable" immediately as of right upon entry. *Bost*, 75 F.4th at 686. Further, the Legislature timely filed its Notice Of Appeal on July 30, 2026, R.32, which is within 30 days of the District Court's July 14, 2026 Order denying the Legislature's intervention motion, Fed. R. App. P. 4(a)(1)(A); Cir. R. 28 (a)(2)(iv). No party filed any motion that tolled the date or time within which to appeal, Cir. R. 28(a)(2)(ii)–(iii); there are no prior or related appellate-court proceedings with respect to this case; and this case is not a direct appeal from the decision of a magistrate judge, Cir. R. 28(a)(2)(v).

**STATEMENT OF THE ISSUES**

1. Whether the District Court legally erred in denying the Legislature's Motion To Intervene as of right under Federal Rule of Civil Procedure 24(a)(2), in light of *Berger v. North Carolina State Conference of the NAACP*, 597 U.S. 179 (2022).

2. Alternatively, whether the District Court legally erred in denying the Legislature permissive intervention under Federal Rule of Civil Procedure 24(b)(1)(B), where the District Court's rationale rested upon the view that its understanding of state separation-of-powers principles can limit a federal court's permissive-intervention authority.

## INTRODUCTION

The Legislature sought to intervene as a defendant below to defend the constitutionality of one of its duly enacted election-related laws. In *Berger v. North Carolina State Conference of the NAACP*, 597 U.S. 179 (2022), the United States Supreme Court held in an 8-1 decision that States may empower "duly authorized representatives" like legislatures to represent their interests "in federal litigation challenging state law" and, when States do so, federal courts should "greet[ ]" the "State's chosen representatives . . . with respect" by granting intervention. *Id.* at 191–92, 197. *Berger* should have made the intervention issue in this case an easy one. Wisconsin has statutorily authorized the Legislature to defend its interests in the validity of state law in court through Wis. Stat. § 803.09(2m); this case falls within that statute's scope given that Plaintiff challenges a state law; and no other relevant Rule 24(a)(2) considerations not at issue in *Berger*—such as untimeliness—justified denying intervention.

But the District Court denied the Legislature's intervention motion, without regard to *Berger*, instead launching into an as-applied state-constitutional analysis of Section 803.09(2m). In the District Court's view, granting the Legislature intervention here would violate the Wisconsin Constitution's separation-of-powers principles. In reaching that conclusion, the District Court relied only upon general separation-of-powers principles common to all States and the Federal Government, not upon anything unique about Wisconsin's Constitution. The District Court's decision is thus an impermissible circumvention of *Berger*, rendering the Supreme

Court's holding a nullity in any State with standard separation-of-powers principles like Wisconsin—which is to say, all States. That is the opposite of the "respect" to authorized state agents that *Berger* commanded federal courts to show.

Alternatively, the District Court should have granted the Legislature permissive intervention under Rule 24(b)(1)(B), including to avoid what it (incorrectly) viewed as a serious constitutional question as to Section 803.09(2m). The Legislature indisputably satisfied the only two requirements of Rule 24(b)(1)(B)—it timely moved for intervention and has a claim or defense that shares common questions of law or fact with the main action—and all other factors support permissive intervention as well. In holding otherwise, the District Court's sole rationale was that *any* intervention by the Legislature, even permissive intervention, would violate the Wisconsin Constitution. While the District Court is wrong about the Wisconsin Constitution, that is ultimately beside the point on this issue. The Rules Enabling Act authorized the Supreme Court to adopt the permissive-intervention rule. *See* Fed. R. Civ. P. 24(b). Under the Supremacy Clause, the District Court's (erroneous) understanding of the Wisconsin Constitution cannot take away the authority that federal law gives to district courts.

This Court should reverse the order of the District Court and remand with instructions to the District Court to grant the Legislature's Motion To Intervene.

## STATEMENT OF THE CASE

### A. Legal Background

The Legislature has enacted multiple laws for Wisconsin governing the procedure to nominate candidates for elective office and how such candidates may obtain access to the ballot. *See generally* Wis. Stat. §§ 8.01 *et seq.* These statutory provisions require candidates to, among other things, submit "four primary documents" by a set deadline prior to an election in order "to gain a place on the ballot," as the Wisconsin Elections Commission ("WEC") has summarized in its administrative guidance. *See* WEC, *Candidate Ballot Access Procedures: Nomination Papers* at 3 (Oct. 2023);[2] Wis. Stat. §§ 8.15, 8.16. WEC is a state agency responsible for administering statewide elections in Wisconsin, Wis. Stat. § 5.05(1), including by "promulgat[ing] rules . . . for use by election officials in determining the validity of nomination papers and signatures thereon," *id.* § 8.07.

As relevant here, the primary documents that a candidate must submit to obtain access to the ballot include nomination papers. WEC, *Candidate Ballot Access Procedures*, *supra*, at 3; *see* Wis. Stat. §§ 8.15, 8.16. Candidates complete nomination papers by "circulat[ing] signature petitions and collect[ing] a specific number of signatures, as required by law, from qualified electors residing in the jurisdiction or district [the candidates] wish to serve." WEC, *Candidate Ballot Access Procedures*, *supra*, at 3; *see* Wis. Stat. §§ 8.15, 8.16. The minimum number of required signatures

---

[2] Available at https://elections.wi.gov/sites/default/files/documents/Ballot%20Access%20Manual%20Oct%202023.pdf. (all webpages last accessed Sept. 9, 2026).

for nomination papers varies from 200 to 4,000, depending on the office for which a candidate is seeking to run (*i.e.*, municipal, State, or federal, and either district-specific or statewide). *See* WEC, *Candidate Ballot Access Procedures*, *supra*, at 3–4; Wis. Stat. §§ 8.15, 8.16. The period of circulation to collect those signatures for spring elections begins December 1 and ends the first Tuesday in January the following year. *See* WEC, *Candidate Ballot Access Procedures, supra*, at 3 (citing Wis. Stat. §§ 8.10(2), (3), 8.15(6)). The circulation period for fall elections begins April 15 and ends June 1 of the same year. *Id.*

Several statutory requirements apply to qualified electors and circulators. The electors who sign a candidate's nomination papers must "complete their portion of the nomination papers by providing their signature, printed name, residential address, municipality of residence, and the date on which they signed." *Id.* at 6; *see* Wis. Stat. § 8.15(2). The "circulator," who is "the person responsible for [the nomination papers'] circulation," must "closely observe the signing process to ensure that each elector correctly provides all required information," must personally circulate the papers, must personally witness each qualified elector's signature, and must personally sign and "complete a certification for each page they circulate." WEC, *Candidate Ballot Access Procedures, supra*, at 6; *see* Wis. Stat. § 8.15(4)(a). The circulator's certification requires the circulator to provide his or her name; address; the date; and signature. WEC, *Candidate Ballot Access Procedures*, *supra*, at 6; *see* Wis. Stat. § 8.15(4)(a).

While candidates may circulate their own nomination papers, they may also use "qualified circulator[s]" to collect signatures, as defined in Wis. Stat. § 8.15(4)(a). *See* WEC, *Candidate Ballot Access Procedures, supra*, at 6–7. Between 2001 and March 2026, the since-amended 2001 version of Section 8.15(4)(a) governed who were qualified circulators. That prior version of Section 8.15(4)(a) provided that a "qualified circulator" of a nomination paper must "reside[ ] within the district which the candidate named therein will represent, if elected" and must be either "the candidate [himself or herself] or any qualified elector." Wis. Stat. § 8.15(4)(a) (2001).

In 2003, the U.S. District Court for the Western District of Wisconsin held that the 2001 version of Section 8.15(4)(a) violated the First Amendment "to the extent it prevents Wisconsin residents from circulating nomination papers outside the political subdivision in which they reside and to the extent it prevents persons who reside outside of Wisconsin from circulating nomination papers on behalf of Wisconsin candidates." *Frami v. Ponto*, 255 F. Supp. 2d 962, 971 (W.D. Wis. 2003).

The Legislature amended Section 8.15(4)(a) in response, with 2005 Wisconsin Act 451. Act 451 "remove[d] the residency requirement by providing that a circulator of a nomination paper or petition must be a qualified elector of this state or a U.S. citizen age 18 or over who, if he or she were a resident of the state, would not [otherwise] be disqualified from voting." 2005 Wis. Act 451 (Joint Legislative Council Prefatory Note) (codified at Wis. Stat. §§ 8.15(4)(a), 8.40(2)).

Following the 2005 amendment to Section 8.15(4)(a), Wisconsin experienced increased fraud among circulators of nomination papers who were from other States.

This continued into 2024, when Wisconsin saw out-of-state election fraud during a recall attempt of Wisconsin Assembly Speaker Robin Vos. R.15 at ¶¶ 46–50. In that recall attempt, "[r]oughly two-thirds of the individuals who circulated recall petitions were from out of state," and these collection efforts yielded "allegedly forged signatures" and "duplicate and questionable signatures." Rep. Jim Piwowarczyk, *Testimony Before The Assembly Comm. On Campaign And Elections* (June 3, 2025);[3] *see* App.84. WEC received a verified complaint related to this fraud and found probable cause that multiple out-of-state circulators had falsified signatures on recall petitions that they had circulated or had falsified their residential addresses. App.84. WEC referred the matter for criminal prosecution in early 2026. WEC, *Letter Re: Robin Vos v. Matthew Snorek et al (EL-2450)* (Feb. 27, 2026);[4] *see also* R.15-3.

This experience led the Legislature in 2026 to again revise the circulator-qualification law, through Act 126. *See* 2025 Wis. Act 126;[5] Act Memo, Wis. Legis. Counsel (Mar. 30, 2026).[6] Act 126 requires any qualified circulator of nomination papers to be "a qualified elector of this state," 2025 Wis. Act 126; *see* Wis. Stat. §§ 8.10(3), 8.15(4)(a), 8.20(3), rather than simply either a qualified elector or "a U.S.

[3] Available at https://docs.legis.wisconsin.gov/misc/lc/hearing_testimony_and_materials/2025/ab223/ab0223_2025_06_03.pdf.

[4] *See* J.R. Ross, Elections Commission Recommends Charges Against 13 Involved In Failed Vos Recall, State Affairs, (Feb. 27, 2026), available at https://pro.stateaffairs.com/wi/news/elections-commission-recommends-charges-against-13-involved-in-failed-vos-recall (linking to letter).

[5] Available at https://docs.legis.wisconsin.gov/2025/related/acts/126.

[6] Available at https://docs.legis.wisconsin.gov/2025/related/lcactmemo/act126.pdf.

citizen age 18 or older who, if he or she were a resident of this state, would not be disqualified from voting" under the prior 2005 version of the law, *supra* p.8. In Wisconsin, a "qualified elector" is any "U.S. citizen age 18 or older who has resided in an election district or ward for 28 consecutive days before any election where the citizen offers to vote" and need not actually be registered to vote. Wis. Stat. § 6.02(1); *Frami*, 255 F. Supp. 2d at 965. Act 126 also requires circulators to certify that they are qualified electors and attach such certification to any submitted nomination paper. Wis. Stat. §§ 8.10(3), 8.15(4)(a), 8.20(3). The requirements apply to circulators of "a recall petition" as well, *id.* § 8.40(2)(a)–(b); *id.* § 9.10, but *not* to circulators of other types of petitions, such as recount petitions, *see id.* § 9.01; 2025 Wis. Act 126, or to the circulators of nomination papers "for candidates for the offices of president and vice president." Wis. Stat. § 8.20(3); 2025 Wis. Act 126. Finally, any nomination papers submitted by a "[non-]qualified elector" are invalid under Act 126. Wis. Stat. § 9.10(2)(em)2.

### B. Factual And Procedural Background

1. On April 29, 2026—during the recent circulation period for the Fall 2026 General Election—Plaintiff filed its Complaint in state trial court, challenging Act 126 as a violation of the First Amendment (as incorporated by the Fourteenth Amendment) and naming WEC's Administrator and Commissioners, in their official capacities, as defendants (hereinafter "Defendants" or "Attorney General"). App.5–13. Plaintiff is a federal political-action committee with a principal place of business in Fairfax, Virginia. App.7. The Complaint alleges that Plaintiff "wants to work with

out-of-state residents seeking to collect nomination signatures in Wisconsin" but is prevented from doing so by Act 126. App.7. The Complaint then claims that Act 126's "residency requirements" violate Plaintiff's First Amendment rights by "unlawfully restrict[ing] core political speech and associational rights." App.6. Plaintiff requested "immediate temporary relief" against Act 126 as to the August 11, 2026 Partisan Primary and the November 3, 2026 General Election, App.7, a declaration that Act 126's residency requirements are unconstitutional, and an injunction prohibiting Defendants from administering Act 126, App.12–13.

2. On May 4, 2026, Defendants removed the case to the District Court for the Eastern District of Wisconsin. App.1–4. That same day, Plaintiff filed a Motion For Temporary Restraining Order and a Motion For Preliminary Injunction, seeking to temporarily enjoin Act 126 while the District Court "considers Plaintiff's request for a preliminary injunction for the pendency of this action." App.35. The District Court set May 8, 2026, as the deadline to respond to Plaintiff's Motion. R.8. On that date, the Legislature filed a letter with the District Court explaining its intent to intervene as a defendant to defend Act 126; asking the District Court to deny Plaintiff's request for a temporary-restraining order; and briefly explaining that the *Anderson/Burdick* balancing framework, as substantially clarified and narrowed by this Court in *Luft v. Evers*, 963 F.3d 665 (7th Cir. 2020), governed Plaintiff's First Amendment claim against Act 126. R.13. Defendants also filed their Opposition To Plaintiff's Motion For Temporary Restraining Order Or Preliminary Injunction that same day. App.37–69; R.15. Unlike the Legislature, Defendants did not invoke *Luft* but instead rested their

arguments on pre-*Luft* decisions that are far friendlier to challenges to election-related laws. *See* App.46–69; *see also* App.95.

On May 12, 2026, the District Court denied Plaintiff's Motion For Temporary Restraining Order primarily because "the balance of equities weighs in favor of preserving the status quo" and because "changing the rules now could create significant confusion among circulators, candidates, people wishing to file challenges, and election administrators themselves." App.72–73. The District Court then scheduled a status conference on May 14, 2026, to set the briefing schedule on Plaintiff's pending preliminary-injunction motion. App.76. Plaintiff ultimately withdrew that motion and instead disclosed its continued interest in challenging Act 126 for the upcoming 2027 Spring Election. App.103.

3. The Legislature moved to intervene as a Defendant on May 13, both as of right under Rule 24(a)(2) and permissively under Rule 24(b)(1)(B). App.77–100.

The Legislature explained that it was entitled to intervene under Rule 24(a)(2) because it satisfied all four elements for intervention as of right. App.87–97.

First, the Legislature's Motion was timely because the Legislature had filed it less than a month after Plaintiff filed its Complaint. App.88–89.

Second, the Legislature has an interest in the litigation because Wisconsin has authorized it to intervene in state and federal court as an agent of the State under Section 803.09(2m) to defend the State's interests in the validity of state law in light of *Berger*. App.89–92. The Legislature also has a separate and distinct interest in its

own power to enact suffrage laws for the State, as expressly provided in the Wisconsin Constitution. App.91–92.

Third, this lawsuit could directly impair the Legislature's interests. App.92. Plaintiff seeks to invalidate Act 126's "qualified elector" residency requirement for circulators, and a grant of such relief would impair the Legislature's interests in the validity of state law as an agent of the State as well as its own interest in its suffrage-law-making power. App.92.

Fourth, Defendants do not adequately represent the Legislature's interests for multiple independently sufficient reasons. App.93–97. To begin, *Berger*'s binding holding alone decides the adequacy-of-representation issue in favor of the Legislature, as Wisconsin has chosen the Legislature as its agent to defend state law in court, and *Berger* directs federal courts to respect that choice. App.94–95. Further, and independently sufficient, the Legislature intended to invoke merits arguments in defense of Act 126 that Defendants would not pursue. App.95–96. Specifically, the Legislature explained that it intended to argue that this Court's recent decision in *Luft* supplies the controlling articulation of the *Anderson*/*Burdick* framework that governs Plaintiff's claim and that *Luft* subjects Act 126 to less rigorous scrutiny than the pre-*Luft* caselaw that the Attorney General relies upon. *See* App.95–96. Finally, Defendants have an inconsistent history of defending state election law in court, including by refusing to defend some election laws or by defending others but then not appealing when a trial court issues an injunction against those laws, further

demonstrating that they do not adequately represent the Legislature's interests here. App.96–97.

As for permissive intervention under Rule 24(b)(1)(B), the Legislature explained that its Motion was timely; that it had a claim or defense that shared common questions with the main action; and that permissive intervention was otherwise appropriate, including because of the genuine concern that the Attorney General would not defend the laws robustly here. App.98–100.

Defendants opposed the Legislature's intervention motion. App.108–32. Defendants argued that the Legislature's intervention to defend Act 126 would violate the Wisconsin Constitution's separation-of-powers doctrine, as applied to this case. App.112–31. Defendants further argued that the Legislature had no interest for mandatory-intervention purposes where the Attorney General was already defending a challenged law at issue, App.126–27, and that the Legislature had not shown that Defendants were inadequate representatives. App.128–29. That said, Defendants did not offer a coherent response to the Legislature's point that Defendants have a history of inconsistently defending or not defending state election law in court. *See* App.129. Finally, Defendants argued that permissive intervention was not appropriate, App.130–31, because "adding additional defendants with the same goals would only complicate the litigation," App.131.[7]

[7] Plaintiff, for its part, did not take a position on the Legislature's Motion, although it did object to the Legislature's characterization of *Berger*. App.104–07.

The Legislature addressed Defendants' arguments in its reply. App.133–48. Defendants' separation-of-powers argument would render *Berger* a nullity, as Defendants relied upon only general separation-of-powers principles that would apply to any State with a legislative branch and an executive branch. App.137–39. Further, any state-constitutional issues would not affect the Court's authority to grant permissive intervention, including because the Supremacy Clause makes the federal inquiry supreme over any state-law concerns. App.146–48. Finally, and relatedly, the Legislature also explained that the District Court could avoid the separation-of-powers issue presented by Defendants' Opposition by granting permissive intervention, like the district court in *Liebert v. Wisconsin Elections Commission*, 345 F.R.D. 169 (W.D. Wis. 2023), had done. App.145–48.

4. On July 14, 2026, the District Court issued its Order denying the Legislature's intervention motion, both as of right and permissively. SA.1–17.

The District Court's mandatory-intervention denial rested solely on the interest and adequacy-of-representation elements. SA.3–15.

As for the interest element, the District Court first acknowledged that Section 803.09(2m) facially "permit[s] the legislature to intervene any time a statute is challenged on the basis of the federal or state constitutions." SA.4. This did not give the Legislature an interest in the defense of state law as an agent of the State because, in the District Court's view, Section 803.09(2m) violates the Wisconsin Constitution's separation-of-powers principles, "as applied to the facts of this case." SA.4, 7. The District Court also rejected the Legislature's claim to its own

independent interest in defending the efficacy of its suffrage-law-making authority, concluding that, "even if [Act 126] is found unconstitutional, the legislature may continue to make laws, even very similar laws." SA.10–11.

As for the adequacy element, the District Court held that Defendants were adequate representatives. SA.12–14. The District Court concluded that Defendants had mounted a vigorous defense of Act 126 up to that point, *see* SA.12–14, notwithstanding their failure to include "a discussion of *Luft*" in their filings thus far, SA.14. The District Court also noted that nothing indicates that Defendants intend to "throw the case here," although the Legislature had cited Defendants "previous actions in other cases." SA.13–14 (citations omitted). The District Court then opined that the Legislature has engaged in "frequent intervention in lawsuits" that "suggests that it either doesn't pay any attention to the adequacy of the attorney general's performance or that it presumes such performance is inadequate." SA.15. Thus, the District Court concluded, the Legislature's "view appears to be that it has a right to intervene any time a law is challenged on constitutional grounds," but "a state statute simply cannot grant an automatic right to intervention." SA.15. The District Court did not discuss the *Berger* majority in its adequacy discussion but did favorably cite Justice Sotomayor's dissent. SA.14 (citing *Berger*, 597 U.S. at 211–12 (Sotomayor, J., dissenting)).[8]

[8] The District Court also cited for support the decision of Wisconsin's Dane County Circuit Court in *Disability Rights Wisconsin ("DRW") v. Wis. Elections Comm'n*, No.24CV1141 (Wis. Cir. Ct. Dane Cnty. Jan. 26, 2026), a case involving WEC, WEC's

The District Court then denied the Legislature permissive intervention under the same separation-of-powers theory. SA.15–16. The District Court did not address the Legislature's argument that permissive intervention flows from federal law, so any alleged Wisconsin separation-of-powers issue would not constrain this Court's permissive-intervention authority under the Supremacy Clause. *Compare* App.135, 145–48, *with* SA.15–16. The District Court also did not address Defendants' argument that the Legislature's participation would impose practical difficulties or additional burdens in this case. *Compare* App.100, *with* SA.15–16.

5. After the District Court denied the Legislature's Motion, the Legislature appealed to this Court. R.32. Meanwhile, Defendants filed their Answer on July 28, 2026. R.30. Plaintiff has also informed the District Court that it intends to challenge Act 126 prior to December 1, 2026, when the next signature-gathering window opens for the 2027 Spring Election. R.38 at 2. Consequently, the Court set a summary-judgment schedule from September to November 2026, R.40 at 1–2, and Plaintiff filed its Motion For Summary Judgment on September 1, 2026, *see* R.41; R.42.

## SUMMARY OF ARGUMENT

I. The Legislature is entitled to intervene as of right under Rule 24(a)(2), especially in light of the Supreme Court's decision in *Berger*.

---

administrator, WEC's commissioners, and the Legislature. SA.9–10. The Court there also held that the Legislature's intervention under Section 803.09(2m) and Wis. Stat. § 803.09(1) violated the Wisconsin Constitution's separation-of-powers doctrine. SA.9–10; *see* R.26-1; *see also infra* p.39 n.9 (further discussing *DRW*).

A. *Berger* explained how federal courts are to analyze the interest, impairment-of-interest, and adequacy-of-representation elements of Rule 24(a) when considering an intervention motion from a state legislature authorized to defend state law. *See Berger*, 597 U.S. at 191–98. Regarding the interest element, *Berger* held that States possess a legitimate interest in the continued enforcement of their own statutes; that they may authorize their state legislatures as their agents to defend state law in court; and that such state authorizations establish a Rule 24(a) interest. *Id.* at 191–92. For the impairment-of-interest element, *Berger* held that "federal courts should rarely question that a State's interests will be practically impaired or impeded if its duly authorized representatives are excluded from participating in federal litigation challenging state law." *Id.* at 191. Finally, for the adequacy-of-representation element, *Berger* held that a presumption of adequacy was inappropriate when a duly authorized state agent seeks to intervene to defend a state law and that such agents bear only a "minimal" burden to demonstrate inadequacy of representation rather than some higher hurdle. *Id.* at 195–96. *Berger* then applied these principles to hold that state legislative leaders were entitled to intervene to defend a challenged voter-ID law because the State had expressly authorized them by statute to defend the State's interests in such litigation, bringing a "distinct state interest" to the case even though the state attorney general had already appeared. *Id.* at 199–200.

B. The Legislature satisfies each of Rule 24(a)(2)'s four elements in light of *Berger*, entitling it to intervene as of right.

1. The Legislature's intervention motion was timely because it moved to intervene less than a month after Plaintiff filed its Complaint.

2. The Legislature has an interest in this litigation under *Berger*, given that Plaintiff challenges the constitutionality of Act 126. Section 803.09(2m) authorizes the Legislature to litigate on the State's behalf in defense of state law in court. This statute embodies Wisconsin's sovereign choice to authorize its Legislature to litigate on its behalf in defense of state law, as *Berger* allows, and so gives the Legislature an interest under Rule 24(a). In addition, and independently sufficient, the Legislature also has its own interest in defending Act 126 given its own state-constitutional power to pass suffrage laws for Wisconsin.

3. This lawsuit directly impairs the Legislature's interests under *Berger*, as Plaintiff seeks an order declaring Act 126 unconstitutional and enjoining its enforcement.

4. Finally, *Berger* dictates the conclusion that no other party here adequately represents the Legislature's interests. Plaintiff does not represent the Legislature's interests because it is adverse to the Legislature. Further, Defendants cannot represent the Legislature's interests, as *Berger* holds that federal courts must respect States' sovereign choices of agents to defend their laws in federal court, not presume that other agents will adequately represent the State. Thus, the District Court here should have respected Wisconsin's choice of agent in Section 803.09(2m). In any event, the Legislature has shown that Defendants' representation in this case is inadequate given that the Legislature intends to raise a robust defense of Act 126

under *Luft*, which Defendants apparently do not intend to do. Further, WEC has an inconsistent history of defending Wisconsin's election laws when named as a defendant in cases challenging the constitutionality of such laws—sometimes declining to defend those laws at all, while other times only mounting an initial defense in trial court but declining to pursue meritorious appeals.

C. The District Court denied the Legislature's intervention motion solely because it concluded that the Legislature's participation here would violate the Wisconsin Constitution's separation-of-powers principles as applied to the facts of this case. Given *Berger*, the District Court was wrong even to entertain the Attorney General's separation-of-powers arguments, but those arguments are wrong regardless.

1. The District Court erred in adjudicating an as-applied separation-of-powers challenge to Section 803.09(2m), given *Berger*. *Berger* directs the District Court to respect Wisconsin's authorization of the Legislature as its representative in Section 803.09(2m), yet the District Court paid no respect to that state statute by invoking general separation-of-powers principles to conclude that it violated the Wisconsin Constitution, as applied here. The District Court's understanding of those general separation-of-powers principles would apply to every State, rendering *Berger* meaningless—a point further evidenced by the District Court's reliance on the dissenting opinion of Justice Sotomayor in *Berger* and this Court's decision in *Planned Parenthood of Wisconsin, Inc. v. Kaul*, 942 F.3d 793 (7th Cir. 2019), which *Berger* abrogated.

2. Even if the District Court had the authority to conduct its as-applied analysis, Section 803.09(2m) is clearly constitutional as applied to the present case. The Wisconsin Constitution's separation-of-powers doctrine mirrors the federal Constitution's separation-of-powers doctrine in all relevant respects, and this makes *Berger* particularly helpful here, given that it is the Nation's leading case on legislative intervention and the separation-of-powers. So, as in *Berger*, the Legislature's intervention in defense of state law does not violate the separation-of-powers doctrine, as nothing in the Wisconsin Constitution grants the Attorney General or WEC a "constitutional monopoly on representing [Wisconsin's] practical interests in court." *Berger*, 597 U.S. at 194. In concluding otherwise, the District Court relied upon only general separation-of-powers principles that would apply to every State that has a legislative branch and an executive branch—that is, all States. And while the District Court also cited two recent Wisconsin Supreme Court opinions in claimed support of its conclusion, those opinions only affirm that Wisconsin follows general separation-of-powers principles akin to those at the federal level.

II. Alternatively, the Legislature should be permitted to intervene under Rule 24(b)(1)(B), including on constitutional avoidance grounds, and the District Court legally erred in concluding that the Wisconsin Constitution limited federal courts' authority to grant permissive intervention. Rule 24(b) requires only that the movant "timely" seeks to intervene and "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b). This intervention analysis is a federal-law inquiry because intervention is "a purely procedural right

and even in a diversity suit it is the Federal Rules of Civil Procedure rather than state law that dictate the procedures, including who may intervene." *Williams v. Katz*, 23 F.3d 190, 192 (7th Cir. 1994). Here, the Legislature "timely" moved for intervention and raises a "defense that shares with the main action a common question of law or fact" as it seeks to defend Act 126. Fed. R. Civ. P. 24(b)(1). The Legislature's participation will also ensure full adversarial briefing, will present no practical difficulties or delay, and will further constitutional avoidance principles.

The District Court denied permissive intervention because, in its view, the Legislature appearing in court to defend State law would violate the Wisconsin Constitution's separation-of-powers principles. SA.16. But a federal court's authority to permit a party to appear before it is grounded in Rule 24, the Rules Enabling Act, 28 U.S.C. §§ 2071–77, and Article III of the U.S. Constitution. Accordingly, the District Court's decision of whether to exercise its federal authority to grant permissive intervention is not—and could not possibly be—limited by the District Court's erroneous understanding of the Wisconsin Constitution.

## STANDARD OF REVIEW

Rule 24(a)(2) provides that a district court should grant intervention as of right if the proposed intervenor makes four showings: "(1) [a] timely application; (2) an interest relating to the subject matter of the action; (3) [the] potential impairment, as a practical matter, of that interest by the disposition of the action; and (4) [a] lack of adequate representation of the interest by the existing parties to the action." *Bost*, 75 F.4th at 686 (citations omitted). This Court "review[s] . . . de novo" a district court's

analysis of the "factors" governing intervention as of right, "except for the timeliness factor," which this Court "review[s] for abuse of discretion." *Id.* (citations omitted). Rule 24(b)(1)(B), in turn, provides that a district court may permit a proposed intervenor to intervene if the would-be intervenor "has a claim or defense that shares with the main action a common question of law or fact." *Id.* at 690 (quoting Fed. R. Civ. P. 24(b)(1)(B)). This Court reviews a district court's denial of permissive intervention for an "abuse of discretion." *Id.* at 690–91. But if a district court reaches a discretionary conclusion—such as the denial of permissive intervention—"because of its interpretation of relevant law," then this Court will "review that question of law *de novo* because a district court's application of an erroneous view of the law is by definition an abuse of discretion." *Sosebee v. Astrue*, 494 F.3d 583, 586 (7th Cir. 2007); *see also Tsareff v. ManWeb Servs., Inc.*, 794 F.3d 841, 848 (7th Cir. 2015).

## ARGUMENT

### I. The Legislature Is Entitled To Intervene As Of Right Per Rule 24(a)(2) Under *Berger*

#### A. *Berger* Provides Controlling Guidance On How To Analyze The Legislature's Motion To Intervene

Federal Rule of Civil Procedure 24(a)(2) provides that "[o]n timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). Rule 24(a)(2) thus contains four elements for

intervention as of right: "(1) the motion is timely; (2) the moving party has an interest relating to the property or transaction at issue in the litigation"; "(3) that interest may, as a practical matter, be impaired or impeded by disposition of the case"; and (4) the "existing parties" do not "adequately represent [the moving party's] interests." *Driftless*, 969 F.3d at 746.

The Supreme Court in *Berger* provided detailed guidance as to how to apply the second, third, and fourth Rule 24(a)(2) elements when adjudicating a state legislature's motion to intervene to defend state law.

Regarding the interest element, *Berger* recognized that States possess "a legitimate interest in the continued enforce[ment] of [their] own statutes." 597 U.S. at 191 (citation omitted). Since "States may organize themselves in a variety of ways," *id.*, States may empower "duly authorized representatives"—including legislatures or individual legislators—to "participat[e] in federal litigation challenging state law" to protect that strong interest as selected by "the sovereign State," *id.* at 191–92 (citations omitted). States can so authorize their representatives "either generally or in a defined set of cases," *id.* at 192 (citation omitted), and they may statutorily "allocate authority [to defend state law] among different officials who do not answer to one another," *id.* at 191. Participation by each of these representatives is necessary because, as *Berger* explained, "when a State chooses to allocate authority among different officials who do not answer to one another, different interests and perspectives, all important to the administration of state government, may emerge." *Id.* (citation omitted). So, where a State "has expressly authorized the legislative

leaders to defend the State's practical interests in litigation of this sort," *id.* at 193, Rule 24(a)(2)'s interest requirement is satisfied, regardless of whether they are the only state representative involved in the litigation.

As to whether the interest will be impaired by the action, *Berger* held that "[a]ppropriate respect for [the above-discussed] realities suggests that federal courts should rarely question that a State's interests will be practically impaired or impeded if its duly authorized representatives are excluded from participating in federal litigation challenging state law." *Id.* at 191. "To hold otherwise," *Berger* warned, "would not only evince disrespect for a State's chosen means of diffusing its sovereign powers among various branches and officials" but also would "risk turning a deaf federal ear to voices the State has deemed crucial to understanding the full range of its interests" and "encourage plaintiffs to make strategic choices to control which state agents they will face across the aisle in federal court." *Id. Berger* further recognized that "[p]ermitting the participation of lawfully authorized state agents promotes informed federal-court decisionmaking and avoids the risk of setting aside duly enacted state law based on an incomplete understanding of relevant state interests." *Id.* at 192.

*Berger* also established critical standards governing the adequacy-of-representation inquiry when a state legislature seeks to intervene. The Court held that "a presumption of adequate representation is inappropriate when a duly authorized state agent seeks to intervene to defend a state law," and it emphasized that "[a]ny presumption against intervention is *especially* inappropriate when

wielded to displace a State's prerogative to select which agents may defend its laws and protect its interests." *Id.* at 197. Instead, *Berger* directed that "a State's chosen representatives should be greeted in federal court with respect, not adverse presumptions" and that such "duly designated state agents seeking to vindicate state law" bear only a "minimal" burden to demonstrate inadequacy of representation, not "some higher hurdle." *Id.* at 197–98 (citation omitted). *Berger* further recognized that in "divided state governments," *id.* at 198, different state officials may carry "different interests and perspectives" warranting separate participation, *id.* at 191, and that permitting multiple state representatives to appear "give[s] voice to [ ] different perspective[s]" that ensures "a full consideration of the State's practical interests," *id.* at 195, 198.

*Berger* then applied those principles to the North Carolina legislative leaders seeking to intervene to defend the challenged state law there. North Carolina had amended a state voter-ID statute, *id.* at 185–86, and a plaintiff sued to declare the statute unconstitutional, *id.* at 186. Soon thereafter, certain legislative leaders moved to intervene to defend the law on behalf of the State, pursuant to statutory authorization. *Id.* The district court denied the legislative leaders' motion to intervene because it "'presum[ed]' that the legislative leaders' interests would be adequately represented by the Governor and Board and their legal representative, the attorney general." *Id.* at 187 (citation omitted). The Supreme Court concluded that North Carolina had "expressly authorized the legislative leaders to defend the State's practical interests in litigation of this sort" and so "the State has made plain

that it considers the leaders of the General Assembly 'necessary parties' to suits like this one." *Id*. at 193 (citing N.C. Gen. Stat. § 120–32.6(b)). Thus, the Court concluded that the legislative leaders brought "a distinct state interest to bear on th[e] litigation" and were "entitled to intervene." *Id*. at 199–200.

### B. The Legislature Satisfies Each Of Rule 24(a)(2)'s Four Elements

#### 1. The Legislature's Intervention Motion Was Timely

Rule 24 requires a "timely" intervention motion, Fed. R. Civ. P. 24(a)(2), meaning that "[a] prospective intervenor must move promptly to intervene as soon as it knows or has reason to know that its interests might be affected by the outcome of the litigation," *Illinois*, 912 F.3d at 985 (citation omitted). Courts "look to four considerations" when "evaluating [the] timeliness" of a motion to intervene: "(1) the length of time the intervenor knew or should have known of his interest in the case; (2) the prejudice caused to the original parties by the delay; (3) the prejudice to the intervenor if the motion is denied; and (4) any other unusual circumstances." *Cook Cnty. v. Texas*, 37 F.4th 1335, 1341 (7th Cir. 2022). Here, the Legislature timely moved to intervene because it "promptly" moved as soon as it knew "that its interests might be adversely affected" by this litigation, *id.* (citation omitted), less than a month after Plaintiff filed its Complaint, *see* R.13; R.19; App.77–102. The Legislature's prompt filing causes no prejudice to any parties, and neither Plaintiff nor Defendants opposed the Legislature's Motion on timeliness grounds. *See* App.104–07; App.112–31. The District Court did not reject the Legislature's Motion on timeliness grounds. *See* SA.3–15.

### 2. *Berger* Dictates The Conclusion That The Legislature Has An Interest In This Litigation

Under Rule 24(a)(2), a proposed intervenor must also "claim[ ] an interest relating to the property or transaction that is the subject of the action[.]" *Berger*, 597 U.S. at 190 (citation omitted). This interest must "be direct, significant, and legally protectable," *Lopez-Aguilar v. Marion Cnty. Sheriff's Dep't*, 924 F.3d 375, 391 (7th Cir. 2019) (citations omitted); *Driftless*, 969 F.3d at 746–47, although this Court has "interpreted statements of the Supreme Court as encouraging liberality in the definition of an interest," *Lopez-Aguilar*, 924 F.3d at 391–92 (citations omitted). Thus, this Court has understood "the term 'interest' [ ] to be broadly construed" to favor intervention. *Meridian Homes Corp. v. Nicholas W. Prassas & Co.*, 683 F.2d 201, 204 (7th Cir. 1982). "[A] State has a cognizable interest 'in the continued enforceability' of its laws that is harmed by a judicial decision declaring a state law unconstitutional." *Hollingsworth v. Perry*, 570 U.S. 693, 709–10 (2013) (citation omitted). So, as discussed above, the Supreme Court held in *Berger* that where a State has "expressly authorized [its] legislative leaders to defend the State's practical interests in litigation of this sort," Rule 24(a)(2)'s interest requirement is satisfied. 597 U.S. at 193; *supra* pp.24–25. And this Court has recognized that Section 803.09(2m) provides the "Legislature the authority to represent the State of Wisconsin's interest in the validity of state laws" in actions challenging Wisconsin's laws. *Democratic Nat'l Comm. v. Bostelmann*, 977 F.3d 639, 641 (7th Cir. 2020) (per curiam).

Here, the Legislature has an interest in this case as a duly authorized agent of the State under *Berger*. Wisconsin "possesses a legitimate interest in the continued enforce[ment] of [its] own statutes," as *Berger* recognized. 597 U.S. at 191 (first alteration in original; citation omitted). And, under *Berger*, Wisconsin has made the sovereign choice to enact a law "authoriz[ing] *its legislature* to litigate on the State's behalf" to defend that interest, as is its prerogative. *Id.* at 191–93, 197 (emphasis added; citation omitted). Specifically, with Section 803.09(2m), Wisconsin has provided that "[w]hen a party to an action challenges in state or federal court the constitutionality of a statute, facially or as applied . . . the legislature may intervene . . . at any time in the action as a matter of right." Wis. Stat. § 803.09(2m); *see also* Wis. Stat. § 13.365. This is a prototypical *Berger*-statute, authorizing the Legislature to intervene in cases challenging the constitutionality of a Wisconsin statute to defend the State's interests as the State's agent. And the application to this case is straightforward. Plaintiff has challenged in "federal court the constitutionality" of Act 126, a duly enacted Wisconsin "statute" related to election regulation. Wis. Stat. § 803.09(2m); *supra* pp.10–11. The Legislature has sought to "intervene" to defend Act 126's constitutionality, so its interest under Section 803.09(2m) here is sufficient for mandatory intervention.

In the *Bostelmann* case, the Wisconsin Supreme Court and this Court recognized that Section 803.09(2m) gives the Legislature an interest in defending state law on behalf of the State in cases such as this. There, the plaintiffs had challenged certain of Wisconsin's voter-registration and absentee-balloting-voting

laws (among others), and the Legislature moved to intervene to defend them. *Democratic Nat'l Comm. v. Bostelmann*, 976 F.3d 764, 766 (7th Cir. 2020) (per curiam). After the district court issued an order that blocked and/or modified in part the relevant laws' application, the Legislature appealed and moved for a stay. The executive-branch defendants, for their part, chose not to appeal, meaning they would have left the district court's order in place. *Id.* This Court initially denied the requested stay, reasoning that the Legislature had no unique interest in the case and therefore was "not entitled to represent Wisconsin's interests" in court. *Id.* at 767–68. After the Legislature moved for reconsideration, this Court then certified to the Wisconsin Supreme Court the question of "whether, under Wis. Stat. § 803.09(2m), the State Legislature has the authority to represent the State of Wisconsin's interests in the validity of state laws." *Bostelmann*, 977 F.3d at 641. The Wisconsin Supreme Court accepted certification and held that Section 803.09(2m) "gives the Legislature a set of litigation interests," including the "unmistakabl[e]," *Democratic Nat'l Comm. v. Bostelmann*, 949 N.W.2d 423, 426 (Wis. 2020), "authority to act 'on behalf of'" the State "to defend the validity of state laws as intervenors," *id.* at 427. This Court, in turn, then accepted that answer, holding that the Legislature could appeal because it "has the authority to represent the State of Wisconsin's interest in the validity of state laws." *Bostelmann*, 977 F.3d at 641. Thus, because Section 803.09(2m) gives the Legislature an interest in defending state law, the Legislature has an interest in this litigation, sufficient for mandatory intervention. *Berger*, 597 U.S. at 191–93;

*Bostelmann*, 949 N.W.2d at 426–28; *accord Bostelmann*, 977 F.3d at 641; *see Hollingsworth*, 570 U.S. at 709–10.

The District Court held that because Section 803.09(2m) is unconstitutional as applied, that statute could "not convey a 'direct, significant, and legally protectable interest'" on the Legislature here. SA.4. But as explained below, the District Court's reasoning here is wrong, including because it would render *Berger* a nullity. *See infra* Part I.C.

In addition to the Legislature's independently sufficient statutory interest under *Berger* to defend Act 126 as an agent of the State, the Legislature also has its own interest in defending Wisconsin's laws regarding "suffrage" for the State. *See Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*, 576 U.S. 787, 799–803 (2015) (holding that state legislatures have an interest in election redistricting laws under a standing analysis). The Wisconsin Constitution vests the power to enact laws for "suffrage" in the Legislature, Wis. Const. art. III, § 2; *id.* art. IV, § 17, and the Legislature exercised this constitutional power by enacting Act 126's "qualified elector" requirements for the circulators of nomination papers and recall petitions, *see* 2025 Wis. Act 126; *accord Eu v. S.F. Cnty. Democratic Cent. Comm.*, 489 U.S. 214, 231 (1989); *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 196 (2008) (controlling plurality of Stevens, J.). Plaintiff's challenge to Act 126's requirement that circulators be qualified Wisconsin electors and reside in Wisconsin implicates this separate, independent interest of the Legislature. *Berger*, 597 U.S. at 184; *see Hollingsworth*, 570 U.S. at 709–10 (citation omitted); *Lopez-Aguilar*, 924 F.3d at 392.

As to the Legislature's alternative argument, the District Court concluded that the Legislature does not "possess[ ] an interest by some other means" because it "fail[ed] to identify any manner in which the challenged law has any effect on its 'constitutional authority to make laws.'" SA.10. But this case clearly thwarts the Legislature's constitutional authority to enact suffrage laws. *See* Wis. Const. art. III, § 2. That is because litigation that seeks to strike down the Legislature's duly enacted suffrage laws necessarily implicates the Legislature's interest in maintaining the efficacy of its constitutional authority "to make the law." *Evers v. Marklein*, 8 N.W.3d 395, 403 (Wis. 2024) (citation omitted). Here, if the District Court enjoins Act 126, it will hold that the Legislature lacks the power to enact this law, thus imposing a clear limitation on the Legislature's authority.

#### 3. This Lawsuit Directly Impairs The Legislature's Interests under *Berger*, Given That Plaintiff Seeks To Invalidate Act 126

The third element of Rule 24(a)(2) is that the action "is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest." *Berger*, 597 U.S. at 190 (citation omitted); *accord Cook Cnty.*, 37 F.4th at 1341. As explained, under *Berger*, "federal courts should rarely question that a State's interests will be practically impaired or impeded if its duly authorized representatives are excluded from participating in federal litigation challenging state law." 597 U.S. at 191; *supra* pp.24–26. "[T]o hold otherwise" would both "evince disrespect for a State's chosen means of diffusing its sovereign powers"

and risk disregarding "voices the State has deemed crucial to understanding the full range of its interests." 597 U.S. at 191.

Here, the District Court declaring Act 126's "qualified elector" residency requirement for circulators unconstitutional, as Plaintiff requests, would directly impair the Legislature's interests under *Berger*. *See id.* Wisconsin has a sovereign interest in defending the constitutionality of its own election laws, *supra* pp.24–25, 28; *Berger*, 597 U.S. at 190–91, and has designated the Legislature as its agent to defend that interest in federal court, under *Berger*, *see* Wis. Stat. §§ 13.365, 803.09(2m); *supra* pp.29–31. Plaintiff's requested relief would prohibit the enforcement of Act 126's "qualified elector" residency requirement for circulators altogether, thereby directly impairing this sovereign interest. *See Berger*, 597 U.S. at 190–91; *accord Lopez-Aguilar*, 924 F.3d at 385. Declaring Act 126's requirements invalid would undermine the Legislature's interest in the efficacy and integrity of its own constitutional authority to proscribe procedures governing the State's election-nomination and recall-petition processes for the same reason, as doing so would thwart those legislative powers. *See* Wis. Const. art. III, § 2.

In denying the Legislature's Motion to Intervene, the District Court did not consider, or suggest one way or the other, whether this action would impair the Legislature's interest. SA.3–12.

#### 4. No Other Party Adequately Represents The Legislature's Interests Under *Berger*

The fourth requirement for Rule 24(a)(2) intervention as of right is that no "existing defendant already adequately represent[s] the same interests a proposed

intervenor seeks to vindicate." *Berger*, 597 U.S. at 195 (citation omitted). The proposed intervenor's burden in establishing that its interests are not adequately represented "should be treated as minimal" when its interests are "similar to, but not identical with, that of one of the parties," because the possession of similar interests alone "normally is not enough to trigger a presumption of adequate representation." *Id.* at 196–97 (citation omitted); *see Driftless*, 969 F.3d at 748 ("[I]t's not enough that a defense-side intervenor 'shares the same goal' as the defendant in the brute sense that they both want the case dismissed."). It is sufficient for the proposed intervenor to "rais[e]" "[d]ifferent defenses," even where all parties are "mount[ing] a vigorous defense." *Driftless*, 969 F.3d at 749. "[A] presumption of adequate representation is inappropriate when a duly authorized state agent seeks to intervene to defend a state law," and it is "*especially* inappropriate when wielded to displace a State's prerogative to select which agents may defend its laws and protect its interests." *Berger*, 597 U.S. at 197. "[D]uly designated state agents seeking to vindicate state law" have only "a 'minimal' burden" to prove inadequacy of representation rather than "some higher hurdle." *Id.* at 197–98.

Here, Plaintiff is adverse to the Legislature's interests because it seeks to block Act 126's "qualified elector" residency requirement for circulators, which the Legislature lawfully enacted pursuant to its constitutional authority. *Supra* pp.31–32. Thus, Plaintiff cannot represent the Legislature's interests.

Defendants—WEC's Administrator and its Commissioners, represented by the Attorney General—do not adequately represent the Legislature's interests either.

Under *Berger*, States have a sovereign right to choose their representatives and may allocate that authority "among different officials who do not answer to one another." 597 U.S. at 191. When the State so authorizes an official, there is no presumption of adequate representation from other state parties in the case. *See id.* at 195–97. So, because Wisconsin selected the Legislature as its agent here, Wis. Stat. § 803.09(2m), the District Court should have respected that choice by granting the Legislature's intervention, regardless of Defendants' separate advocacy, *see Berger*, 597 U.S. at 197–98. Relatedly, the Legislature can make "tactical choice[s]" that "give voice to [its] different perspective" on the State's behalf, such that Defendants' representation is inadequate to protect the Legislature's own interests. *Id.* at 198 ("[T]his litigation illustrates how divided state governments sometimes warrant participation by multiple state officials in federal court."); *accord Driftless*, 969 F.3d at 748 ("[I]t's not enough that a defense-side intervenor 'shares the same goal' as the defendant in the brute sense that they both want the case dismissed.").

The District Court concluded that "*Berger* does not relieve proposed intervenors of the burden of demonstrating *some* level of inadequate representation." SA.13. However, this misses the point of *Berger* and, in any event, the Legislature has demonstrated that Defendants do not adequately represent its interests here. *Berger* held that States can select "authorized [ ] agents" to represent their interests in court, 597 U.S. at 197–98, given the different state agents' unique "interests and perspectives, all important to the administration of state government," *id.* at 191. The Legislature showed that it is a "duly designated state agent[ ]" under

Section 803.09(2m) "seeking to vindicate state law"—here, Act 126—and that is all that the District Court should have required the Legislature to show. *Id.* at 198. That is because Wisconsin, by authorizing the Legislature to intervene here, has already decided that the Legislature's participation is necessary to represent its interest in defending state law. *See id.* at 191–92.

In any event, the Legislature easily showed that Defendants' representation is inadequate here no matter how this Court understands the Legislature's "minimal" burden under *Berger*. App.93–97; App.143–45. The Legislature explained that it planned to "raise[ ]" "[d]ifferent defenses" than Defendants, which alone demonstrates their inadequacy vis-à-vis the Legislature. *Driftless*, 969 F.3d at 749. In particular, the Legislature intended to argue that this Court's decision in *Luft*, 963 F.3d 665, provides the controlling interpretation of the *Anderson/Burdick* framework applicable to Plaintiff's First Amendment claim here. *Luft* requires "weigh[ing]" an alleged election law burden "against the state's interests" in the law and in light of the burdens of "the whole electoral system." 963 F.3d at 671–72. *Luft* also holds that a State can "offset" the "more stringent" burdens of one election law with more "liberal" features of other election laws. *Id.* at 671. Thus, to decide Plaintiff's claim here under *Luft*, the courts must evaluate Plaintiff's alleged burdens from Act 126 against Wisconsin's substantial election-integrity interests in Act 126 and all of the more permissive features of Wisconsin's nomination-paper-circulation process—such as the lack of a requirement that a circulator actually be registered to vote, *see* Wis.

Stat. § 6.02(1), and the reasonable number of signatures required, Wis. Stat. §§ 8.15, 8.16; *see Frami*, 255 F. Supp. 2d at 965.

Defendants apparently do not intend to make as aggressive a defense of Wisconsin's interest in enacting limitations on the requirements for nomination-paper circulators, as evidenced by their failure to raise this *Luft*-based argument or even to cite it in its briefing so far. *See* App.37–69. Instead, Defendants rely on some pre-*Luft* cases to argue that the courts must analyze Plaintiff's claim by "weigh[ing] the 'character and magnitude' of the burden" imposed by Act 126 "against the interests the State contends justify that burden," while also "consider[ing] the extent to which the State's concerns make the burden necessary." App.47 (citation omitted); *see* App.47–65 (citing, *e.g.*, *Krislov v. Rednour*, 226 F.3d 851 (7th Cir. 2000)). That pre-*Luft* scrutiny is more exacting than *Luft* requires, *see* App.46–65, including because it does not consider Act 126's burdens in light of "the whole electoral system," 963 F.3d at 671–72. So, Defendants' litigation choices thus far put Act 126 at a greater risk of invalidation, unless the Legislature is granted intervention. Accordingly, this "rais[ing]" of "[d]ifferent defenses" decides the adequacy-of-representation element in the Legislature's favor. *Driftless*, 969 F.3d at 749.

The Legislature also satisfies whatever minimal burden is necessary under *Berger* for the additional reason that WEC has an unpredictable (and, indeed, inexplicable) history of defending or not defending Wisconsin election laws when named as a defendant. As the Legislature explained below, App.96–97, with no response from Defendants, WEC sometimes does not defend challenged election laws

at all. Most on point, in *Democratic National Committee v. Bostelmann*, 451 F. Supp. 3d 952 (W.D. Wis. 2020)—an earlier district-court decision from the *Bostelmann* litigation described above, *supra* pp.29–31—WEC refused to defend Wisconsin's photo-ID law challenged there, stating without further explanation that it was "unable to state a position on [the] issue," Defs.' Resp. To Mot. For Preliminary Injunction & Reconsideration, *Democratic Nat'l Comm. v. Bostelmann*, No.3:20-cv-00249, Dkt.107 at 16 (W.D. Wis. Mar. 30, 2020); *accord Bostelmann*, 977 F.3d at 643–44 (Rovner, J., dissenting) (noting that WEC "acceded" to parts of a subsequent "injunction" from the district court). Thereafter, WEC did not appeal at all the district court's injunction enjoining the election laws at issue. *See Democratic Nat'l Comm. v. Bostelmann*, Nos.20-1538 *et al.*, 2020 WL 3619499 (7th Cir. Apr. 3, 2020). More recently, in currently pending cases challenging the validity of Wisconsin's redistricting maps, WEC has declined to defend those maps in any respect. *See, e.g.*, *Bothfeld v. Wis. Elections Comm'n*, 27 N.W.3d 508, 510 (Wis. 2025) (noting that WEC filed a statement of no position in response to a redistricting challenge).

And, also recently, in ongoing litigation in *Disability Rights Wisconsin v. Wisconsin Elections Commission*, 20 N.W.3d 790 (Wis. Ct. App. 2025), WEC did not appeal a temporary injunction order blocking multiple election-related Wisconsin laws for the (then-impending) 2024 election. Instead, WEC was inexplicably content to let that nullification of state law persist. Accordingly, it was solely up to the Legislature to file and successfully litigate an appeal to remedy that sovereign harm by obtaining a reversal from the Wisconsin Court of Appeals. *See id.* at 793 (successful

preliminary-injunction appeal involving only the Legislature as intervenor, although WEC had participated below); *see also Rise, Inc. v. Wis. Elections Comm'n*, 11 N.W.3d 241, 249 (Wis. Ct. App. 2024) (similar, with respect to partially successful summary-judgment appeal).[9]

The Legislature respectfully submits that WEC's inconsistent and inexplicable (or, at least, unexplained) practice when sued over Wisconsin's election laws shows that its representation is inadequate to protect the Legislature's interests here, satisfying the Legislature's "minimal burden." *Berger*, 597 U.S. at 198.

---

[9] To provide more context for *DRW*, No.24CV1141, Wisconsin's Dane County Circuit Court there initially granted the Legislature intervention without explanation, and, as an intervenor, the Legislature successfully appealed the Circuit Court's temporary injunction that, as the Court of Appeals stated, "would have [erroneously] upended" Wisconsin's absentee-voting scheme. *Disability Rts. Wis. v. Wis. Elections Comm'n*, 20 N.W.3d 790, 797 (Wis. Ct. App. 2025). Although the Attorney General agreed that the absentee-voting laws were constitutional, he did not appeal that temporary injunction and instead appealed the Circuit Court's intervention decision. Without indicating whether intervention was proper, the Wisconsin Court of Appeals remanded to the Circuit Court to provide more explanation for its intervention decision. *See Disability Rts. Wis. v. Wis. Elections Comm'n*, No.2024AP1347, 2025 WL 1805851, at *1–2 (Wis. Ct. App. July 1, 2025) (per curiam). The Circuit Court then revoked the Legislature's intervention status on remand—although the only change since the initial grant was the Legislature's successful appeal. The Legislature has appealed that decision to the Wisconsin Court of Appeals. *See Disability Rts. Wis. v. Wis. Elections Comm'n*, No.2026AP535 (Wis. Ct. App). As of the date of this filing, merits briefing before the Wisconsin Court of Appeals has concluded, and the defendants have filed a petition with the Wisconsin Supreme Court to bypass the Wisconsin Court of Appeals. Pet. To Bypass, *Disability Rts. Wis. v. Wis. Elections Comm'n*, No.2026AP535 (Wis. Aug. 26, 2026). The Legislature filed its opposition to that bypass petition today, September 9, 2026, and that petition remains pending as of this filing. Opp'n To Pet. To Bypass, *Disability Rts. Wis. v. Wis. Elections Comm'n*, No.2026AP535 (Wis. Sept. 9, 2026).

### C. In Light Of *Berger*, There Was No Reason For the District Court To Entertain The Attorney General's Separation-Of-Powers Arguments, Which Are Meritless In Any Event

The District Court decided that the Legislature has no right to intervene because, it reasoned, Wisconsin's *Berger*-statute—Section 803.09(2m)—violates separation-of-powers principles as applied here. Conducting that analysis at all was entirely inappropriate given the Supreme Court's holding that federal courts must respect legislative intervention statutes like the one at issue in *Berger*. *Infra* Part I.C.1. In any event, the District Court reached the wrong conclusion that Section 803.09(2m) poses any separation-of-powers problems here. *Infra* Part I.C.2.

1. The District Court erred in even entertaining the argument that Section 803.09(2m) violates standard separation-of-powers principles as applied here, given *Berger*. As explained above, *supra* pp.23–27, *Berger* establishes that States have "a legitimate interest in the continued enforce[ment] of [their] own statutes" and that States can empower "duly authorized representatives"—including legislatures—to "participat[e] in federal litigation challenging state law" to protect that interest, 597 U.S. at 191–92 (citations omitted). Where a State has "expressly authorized" a state agent "to defend the State's political interests in litigation," federal courts must accord "[a]ppropriate respect" for that sovereign choice and "rarely question that a State's interests will be practically impaired or impeded if its duly authorized representatives are excluded from participating in federal litigation challenging state law." *Id.* at 193. Indeed, "a State's chosen representatives should be greeted in federal court with respect, not adverse presumptions," such that "duly

designated state agents seeking to vindicate state law" should face only a "minimal" burden in demonstrating inadequate representation. *Id.* at 197–98. Thus, *Berger* directs federal courts to look to state law to determine whether an entity is authorized to intervene under Rule 24(a) and requires federal courts to respect a State's chosen method of designating agents to defend state laws.

Instead of respecting *Berger* by granting the Legislature intervention here, the District Court conducted its own as-applied separation-of-powers analysis of Section 803.09(2m), with reasoning that would render *Berger* meaningless. In the District Court's view, "the [L]egislature is not authorized" under the separation-of-powers doctrine "to represent the state in the execution of a law, including by defending the law [in court]," in cases like this. SA.8. Rather, the District Court explained, "[d]efending a law" in court "is part of the executive function" under separation-of-powers principles. SA.11. But if the District Court is allowed to bypass *Berger* in this way—by simply invoking general separation-of-powers principles to hold that the very type of legislative intervention that *Berger* authorizes violates such principles—there will be nothing left of *Berger*. That is because none of the separation-of-powers principles that the District Court relied upon below are unique to Wisconsin, *see generally* SA.5–11; rather, they are found in every other State and, moreover, the Federal Government. So, if the District Court were correct that Wisconsin cannot enforce its *Berger* statute to authorize the Legislature to appear in court on its behalf, then no other State could authorize their own legislatures to represent their own interests in court with a *Berger* statute either. The Supreme Court would not have

decided in *Berger* that States can designate "duly authorized representatives," including their "legislature[s]," to "participat[e] in federal litigation challenging state law" if general separation-of-powers principles would immediately void any such authorization. 597 U.S. at 191–94 (citations omitted). Accordingly, the District Court's as-applied separation-of-powers attack on Section 803.09(2m) cannot comport with *Berger*.

The District Court's attempted rebuke of *Berger*'s controlling framework is all the more apparent here given that it approvingly cited Justice Sotomayor's dissenting opinion in *Berger* along with this Court's decision in *Planned Parenthood*, 942 F.3d 793, which *Berger* abrogated. SA.14.[10] Relying on those decisions, the District Court concluded that the Legislature's interests here amounted to nothing more than a dispute over Defendant's "litigation strategy," which would not merit intervention as of right. SA.14. Again, however, *Berger* holds precisely the opposite: "a State is free to empowe[r] multiple officials to defend its sovereign interests in federal court," and courts should respect those sovereign choices by "[p]ermitting the participation of" those different "authorized state agents." 597 U.S. at 192 (first alteration in original; citation omitted). A district court cannot rely upon a dissenting opinion from one

[10] In *Planned Parenthood*, this Court affirmed a district court's denial of the Legislature's intervention in a case where the Attorney General had appeared, concluding that Wisconsin's "authority to designate an agent is limited to *an* agent, in the singular." 942 F.3d at 802. *Berger*'s subsequent decision abrogates that holding. *See* 597 U.S. at 192, 197 (holding that "a State is free to empower multiple officials to defend its sovereign interests in federal court").

Supreme Court Justice and a since-abrogated decision from this Court to evade the holding of an eight-Justice Supreme Court majority.

2. The District Court's as-applied separation-of-powers analysis was wrong, in any event. Accordingly, should this Court choose to engage in that analysis—which, to be clear, it should not in light of *Berger*, *supra* Part I.C.1—it should reject the District Court's conclusion.

"Mirroring the United States Constitution, the Wisconsin Constitution 'creates three separate coordinate branches of government'"—the legislative, the executive, and the judiciary—"with the understanding that no branch of government can subordinate, control, or exercise the power of another branch." *Marklein*, 8 N.W.3d at 401 (citation omitted). Thus, "[a]s a general principle, the separation of powers framework undergirding the Wisconsin Constitution reflects the principles embodied in the United States Constitution," meaning that Wisconsin Courts "may consult federal sources on the separation of powers because they 'inform [Wisconsin's] understanding of the separation of powers under the Wisconsin Constitution.'" *Id.* at 401 n.8 (quoting *Gabler v. Crime Victims Rts. Bd.*, 897 N.W.2d 384, 389–90 (Wis. 2017)); *see also Kaul v. Wis. State Legislature*, 21 N.W.3d 513, 522 (Wis. 2025) (citing federal separation-of-powers cases from the Supreme Court as persuasive authority).

So, "[i]n the same fashion as the United States Constitution, the Wisconsin Constitution preserves the independence of each branch vis-à-vis the others and precludes each branch from obstructing the performance of another branch's constitutional duties." *League of Women Voters of Wis. v. Evers*, 929 N.W.2d 209, 221

(Wis. 2019) (citations omitted). Specifically, the Wisconsin Constitution gives each branch "exclusive core constitutional powers into which other branches may not intrude," *id.* (citation omitted), along with "shared powers" that may be exercised by multiple branches so long as their exercise does not "unduly burden or substantially interfere with another branch," *Service Emps. Int'l Union, Loc. 1 v. Vos*, 946 N.W.2d 35, 47 (Wis. 2020) (citation omitted) ("*SEIU*"), *overruled in part on other grounds by Evers v. Marklein*, 22 N.W.3d 789 (Wis. 2025). Further, as with the legislative power in the federal Constitution, *see* U.S. Const. art. I, § 8; *Minneapolis, St. P. & Sault Ste. Marie Ry. Co. v. R.R. Comm'n of Wis.*, 116 N.W. 905 (Wis. 1908), the core "legislative power" in the Wisconsin Constitution is to "make laws," *Marklein*, 8 N.W.3d at 402 (citation omitted)—including specifically with regard to "suffrage," Wis. Const. art. III, § 2. Similarly, the core executive power under the Wisconsin Constitution is the Governor's power "to 'take care that the laws be faithfully executed'" and to "effectuate the policies passed by the legislature," *Marklein*, 8 N.W.3d at 403 (citation omitted)—just like the executive power under the federal constitution, U.S. Const. art. II, § 3; *SEIU*, 946 N.W.2d at 64 n.6.

Given that Wisconsin's separation-of-powers principles "[m]irror[ ] the United States Constitution," *Marklein*, 8 N.W.3d at 401, *Berger*'s reasoning is particularly helpful to determine the constitutionality of the Legislature's intervention under the separation-of-powers doctrine here. As discussed above, *Berger* directly took up the issue of legislative intervention to defend state law when a State's attorney general had also already appeared to defend that law. 597 U.S. at 183–85. *Berger* then held

that States may lawfully "provide for other officials, besides an attorney general, to speak [simultaneously] for the State in federal court"—including "legislative officers," *id.* at 192–93 (citation omitted)—because state "executive branch[es]" do not "hold[ ] a constitutional monopoly on representing [the State's] practical interests in court," *id.* at 194. Thus, *Berger* explained, "statutes authorizing the legislative leaders to participate" in the defense of state law do not violate separation-of-powers principles "by usurping authority vested in the executive branch." *Id.* at 193–94 (discussing North Carolina's legislative-leader intervention statute, which is similar to Section 803.09(2m)). On the contrary, such arrangements *promote* "the separation of government powers" because "a State choos[ing] to allocate authority among different officials who do not answer to one another," like North Carolina with its legislative-leader intervention statute, is "important to the administration of state government." *Id*. at 191 (citation omitted).

Under the above-described separation-of-powers principles, the Legislature may constitutionally defend Wisconsin state law on behalf of the State in court pursuant to Section 803.09(2m). Nothing in the Wisconsin Constitution gives the Attorney General "a constitutional monopoly on representing [the State's] practical interests in court." *Berger*, 597 U.S. at 194. Rather, the core executive power is "to 'take care that the laws be faithfully executed,'" *Marklein*, 8 N.W.3d at 403 (citation omitted); *accord Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803), which means to "follow out" the law or "carry" it "into effect," 4 Oxford English Dictionary 520 (J.A. Simpson & E.S.C. Weiner, eds., 2d ed. 1989); *see Marklein*, 8 N.W.3d at 403. To

"defend" a law, in contrast, is simply to "support or uphold [it] by speech or argument" or to "deny, repel, oppose (the plaintiff's plea)." 4 Oxford English Dictionary 377 (J.A. Simpson & E.S.C. Weiner, eds., 2d ed. 1989). This conclusion, moreover, is all the more apparent given the Wisconsin Supreme Court's recognition that Section 803.09(2m) is constitutional in at least some applications. *See SEIU*, 946 N.W.2d at 56–57. If the Legislature may constitutionally intervene to defend state law in at least some circumstances, then the "logic" of the argument that the power to defend state law in court is exclusive to the executive "is hard to follow." *Berger*, 597 U.S. at 194; *accord INS v. Chadha*, 462 U.S. 919, 940 (1983) ("We have long held that Congress is the proper party to defend the validity of a statute when an agency of government, as a defendant charged with enforcing the statute, agrees with plaintiffs that the statute is inapplicable or unconstitutional.").

The District Court offered no persuasive explanation for why the Legislature defending state law in court encroaches upon the executive power here, such that *Berger*-style legislative intervention is a separation-of-powers violation.

Instead, the District Court concluded that the Legislature's intervening to defend Act 126's constitutionality would violate Wisconsin's separation-of-powers principles after stating that "[d]efending the law against the constitutional challenge falls squarely within the executive's 'core' power of executing the law," while "[t]he constitution does not empower the legislature to participate in the execution of the law." SA.6–7 (citation omitted). But, again, those are general separation-of-powers principles that apply to any legislative or executive branch. So, because Wisconsin's

separation-of-powers principles "[m]irror[ ] the United States Constitution," *Marklein*, 8 N.W.3d at 401, and because *Berger* upheld legislative intervention in the face of a general separation-of-powers challenge similar to that raised by Defendants here, *Berger* defeats the as-applied separation-of-powers challenge in this case as well.

The District Court also erroneously concluded that defending a law in court "falls squarely within the executive's 'core' power of executing the law" based on an overreading of a single statement in *Kaul*, 21 N.W.3d 513, and some general language in *Marklein*, 8 N.W.3d at 409. SA.6–7. Neither decision supports the District Court's approach.

As to *Kaul*, while the Wisconsin Supreme Court recognized that "litigation on behalf of the state is *chiefly* a core executive function," SA.6 (emphasis added) (quoting *Kaul*, 21 N.W.3d at 523), that does not mean that *defending* state law in court is always a core executive function. That is why, as *Berger* explained, a "State's executive branch" does not "hold[ ] a constitutional monopoly on representing [the State's] practical interests in court." 597 U.S. at 194. *Kaul*, moreover, approvingly cited federal separation-of-powers principles, *see* 21 N.W.3d at 521–22, thus, it makes little sense to rely upon it to invalidate Wisconsin's *Berger* statute when *Berger* itself upheld an identical statute.

The District Court's reliance on *Marklein* fares no better. SA.7. While it is true that the Legislature cannot "give itself" the power to execute the law, SA.7 (quoting *Marklein*, 8 N.W.3d at 409), *defending* state law against a constitutional challenge is

not executing it. And *Marklein* also explained that the Wisconsin Constitution "mirror[s]" the federal constitution for separation-of-powers purposes, 8 N.W.3d at 401, so it too cannot support striking down Wisconsin's *Berger* statute when *Berger* affirmed the validity of such statutes.

## II. The Legislature Should Have Been Permitted To Intervene Under Rule 24(b)(1)(B), And The District Court Legally Erred In Concluding That The Wisconsin Constitution Somehow Limited The Federal Court's Authority To Grant Permissive Intervention

A. Rule 24(b) allows a movant to intervene so long as it "timely" files a motion and "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1). If these requirements are met, the district court's grant of permissive intervention is "discretionary." *Sec. Ins. Co. of Hartford v. Schipporeit, Inc.*, 69 F.3d 1377, 1381 (7th Cir. 1995). In exercising that discretion, courts "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). Courts may also consider federal-state comity and the State's choice of who will "defend its sovereign interests in federal court." *Berger*, 597 U.S. at 192 (citation omitted). Intervention under Rule 24 is a federal-law inquiry because intervention is "a purely procedural right and even in a diversity suit it is the Federal Rules of Civil Procedure rather than state law that dictate the procedures, including who may intervene." *Williams v. Katz*, 23 F.3d 190, 192 (7th Cir. 1994); *accord* 28 U.S.C. § 2072(b) ("All laws in conflict with such rules shall be of no further force or effect after such rules have taken effect.").

B. The Legislature showed that it is entitled to permissively intervene here.

The Legislature satisfied Rule 24(b)(1)(B)'s requirements for permissive intervention. The Legislature "timely" moved to intervene because it filed its motion less than a month after Plaintiff filed the Complaint and before Defendants filed any responsive pleadings, as explained above. *See supra* p.27. The Legislature also "has a claim or defense that shares with the main action a common question of law or fact," Fed. R. Civ. P. 24(b)(1), given that it contends that Act 126 is lawful and filed an Answer raising various defenses—certain of which no other party asserted, *see supra* pp.36–37.

The additional permissive-intervention criteria further support intervention here. As discussed, the Legislature has "different interests and perspectives" than those of Defendants—interests that the State has deemed "important to the administration of state government." *Berger*, 597 U.S. at 191; *see supra* pp.34–36. Thus, "[c]asting aspersions on no one," the Legislature's intervention is necessary to avoid "setting aside duly enacted state law based on an incomplete understanding of relevant state interests." *Berger*, 597 U.S. at 192, 198; *accord Driftless*, 969 F.3d at 748. Moreover, the Legislature intends to raise a number of unique defenses that Defendants do not invoke, such as *Luft*'s applicability. *See supra* pp.36–37. So, the Legislature's intervention is also necessary to guarantee a robust defense against Plaintiff's claim, and it will help the judiciary fulfill its constitutional obligation to "say what the law is"—a factor that Wisconsin Courts also consider when analyzing whether to allow a party to permissively intervene. *Gabler v. Crime Victims Rts. Bd.*, 897 N.W.2d 384, 397–98 (Wis. 2017) (quoting *Marbury*, 5 U.S. at 177).

Nor would the Legislature's intervention present any practical difficulties. "[F]ederal courts routinely handle cases involving multiple officials sometimes represented by different attorneys taking different positions." *Berger*, 597 U.S. at 199–200. So, any burden the Legislature's intervention may cause would "fall well within the bounds of everyday case management." *Id.* The Legislature's intervention also will not "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). As discussed, the Legislature sought to intervene in the earliest stages of this litigation, and it informed the District Court and the parties of its intent even before filing its Motion. R.13. Likewise, the Legislature will abide by the District Court's scheduling orders, while its presence will promote the "efficiency" of the litigation. *Sec. Ins. Co.*, 69 F.3d at 1381.

Principles of constitutional avoidance further counsel in favor of granting the Legislature permissive intervention. *See* App.145–48. Allowing the Legislature to intervene under Rule 24(b) would render Defendant's separation-of-powers argument irrelevant because a federal court's authority to grant permissive intervention is grounded in Rule 24, the Rules Enabling Act, 28 U.S.C. §§ 2071–77, and Article III of the U.S. Constitution. *See* App.146–48. That is, permissive intervention under Rule 24(b) is an exercise of the federal judiciary's statutory and constitutional authority to have parties in the case that will assist federal courts in their responsibility to "say what the law is." *Marbury*, 5 U.S. at 177. So, whatever the force of Defendants' argument that the Wisconsin Constitution restricts Wisconsin courts from permitting the Legislature's intervention in certain Wisconsin cases, *but see*

*supra* pp.40–48, it would not impact a federal court's broad discretionary authority to grant permissive intervention to a party that meets the requirements of Rule 24(b), *see Liebert*, 345 F.R.D. at 171–72.

The Western District of Wisconsin's *Liebert* decision is instructive. There, the Legislature sought both permissive intervention and intervention as of right to defend another election law. 345 F.R.D. at 171. WEC opposed that intervention, including by contending that Section 803.09(2m) is unconstitutional and that WEC adequately represented the Legislature's interests. *See id.* at 171–72; Comm'n Defs.' Br. In Opp. To Wis. Legislature's Mot. To Intervene, *Liebert v. Wis. Elections Comm'n*, No.23-cv-672, at *5–9 (W.D. Wis. Nov. 6, 2023). Although *Liebert* acknowledged that *Berger* and other Seventh Circuit cases "provide[d] some support for allowing the legislature to intervene as of right," the court simply granted permissive intervention "in light of the significant differences between the legislature's and other defendants' arguments," choosing not to address WEC's constitutional arguments given their irrelevance to Rule 24(b)'s permissive-intervention analysis. 345 F.R.D. at 172. Thus, *Liebert* explained that the "[w]hether to allow permissive intervention is a 'wholly discretionary' determination," and the court was satisfied that the Legislature's participation would not "unfairly prejudice[ ]" the other parties to the lawsuit. *Id.* Thereafter, the parties litigated in the ordinary course, without any argument that the Legislature's participation prejudiced any party or overcomplicated the case. *See generally Liebert v. Millis*, 733 F. Supp. 3d 698 (W.D. Wis. 2024). Ultimately, the Western District of Wisconsin entered judgment in the defendants' and the

Legislature's favor, including based on arguments that only the Legislature had made. *Id.* at 709 n.8.

C. The District Court denied permissive intervention solely because, in its view, the Legislature appearing in court to defend state law would violate the Wisconsin Constitution, meaning that permitting the Legislature to intervene would "violate principles of federalism." SA.16. This was legal error.

The District Court legally erred in concluding that the permissive-intervention inquiry turns on state law, rather than the federal courts' authority to decide what parties will best assist them in performing the function of the federal courts. In seeking permissive intervention, the Legislature was asking the District Court to invoke its *federal* authority only because, as explained above, *supra* pp.48–51, a federal court's authority to permit a party to appear before it is grounded in Rule 24, the Rules Enabling Act, 28 U.S.C. §§ 2071–77, and Article III of the U.S. Constitution. So, by nevertheless relying on state-constitutional-law principles to trump this federal-law inquiry, the District Court's analysis inverted the supremacy of federal law vis-à-vis state law, in violation of the Supremacy Clause. *See* U.S. Const. art. VI.

That is, contrary to the Supremacy Clause, the District Court concluded that "the Constitution. . . of [Wisconsin]" was to be "the supreme Law" here, instead of "the Laws of the United States" as embodied in Rule 24. *Id.* As the Legislature explained below, "permissive intervention flows from federal law," meaning that, whatever the merit of any alleged Wisconsin constitutional issues raised by Defendants here, those issues "would not constrain th[e] Court's permissive-intervention authority" under

the Supremacy Clause. App.135; *see* 146–48. Indeed, the District Court itself recognized in its mandatory-intervention discussion that "[i]ntervention is a purely procedural right and even in a diversity suit it is the Federal Rules of Civil Procedure rather than State law that dictate the procedures, including who may intervene." SA.4 (citing *Williams*, 23 F.3d at 192); *accord* 28 U.S.C. § 2072(b) ("All laws in conflict with such rules shall be of no further force or effect after such rules have taken effect."). Yet, the District Court held that it would be improper for it to grant the Legislature's intervention motion because its participation in this case "would violate the Wisconsin Constitution"—a *state* law. SA.16. That reasoning flips the Supremacy Clause on its head and fundamentally misunderstands the principle—recognized by the District Court elsewhere, *see* SA.4—that *federal* law governs the intervention inquiry, *see supra* pp.52–53; *accord* 28 U.S.C. § 2072(b). Thus, the District Court legally erred by allowing an argument regarding compliance with a state constitutional provision to govern its federal intervention analysis.

Moreover, a court's discretionary decision to allow a party to participate in litigation and assist it in carrying out its own constitutional obligations does not raise separation-of-powers concerns between the legislative and the executive branches. To the contrary, various entities across our Nation regularly intervene in litigation to defend statutes, without any separation-of-powers issue. *See, e.g.*, *Berger*, 597 U.S. at 185–87, 200 (legislative leaders); *Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, 834 F.3d 562, 567–69 (5th Cir. 2016) (trade association); *Shelby Cnty. v. Holder*, 570 U.S. 529, 553 (2013) (voting rights organizations).

In any event, even if this issue had arisen in Wisconsin state court under state law, it would not violate the Wisconsin Constitution to permit the Legislature to intervene permissively here. That is because permissive intervention is an exercise of the *judiciary's* constitutional authority. *See City of Sun Prairie v. Davis*, 595 N.W.2d 635, 640 (Wis. 1999). That is, the Wisconsin Constitution grants Wisconsin courts wide discretion to permit parties to intervene to assist the Court in fulfilling its "duty to say what the law is," *Tetra Tech EC, Inc. v. Wis. Dep't of Revenue*, 914 N.W.2d 21, 45 (Wis. 2018) (lead op. of Kelly, J.) (citation omitted), allowing Wisconsin courts to decide cases by "involving as many apparently concerned persons as is compatible with efficiency and due process," *State ex rel. Bilder v. Delavan Twp*., 334 N.W.2d 252, 257 (Wis. 1983) (citation omitted). Whatever the merit of Defendants' separation-of-powers argument as to Section 803.09(2m), *but see supra* pp.40–48, it has no bearing on a court's power to permit the Legislature to intervene to assist the judiciary in performing its own constitutional obligations.

## CONCLUSION

This Court should reverse the order of the District Court and remand with instructions to the District Court to grant the Legislature's Motion To Intervene.

Dated: September 9, 2026

Respectfully submitted,

*/s/ Misha Tseytlin*
MISHA TSEYTLIN
*Counsel of Record*
KEVIN M. LEROY
TROUTMAN PEPPER LOCKE LLP
225 W. Randolph St., Suite 2600
Chicago, IL 60606
(608) 999-1240 (MT)
(312) 759-1938 (KL)
(312) 443-0336 (fax)
misha.tseytlin@troutman.com
kevin.leroy@troutman.com

CARSON A. COX
TROUTMAN PEPPER LOCKE LLP
1001 Haxall Point, 15th Floor
Richmond, VA 23219
(804) 697-1338
carson.cox@troutman.com

ALEXANDER J. HILL
TROUTMAN PEPPER LOCKE LLP
600 Peachtree St. NE #3000
Atlanta, GA 30308
(404) 885-2763
alex.hill@troutman.com

*Counsel for Proposed Intervenor Wisconsin State Legislature*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), I certify the following:

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) and Circuit Rule 32(c) because it contains 13,880 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and Circuit Rule 32(b), and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6), because it has been prepared in a proportionately spaced typeface using Microsoft Word in 12-point Century Schoolbook font.

Dated: September 9, 2026

/s/ *Misha Tseytlin*
MISHA TSEYTLIN

## CIRCUIT RULE 30(d) CERTIFICATE

Pursuant to Circuit Rule 30(d), I hereby certify that all materials required by Circuit Rules 30(a) and (b) are included in the Required Short Appendix bound with the Wisconsin State Legislature's Principal Brief or the Separate Appendix filed concurrently.

Dated: September 9, 2026

/s/ *Misha Tseytlin*
MISHA TSEYTLIN

# SHORT APPENDIX

*Pursuant To Circuit Rule 30(a)*

## TABLE OF CONTENTS

**Pages**

1. Opinion, *Ams. For Citizen Voting PAC v. Wolfe, et al.*, No.2:26-cv-786, R.29 (E.D. Wis. July 14, 2026) ......................... SA.1–17

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

**AMERICANS FOR CITIZEN VOTING PAC,**
**Plaintiff,**

**v.** **Case No. 26-CV-786**

**MEAGAN WOLFE, et al.,**
**Defendants.**

**OPINION**

Wisconsin requires candidates seeking nomination for political office to collect a certain number of signatures to appear on the ballot. *See* Wis. Admin. Code EL § 2.05. On March 27, 2026, Governor Tony Evers signed into law 2025 Wisconsin Act 126 ("Act 126"), which requires that individuals who collect signatures on behalf of candidates be residents of the State of Wisconsin.[1] Plaintiff Americans for Citizen Voting ("ACV"), a Political Action Committee, sued the Administrator and Commissioners of the Wisconsin Elections Commission ("the commission"), all in their official capacities, claiming this law violates the First and Fourteenth Amendments. The Wisconsin State Legislature ("the legislature") now moves to intervene in this action. ACV takes no position on the intervention, *see* ECF No. 24, but the commission opposes the intervention, *see* ECF No. 25. For the reasons that follow, I deny the motion for intervention.

[1] This provision does not apply to nomination papers prepared for presidential and vice-presidential candidacies.

## I. LEGAL STANDARD

Federal Rule of Civil Procedure 24 governs intervention as of right and permissive intervention. Courts are required to grant intervention if the movant can prove: "(1) timely application; (2) an interest relating to the subject matter of the action; (3) potential impairment, as a practical matter, of that interest by the disposition of the action; and (4) lack of adequate representation of the interest by the existing parties to the action." *Bost v. Illinois State Board of Elections*, 75 F.4th 682, 686 (7th Cir. 2023) (quoting *State v. City of Chicago*, 912 F.3d 979, 984 (7th Cir. 2019)) (citing Fed. R. Civ. P. 24(a)). I "must accept as true the non-conclusory allegations of the motion." *City of Chicago*, 912 F.3d at 984. "The proposed intervenor has the burden of establishing all four elements; the lack of even one requires that the court deny the motion." *Planned Parenthood of Wisconsin, Inc. v. Kaul*, 942 F.3d 793, 797 (7th Cir. 2019).

If a movant does not qualify for intervention as a matter of right, a court may still permit intervention if the movant "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1). Courts "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights" when ruling on permissive intervention. Fed. R. Civ. P. 24(b)(3). "Whether to allow permissive intervention is a highly discretionary decision," which "'leaves the district court with ample authority to manage the litigation before it.'" *Bost*, 75 F.4th at 690–91 (quoting *Planned Parenthood*, 942 F.3d at 803). In determining whether to permit intervention under this rule, "the only *required* considerations . . . are undue delay and prejudice to the rights of the original parties." *Id.* (emphasis in original).

## II. INTERVENTION AS OF RIGHT

The legislature claims it is entitled to intervene as of right because it meets all four requirements of Rule 24(a)(2). The commission disagrees, arguing that it fails on the second and fourth conditions: it does not have an interest in the litigation and the existing parties already adequately represent any interest it does have. ECF No. 25 at 4.[2] As I explain below, I agree on both counts: the legislature does not have an independent interest and it has not demonstrated that any interest it does have is not adequately represented. Therefore, it may not intervene as of right.

### A. Interest in the Litigation

"Whether an applicant has an interest sufficient to warrant intervention as a matter of right is a highly fact-specific determination." *Sec. Ins. Co. of Hartford v. Schipporeit, Inc.*, 69 F.3d 1377, 1381 (7th Cir. 1995). The Seventh Circuit counsels that an interest must be "direct, significant, and legally protectable" to qualify under the rule. *Bost*, 75 F.4th at 686. This "unique" interest must be "based on a right that belongs to the proposed intervenor rather than to an existing party in the suit," meaning that the interest is not "derived from the rights of an existing party." *Id.* at 687. The uniqueness of the right does not mean the interest must accrue only to the intervenor. *Id*.

The legislature argues that the following Wisconsin statute provides it with an interest in the litigation at hand:

[2] The commission argues I do not need to consider Federal Rule of Civil Procedure 24 because the statute as applied to these facts violates the Wisconsin Constitution and that is dispositive. ECF No. 25 at 4. While I agree that the statute violates the Wisconsin constitution, this fact is dispositive only because it makes it impossible for the legislature to meet the standards of Rule 24. I explain this in more detail *infra*.

> When a party to an action challenges in state or federal court the constitutionality of a statute, facially or as applied, challenges a statute as violating or preempted by federal law, or otherwise challenges the construction or validity of a statute, as part of a claim or affirmative defense, the assembly, the senate, and the legislature may intervene as set forth under [Wis. Stat. §] 13.365 at any time in the action as a matter of right by serving a motion upon the parties as provided in [Wis. Stat. §] 801.14.

Wis. Stat. § 803.09(2m). *See* 2017 Wis. Act 369.

The plain language of the statute makes it appear as though all courts—even federal courts—have no choice but to permit the legislature to intervene any time a statute is challenged on the basis of the federal or state constitutions. But, as the Seventh Circuit observed about this statute, it "cannot supplant the Federal Rules of Civil Procedure and make intervention automatic." *Planned Parenthood*, 942 F.3d at 797. Intervention "is a purely procedural right and even in a diversity suit it is the Federal Rules of Civil Procedure rather than state law that dictate the procedures, including who may intervene." *Williams v. Katz*, 23 F.3d 190, 192 (7th Cir. 1994). Moreover, this action originates from federal question jurisdiction, not diversity, and therefore the supremacy of the Federal Rules of Civil Procedure "is even more pronounced." *Planned Parenthood*, 942 F.3d at 797. This statute can do no more than express Wisconsin's "strong policy judgment." *Id*. I must still independently determine whether this statute conveys an interest sufficient to satisfy the requirements of Rule 24 in the litigation at hand.

In this case, the statute does not convey a "direct, significant, and legally protectable interest," because, as I explain below, the statute is unconstitutional under the Wisconsin constitution as applied to the facts of this case. *Bost*, 75 F.4th at 686. The legislature cannot have a legally protectable interest justifying intervention if it is constitutionally barred from participating in the litigation at hand.

The source of the statute's unconstitutionality under the Wisconsin constitution is the state government's separation of powers principles. Wisconsin's constitution separates the government into three coordinate branches, each with different powers. The branches mirror those of the federal government: legislative, executive, and judicial. Wis. Const. Arts. IV, V, VII. "Core powers" belong exclusively to each branch, while "shared powers" "lie at the intersections of the exclusive core constitutional powers." *Evers v. Marklein*, 2024 WI 31, ¶¶ 10–11, 8 N.W.3d 395 (cleaned up). "Where the constitution has conferred power on a single branch, that is considered a core constitutional power of that branch [and] . . . no other branch may take it up and use it as its own." *Kaul v. Wis. State Legislature*, 2025 WI 23 ¶ 11, 21 N.W.3d 513 (internal quotations omitted) [hereinafter *Kaul*]. "[A]ny exercise of [core power] authority by another branch of government is unconstitutional." *Gabler v. Crime Victims Rights Bd.*, 2017 WI 67, ¶ 31, 897 N.W.2d 384 (quoting *State ex rel. Fielder v. Wis. Senate*, 155 Wis2d 94, 100, 454 N.W.2d (1990)) (emphasis in original).

Article IV, Section 1 of the Wisconsin constitution "vests the 'senate and assembly' with the 'legislative power' which 'is the authority to make laws, but not to enforce them.'" *Evers*, 2024 WI 31, ¶ 12 (quoting *Koschkee v. Taylor*, 2019 WI 76, ¶ 11, 929 N.W.2d 600). Article V, Section 1 of the Wisconsin constitution "vests the governor with the 'executive power.'" *Evers*, 2024 WI 31, ¶ 15. "The executive branch's role is to effectuate the policies passed by the legislature"; this "comprises the ability to determine 'what the law requires as well as applying it.'" *Id*. (quoting *Service Employees International Union, Local 1 v. Vos*, 2020 WI 67, ¶ 99, 946 N.W.2d 35 [hereinafter *SEIU*]).

The Wisconsin Supreme Court previously held that the intervention statute is not facially unconstitutional, meaning it has *some* constitutional applications. *SEIU*, 2020 WI 67, ¶ 83. However, this was a "limited" decision and a "narrow[] conclu[sion]." *Democratic Nat'l Comm. v. Bostelmann*, 2020 WI 80, ¶ 6, 949 N.W.2d 423. Whether there may be some unconstitutional applications, particularly based upon separation of powers principles, remains an open question. *See id.* ¶ 4 n.2 (noting that separation of powers arguments were not "comprehensive[ly]" briefed or addressed); *SEIU*, 2020 WI 67, ¶ 73 ("We express no opinion on whether individual applications or categories of applications may violate the separation of powers . . ."); *Kaul*, 2025 WI 23, ¶ 6 (noting that *SEIU* "left open . . . the possibility that individual applications of the [intervention statute] . . . might violate the constitution"). Thus, this is a matter of first impression.[3]

The challenged statute regarding circulators was passed and signed into law in 2025. Once the law went into effect, the legislature completed its task in making the law. At that point, the executive began enforcement efforts. ACV brought this action in 2026, when the executive was carrying out its responsibility to give the law effect by enforcement. Defending the law against the constitutional challenge falls squarely within the executive's "core" power of executing the law. *Kaul*, 2025 WI 23 ¶ 28. The legislature argues that to "defend" a law does not implicate the "execution" of a law. ECF No. 27 at 8. But the Wisconsin Supreme Court holds that "[l]itigation on behalf of the state is chiefly

---

[3] "When no decision from the state supreme court squarely controls, federal courts predict how the relevant state court would rule, otherwise called an '*Erie* guess.'" *Giovannelli v. Walmart Inc.*, 164 F.4th 1052, 1054 (7th Cir. 2026). I base my opinion on the Wisconsin state court decisions available to me, making a best attempt to predict how the Wisconsin Supreme Court would rule.

a core executive function." *Kaul*, 2025 WI 23 ¶ 28. The Wisconsin Supreme Court is clear: "The constitution does not empower the legislature to participate in the execution of the law, nor can the legislature give itself such authority." *Evers*, 2024 WI 31, ¶ 33. Moreover, only when the legislature "has an institutional interest *rooted in the constitution*" is the power to litigate on the state's behalf considered a shared one. *Kaul*, 2025 WI 23 ¶ 28 (emphasis added). As I explain below, the legislature's constitutional powers are not implicated here. Because the application of the statute would be unconstitutional under the Wisconsin constitution in this litigation, the intervention statute does not apply here and cannot convey an interest. The legislature does not—and cannot—have a legally protectable interest arising from the intervention statute.

The legislature contends that the U.S. Supreme Court's decision in *Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179 (2022), dictates the opposite result. But the legislature is wrong. In *Berger*, the NAACP of North Carolina challenged the constitutionality of a voter identification law. 597 U.S. at 186. The North Carolina legislature, finding the attorney general's defense of the law insufficient, moved to intervene twice, but the district court denied the motions. *Id*. at 185–88. Ultimately, the Supreme Court held that the district and appellate courts erred in applying a presumption that the elections board adequately represented the legislative leaders' interests. *Id*. at 195.

In holding that the North Carolina legislature had the right to intervene, the U.S. Supreme Court cautioned that states have a "prerogative to select which agents may defend its laws and protect its interests." *Id*. at 197. Indeed, "federal courts should rarely question that a State's interests will be practically impaired or impeded if its duly

authorized representatives are excluded from participating in federal litigation challenging state law." *Id.* But in this case the legislature is *not* a "duly authorized representative." Under the Wisconsin constitution's separation of powers principles, the legislature is not authorized to represent the state in the execution of a law, including by defending the law. If I were to allow the legislature to intervene in spite of the fact that the intervention law is unconstitutional under the Wisconsin constitution as applied here, I would be "evinc[ing] disrespect for [Wisconsin's] chosen means of diffusing its sovereign powers among various branches and officials," which is the very thing the Supreme Court warns against.[4] *Id*.

Additionally, the *Berger* court did not grapple with the constitutionality of the intervention statute, largely because the North Carolina election board appeared to waive the issue when it conceded that the legislature could permissively intervene or intervene as a matter of right if the attorney general did not represent the election board. *Id*. at 194. In contrast, the commission and attorney general here challenge the constitutionality of intervention in all manners and argue it is impossible for the legislature to participate in a constitutionally appropriate manner. The commission has waived nothing and made no concessions. *Berger* does not compel me to allow the legislature to intervene.

The legislature also points to a Wisconsin Supreme Court decision, arguing it too precludes my conclusion. In *Bostelmann*, the Wisconsin Supreme Court answered a

---

[4] The *Berger* court held that the lower courts "erred as a matter of law . . . by failing to afford due respect to North Carolina's law designating legislative leaders as its agents in litigation of this sort." *Berger*, 597 U.S. at 200 n.*. It would be of equal—if not greater—disrespect to Wisconsin's system of laws to ignore the fact that the "law designating legislative leaders as its agents in litigation of this sort" is unconstitutional as applied here.

narrow question certified to it by the Seventh Circuit: "whether, under Wis. Stat. § 803.09(2m), the State Legislature has the authority to represent the State of Wisconsin's interest in the validity of state laws." 2020 WI 80, ¶ 1. In its answer, the Wisconsin Supreme Court held that the *statutory language* of the intervention statute granted the legislature an "interest in the validity of state laws." *Id.* ¶ 4. But the *Bostelmann* court explicitly noted that the "question certified is not a wide-ranging constitutional inquiry." *Id*. In other words, the question presented to the Wisconsin Supreme Court was not whether the statute was constitutional as applied to that action; it was whether the text of the statute granted an interest. The constitutional separation of powers issues remained plainly unaddressed. *Id.* ¶ 4 n.2 (noting that separation of powers arguments were not "comprehensive[ly]" briefed or addressed). This case does not turn on whether the statute's text, without reference to the Wisconsin constitution, grants an interest. The question is whether the text of the statute *in conjunction* with the Wisconsin constitution and in the context of this legal action grants an interest. The answer is no, and neither the Wisconsin Supreme Court nor the Seventh Circuit's holdings in either *Bostelmann* case command a different conclusion. *See generally Bostelmann*, 2020 WI 80; *Democratic Nat'l Comm. v. Bostelmann*, 977 F.3d 693 (7th Cir. 2020).

I note that I am not the only jurist to recently find that allowing the legislature to intervene under these or similar circumstances is unconstitutional under the Wisconsin constitution. Judge Everett D. Mitchell, a Dane County Circuit judge, is now presiding over an action challenging the constitutionality of certain absentee voting laws as they pertain to blind individuals. *Disability Rights Wisconsin v. Wis. Elections Comm.*, No. 24CV1141 (Wis. Cir. Ct. Dane Cnty. Jan 26, 2026). In that case, plaintiffs filed suit against the

commission and, as here, the legislature moved to intervene. Like me, Judge Mitchell found that although the intervention statute "plainly authorizes the legislature's intervention," it only does so "because the statute is written so broadly as to encompass near every case imaginable." *Id.* at *2. Moreover, "as applied to the facts of th[at] case"—which closely mirror those of this one—intervention by the legislature "would violate the separation of powers." *Id*. This decision is now on appeal with no decision yet rendered, but Judge Mitchell's thoughtful opinion is nonetheless instructive.

Having established that the intervention statute does not grant the legislature an interest in this litigation, the question remains whether the legislature possesses an interest by some other means. Indeed, the legislature presses that it has an independent interest in "defending the efficacy and integrity of its own constitutional authority to make laws for the State of Wisconsin." ECF No. 20 at 15. These interests are particularly acute here, it argues, because the challenged statue relates "directly to the composition of the legislative body itself." *Id*. But the legislature fails to identify any manner in which the challenged law has any effect on its "constitutional authority to make laws," regardless of whether those laws pertain to the composition of the legislature. Moreover, the argument that the legislature has some special relationship to these laws because its body is composed of elected officials is absurd. By that logic, the Wisconsin Supreme Court, likewise composed of elected individuals and subject to laws regarding circulators, would also have the right to intervene in this action. Of course, that would be preposterous.

As previously explained, the Wisconsin constitution empowers the legislature to "make laws," which "encompasses the ability to determine whether there shall be a law, to what extent the law seeks to accomplish a certain goal, and any limitations on the

execution of the law." *Evers*, 2024 WI 31, ¶ 12. Where these powers are implicated, the constitution permits the legislature's intervention. For example, where the legislature challenges a governor's veto, necessarily implicating the power to make laws, the intervention statute is constitutional. *SEIU*, 2020 WI 67, ¶ 72 n.21. But this power is not implicated here.

Recall that the power to litigate on the state's behalf is a shared power when the legislature "has an institutional interest rooted in the constitution." *Kaul*, 2025 WI 23 ¶ 28. The constitution gives the legislature the power to make laws, but not to execute them. Defending a law is part of the executive function, because in order to enforce a law it must be in effect. If this litigation leads to a determination that the challenged statute is unconstitutional, the executive will have no law to enforce. In contrast, even if the statute is found unconstitutional, the legislature may continue to make laws, even very similar laws, in hopes that a different variation may pass constitutional muster. Therefore, the legislature does not have an interest in the litigation arising from the Wisconsin constitution or any other source.

The lower federal courts "have by and large adopted an expansive understanding of intervention on the theory that anyone who may be affected by the outcome of a case should have a right to participate." Leading Case, *Berger v. North Carolina State Conference of the NAACP*, 597 U.S. 179 (2022), HARV. L. REV. 390, 390 (2022); *see e.g.*, *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967) (describing Rule 24(a) as embodying a policy of "involving as many apparently concerned persons as is compatible with efficiency and due process"). That theory, however, is at odds with the original understanding of Rule 24(a). *Id.*; *see also* Caleb Nelson, *Intervention*, 106 VA. L. REV.

271, 301 (2020) (explaining that the text, purpose and context of Rule 24(a) "all support a more restrained reading" of the provision). *Berger* does not clearly articulate what type of "interest" sufficiently complies with Rule 24(a), but it does not endorse an expansive understanding of intervention. Here, the legislature does not establish that it is a proper party to plaintiff's claim for relief. Therefore, it does not have an interest in the litigation, and it may not intervene as of right.

**B. Adequate Representation**

The legislature's lack of interest is dispositive. However, the motion for intervention must also fail because the legislature does not demonstrate that any interest it has is inadequately represented. As noted in *Berger*, when there is a divided government, the state may choose to authorize multiple state government officials to represent its interest in order to "give voice to a different perspective." 597 U.S. at 198. But even then, the court goes no further than to "acknowledge that a presumption of adequate representation is inappropriate when a duly authorized state agent seeks to intervene to defend a state law." *Id*. at 197. It continues:

> Any presumption against intervention is *especially* inappropriate when wielded to displace a State's prerogative to select which agents may defend its laws and protect its interests. Normally, a State's chosen representatives should be greeted in federal court with respect, not adverse presumptions. If the intervenor in [another case] faced only a "minimal" burden, it cannot be that duly designated state agents seeking to vindicate state law should have to clear some higher hurdle.

*Id.* at 197–98 (emphasis in original). While *Berger* holds that a presumption of adequacy is inappropriate and the burden of demonstrating adequate representation is "minimal," it does not hold that the burden is nonexistent. Nor does it hold that the existence of any state law giving a state government representative the authority to speak on behalf of the

state would *automatically* mean that representation is inadequate. As previously discussed, the Federal Rules of Civil Procedure control procedure in the federal courts and trump any state laws. *Planned Parenthood*, 942 F.3d at 797. Therefore, *Berger* does not relieve proposed intervenors of the burden of demonstrating *some* level of inadequate representation. In this case, the legislature fails to demonstrate that the existing representation is inadequate to any degree.

The facts of this case differ from those in *Berger*. There, the elections board, represented by the attorney general, presented a derelict defense. It argued it only sought to "obtain[] guidance regarding which law it would need to enforce in an upcoming election," rather than defending the law. *Id*. at 186. It offered one paltry affidavit with no expert testimony in "opposition" to a motion for a preliminary injunction, which itself was supported by *five* expert reports. *Id*. at 188. Moreover, the legislature was not only prepared to defend the law, it attempted to do so by lodging an *amicus* brief, its own set of expert reports, and a variety of other declarations. *Id*.

The commission here is handing the case totally differently. Represented by the attorney general, it has strongly defended the challenged statute. First, it removed the action to federal court. Second, it responded within one week to an emergency motion for a temporary restraining order with a thirty-page brief in opposition, an affidavit, and three exhibits. Third, in communications with the court, it has made clear that it intends to defend the statute at issue without reservation.

The legislature questions the commission's willingness to fully defend the challenged statute, noting some of the commission's previous actions in other cases. ECF No. 20 at 21. But it presents "nothing to indicate that the attorney general [is] planning to

throw the case" here. *Flying J, Inc. v. Van Hollen*, 578 F.3d 569, 573 (7th Cir. 2009). In addition, the legislature notes that it intends to include a discussion of *Luft v. Evers*, 963 F.3d 665 (7th Cir. 2020), in its defense which the commission did not mention in its brief in opposition to the application for a temporary restraining order. ECF No. 20 at 19. Aside from the fact that the commission might rely on *Luft* in its case in chief, I agree with the commission that a party's strategy is not indicative of the strength or adequacy of its defense.[5] Moreover, differences in litigation strategy do not amount to inadequate representation. *See Berger*, 597 U.S. at 211–12 (Sotomayor, J., dissenting) (a choice about litigation strategy does not render representation inadequate) (citing 7C Wright, Miller, & Kane § 1909; *Planned Parenthood*, 942 F.3d at 810–11 (Sykes, J., concurring)); *Planned Parenthood*, 942 F.3d at 801 (7th Cir. 2019) (citing *Wisconsin Educ. Ass'n Council v. Walker*, 705 F.3d 640, 659 (7th Cir. 2013)); *B.H. v. McDonald*, 49 F.3d 294, 297 (7th Cir. 1995) (denying a motion to intervene where the conflict arose out of a party's "considered judgment" about strategy); *United States v. Bd. of School Comm'rs of City of Indianapolis, Ind.*, 466 F.2d 573, 575 (7th Cir.1972) (taking a different view of applicable law does not amount to inadequate representation).

[5] The legislature points to a different district court decision permitting its intervention based partly upon the fact that it intended to raise several different issues from the existing parties. *Liebert v. Wis. Elections Comm.*, 345 F.R.D. 169,172 (2023). Aside from the fact that I am not bound by another district court's decision, in that case a difference in defense strategies was only *one* aspect of the court's reasoning. *Id*. That court cited several defense deficiencies. *See also Driftless Area Land Conservancy v. Huebsch*, 969 F.3d 742, 749 (7th Cir. 2020) (permitting intervention when defense arguments differed *and* several other elements of the defense differed). Where only one single difference between defense strategies was presented, the Seventh Circuit has merely suggested in a footnote that it "might be" enough to meet the standard. *Bost*, 75 F.4th at 690 n.6.

Moreover, what appears to be happening is that in public law cases like the present one, the legislature seeks to intervene as a matter of course. The Milwaukee Journal Sentinel reports that the legislature has spent over $25 million dollars in fees to outside counsel, including through frequent intervention in lawsuits. Francesca Pica, Mary Spicuzza, & Anna Kleiber, *Wisconsin Legislature spent $26.2 million in taxpayer money on private attorneys since 2017*, MILWAUKEE J. SENTINEL (July 17, 2025), https://www.jsonline.com/story/news/politics/2025/07/17/gop-legislature-paid-millions-to-lawyers-on-gableman-maps-cases/84230957007/ (last visited July 10, 2026). This virtually routine intervention by the legislature suggests that it either doesn't pay any attention to the adequacy of the attorney general's performance or that it presumes such performance is inadequate. Its view appears to be that it has a right to intervene any time a law is challenged on constitutional grounds. But, as I have already explained, a state statute simply cannot grant an automatic right to intervention. Thus, I find that, in addition to lacking an interest in the litigation, the legislature has not shown inadequacy of representation.

## III. PERMISSIVE INTERVENTION

The legislature argues that I should simply sidestep the issue of constitutionality by permitting it to intervene even if I find it cannot intervene as a matter of right. But permissive intervention no less than intervention as of right would undermine the fact that defending the constitutionality of a state law is, according to the Wisconsin constitution, in the exclusive domain of Wisconsin's executive branch. Our system of federalism "involves striking a balance between national and state authority." *Palmer v. Com. Of Mass.*, 308 U.S. 79, 83 (1939). The concept of "our federalism" "does not mean blind

deference to 'States' Rights' any more than it means centralization of control over every important issue in our National Government and its courts." *Younger v. Harris*, 401 U.S. 37, 44 (1971). Instead, the federal government—including its system of courts—must "endeavor" "to vindicate and protect federal rights and interests" "in ways that will not unduly interfere with the legitimate activities of the States." *Id*. Federal and state governments are "joint participants in the governance of the Nation." *Alden v. Maine*, 527 U.S. 706, 748 (1999). "Congress and the Court embedded 'the fundamental principle of comity between federal courts and state governments that is essential to 'Our Federalism.''" *Cosgriff v. County of Winnebago*, 876 F.3d 912, 915 (7th Cir. 2017) (quoting *Fair Assessment in Real Estate Ass'n, Inc. v. McNary*, 454 U.S. 100, 103 (1981)).

It would violate principles of federalism to ignore the fact that allowing the legislature to intervene in this instance would violate the Wisconsin constitution, irrespective of whether it does so by right or by permission. In the interest of justice, I owe deference to the Wisconsin constitution as the embodiment of the State of Wisconsin's chosen method of governance. Moreover, it is well within my purview to decline permissive intervention, which is a "wholly discretionary" determination. *Sokaogon Chippewa Cmty v. Babbitt*, 914 F.3d 941, 949 (7th Cir. 2000). I find that neither intervention as of right nor permissive intervention are appropriate.

The motion to intervene is denied. The legislature may not participate in this litigation as a party to the action.

## IV. CONCLUSION

For the reasons stated, **IT IS ORDERED** that the proposed intervenor's motion to intervene (ECF No. 19) is **DENIED**.

Dated at Milwaukee, Wisconsin, this 14th day of July, 2026.

/s/ Lynn Adelman
LYNN ADELMAN
United States District Judge

**CERTIFICATE OF SERVICE**

I hereby certify that on this 9th day of September, 2026, I filed the foregoing with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to all registered CM/ECF users.

Dated: September 9, 2026

/s/ *Misha Tseytlin*
MISHA TSEYTLIN