No. 26-2581

IN THE UNITED STATES COURT OF APPEALS

FOR THE SEVENTH CIRCUIT

AMERICANS FOR CITIZEN VOTING PAC,

Plaintiff-Appellee,

v.

MEAGAN WOLFE, et al.,

Defendants-Appellees,

APPEAL OF: WISCONSIN STATE LEGISLATURE,

Proposed Intervenor.

APPEAL FROM A DECISION OF THE U.S. DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN,
THE HONORABLE LYNN ADELMAN, DISTRICT JUDGE

**BRIEF OF WISCONSIN ELECTIONS COMMISSION APPELLEES**

JOSHUA L. KAUL
Attorney General of Wisconsin

CHARLOTTE GIBSON
Assistant Attorney General
State Bar #1038845

Attorneys for the Commission Appellees

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 957-5218
(608) 294-2907 (Fax)
charlie.gibson@wisdoj.gov

## TABLE OF CONTENTS


JURISDICTIONAL STATEMENT ....... 1

ISSUES PRESENTED ....... 1

INTRODUCTION ....... 2

STATEMENT OF THE CASE ....... 4

I. Legal background: the Legislature's recent role in litigating cases against the executive branch. ....... 4

II. Procedural history of the underlying case. ....... 7

STANDARD OF REVIEW ....... 10

SUMMARY OF THE ARGUMENT ....... 11

ARGUMENT ....... 12

I. Under either form of intervention, the Legislature's intervention would violate the Wisconsin Constitution's separation of powers. ....... 12

A. Wisconsin's separation of powers divides governmental power among the three branches and allows the Legislature to make laws, not to execute them. ....... 13

1. The Wisconsin Constitution guards against the concentration of power in a single branch. ....... 14

2. The legislative branch's power is to make laws, not to execute them. ....... 15

B. The defense of this litigation constitutes core executive power, implicating no legislative power. ....... 17

1. Litigating on behalf of the state is an executive power unless a specific constitutional role for the Legislature is impacted. .......... 17

2. This litigation impacts no constitutional role of the Legislature.......... 20

C. Granting intervention here would transfer core executive branch power to the Legislature. .......... 22

D. The Legislature has no persuasive answer to the separation of powers problem here.......... 24

1. *Berger* decided no state constitutional separation of powers question.......... 25

2. *Berger* said to look at what state law requires, not to override it.......... 27

3. *Berger* said nothing about the separation of powers under the U.S. Constitution. .......... 28

4. *Berger* has numerous applications when multiple state officials participate in litigation. .......... 29

II. The Legislature failed to satisfy the interest and inadequacy prongs for intervention as of right. .......... 30

A. The Legislature does not have a cognizable interest. .......... 31

B. The Legislature fails to show that the existing defendants and Attorney General are inadequately defending the case.......... 34

III. The Legislature fails to show that the district court's denial of permissive intervention was outside its discretion. .......... 37

CONCLUSION .......... 39

## TABLE OF AUTHORITIES

### Cases

*Ams. for Citizen Voting PAC v. Wolfe*,
836 F. Supp. 3d 920 (E.D. Wis. 2026) .......... 9

*Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*,
576 U.S. 787 (2015) .......... 33

*Berger v. N.C. State Conf. of the NAACP*,
597 U.S. 179 (2022) .......... 3, *passim*

*Bost v. Ill. State Bd. of Elections*,
75 F.4th 682 (7th Cir. 2023) .......... 10–11, 31

*Buckley v. Am. Const. Law Found., Inc.*,
525 U.S. 182 (1999) .......... 20, 36

*Citizens for Strong Schs., Inc. v. Fla. State Bd. of Educ.*,
232 So. 3d 1163 (Fla. Dist. Ct. App. 2017) .......... 30

*Democratic Nat'l Comm. v. Bostelmann*,
2020 WI 80, 394 Wis. 2d 33, 949 N.W.2d 423 .......... 32, 33

*Democratic Nat'l Comm. v. Bostelmann*,
977 F.3d 639 (7th Cir. 2020) .......... 32

*Democratic Nat'l Comm. v. Bostelmann*,
No. 20-CV-0249-WMC, 2020 WL 1505640 (W.D. Wis. Mar. 28, 2020) .......... 32

*Driftless Area Land Conservancy v. Huebsch*,
969 F.3d 742 (7th Cir. 2020) .......... 10

*Evers v. Marklein*,
2024 WI 31, 412 Wis. 2d 525, 8 N.W.3d 395 .......... 6, 16, 21, 37

*Evers v. Marklein*,
2025 WI 36, 417 Wis. 2d 453, 22 N.W.3d 789 .......... 5

*Gabler v. Crime Victims Rts. Bd.*,
2017 WI 67, 376 Wis. 2d 147, 897 N.W.2d 384 .......... 14, 15

*Helgeland v. Wis. Muns.*,
2006 WI App 216, 296 Wis. 2d 880, 724 N.W.2d 208 ........................ 4, 18, 21

*Helgeland v. Wis. Muns.*,
2007 WI 59, 299 Wis. 2d 327, 731 N.W.2d 637 .............................................. 5

*Immigr. & Naturalization Serv. v. Chadha*,
462 U.S. 919 (1983) ........................................................................... 28

*In re Emergency Remedy by Md. State Bd. of Elections*,
292 A.3d 319 (2023) ............................................................................. 30

*Kaul v. Wis. State Legislature*,
2025 WI 23, 416 Wis. 2d 322, 21 N.W.3d 513 ......................... 6, 12, 18, 19, 21

*Keith v. Daley*,
764 F.2d 1265 (7th Cir. 1985) ................................................................ 31

*Koschkee v. Evers*,
2018 WI 82, 382 Wis. 2d 666, 913 N.W.2d 878 ........................................... 29

*Koschkee v. Taylor*,
2019 WI 76, 387 Wis. 2d 552, 929 N.W.2d 600 ........................................... 15

*Legislature v. Palm*,
2020 WI 42, 391 Wis. 2d 497, 942 N.W.2d 900 ........................................... 20

*Liebert v. Wis. Elections Comm'n*,
345 F.R.D. 169 (W.D. Wis. 2023) ............................................................ 38

*Ligas ex rel. Foster v. Maram*,
478 F.3d 771 (7th Cir. 2007) .................................................................. 11

*Luft v. Evers*,
963 F.3d 665 (7th Cir. 2020) .................................................................. 35

*Metro. Wash. Airports Auth. v.*
*Citizens for Abatement of Aircraft Noise, Inc.*,
501 U.S. 252 (1991) ............................................................................. 15

*One Wis. Inst., Inc. v. Nichol*,
310 F.R.D. 394 (W.D. Wis. 2015) ............................................................ 38

*Patriotic Veterans, Inc. v. Indiana*,
736 F.3d 1041 (7th Cir. 2013) .................................................................... 28

*Purcell v. Gonzalez*,
549 U.S. 1 (2006) ........................................................................................ 9

*Serv. Emps. Int'l Union, Loc. 1 v. Vos*,
2020 WI 67, 393 Wis. 2d 38, 946 N.W.2d 35.....................................5, *passim*

*Shea v. Angulo*,
19 F.3d 343 (7th Cir. 1994) ................................................................ 11, 38

*Solid Waste Agency of N. Cook Cnty. v. U.S. Army Corps of Eng'rs*,
101 F.3d 503 (7th Cir. 1996) ...................................................................... 22

*State v. City of Chi.*,
912 F.3d 979 (7th Cir. 2019) ............................................................... 10, 31

*State ex rel. Kaul v. Prehn*,
2022 WI 50, 402 Wis. 2d 539, 976 N.W.2d 821 ............................................ 29

*State ex rel. Woods v. Block*,
942 P.2d 428 (Ariz. 1997) ........................................................................... 24

*Stockman v. Leddy*,
129 P. 220 (Colo. 1912)................................................................................ 24

*U.S. Postal Serv. v. California*,
No. 26A305, 2026 WL 2687160 (U.S.S.C. Sept. 14, 2026) ........................... 29

*Va. House of Delegates v. Bethune-Hill*,
587 U.S. 658 (2019) .............................................................................. 33, 34

**Constitutional Provisions**

Wis. Const. art. II, § 2.................................................................................. 21

Wis. Const. art. IV, § 17................................................................................ 21

Wis. Const. art. VI, § 3.................................................................................. 19

**Statutes**

Wis. Stat. § 13.365(1) ........ 5, 6

Wis. Stat. § 13.365(2) ........ 5, 6

Wis. Stat. § 13.365(3) ........ 5

Wis. Stat. ch. 15 ........ 14

Wis. Stat. 15.01(9) ........ 14

Wis. Stat. 15.02(2) ........ 14

Wis. Stat. 15.61 ........ 14

Wis. Stat. § 20.765(1)(a) ........ 6

Wis. Stat. § 20.765(1)(b) ........ 6

Wis. Stat. § 165.25(6) ........ 19

Wis. Stat. § 803.09(1) ........ 4

Wis. Stat. § 803.09(2) ........ 4

Wis. Stat. § 803.09(2m) ........ 5, 18, 32

**Other Authorities**

Fed. R. Civ. P. 24(a)(2) ........ 2, *passim*

Fed. R. Civ. P. 24(b) ........ 4, 31, 37

Fed. R. Civ. P. 24(b)(1)(B) ........ 37

Fed. R. Civ. P. 24(b)(3) ........ 37

Francesca Pica, et al., *Wisconsin Legislature spent $26.2 million in taxpayer money on private attorneys since 2017*, Milwaukee J. Sentinel, July 17, 2025 ........ 6

John Locke, *The Second Treatise of Civil Government*, § 143 (1764) ........ 15

## JURISDICTIONAL STATEMENT

Proposed Intervenor's jurisdictional statement is complete and correct.

## ISSUES PRESENTED

1. Whether the Wisconsin State Legislature's intervention, whether as of right or permissive, in a case that the Wisconsin Elections Commission and Attorney General are actively defending, would violate the Wisconsin Constitution's separation of powers.

The district court answered yes.

This Court should answer yes and affirm.

2. Beyond the constitutional problem, whether the Wisconsin Legislature failed to meet all factors for intervention as of right because (1) it has no valid interest and (2) failed to show why the Wisconsin Elections Commission and Attorney General's representation would be inadequate.

The district court answered yes.

This Court should answer yes and affirm.

3. Whether the district court appropriately exercised its discretion in denying permissive intervention.

The district court answered yes.

This Court should answer yes and affirm.

## INTRODUCTION

The Wisconsin State Legislature (the "Legislature") seeks to intervene as a defendant in a challenge to a Wisconsin law that the Defendants-Appellees, the Wisconsin Elections Commission, its Administrator, and Commissioners, carry out.[1] The Commission Appellees are represented by the Wisconsin Attorney General and are vigorously defending the law, including successfully defeating the plaintiff's motion for a temporary restraining order.

Under the Wisconsin Constitution's separation of powers, the Legislature rarely has a constitutional role in litigating on behalf of the State. This case is not one of those rare exceptions. As the district court concluded, the Legislature does not have a constitutional role in litigating this case alongside the executive branch. Intervention would allow the Legislature to intrude upon the execution of the law and veto the executive branch's choices—exactly what it may not do, as the Wisconsin Supreme Court reinforced over its past two terms.

The district court held that the Legislature had no protected interest for purposes of Fed. R. Civ. P. 24(a)(2) because the Wisconsin Constitution's separation of powers gave it no valid constitutional role in litigating the case, and it concluded that permissive intervention presented the same state

[1] This brief refers to all Commission Appellees as the Commission.

constitutional problem. It also denied intervention on additional grounds: for intervention as of right, the Legislature made no showing that the Commission's defense of the case was inadequate, and for permissive intervention, it denied intervention as an exercise of its discretion. Those rulings were correct.

On appeal, the Legislature argues that the district court erred on the theory that *Berger v. North Carolina State Conference of the NAACP*, 597 U.S. 179 (2022), required the district court to override Wisconsin's separation of powers and allow the Legislature to intervene. *Berger* said nothing of the sort. It held only that a party validly authorized by state law to represent that State has an interest for purposes of Rule 24(a)(2). It said nothing deciding whether a state statute, much less Wisconsin's, constitutes such a valid authorization as a matter of state constitutional law.

While the constitutional bar ends the inquiry as to both types of intervention, the Legislature fails for additional reasons, too. As to intervention as of right, it made no showing of inadequacy, and under permissive intervention, it ignores that this was a discretionary decision for the district court to make.

## STATEMENT OF THE CASE

The Legislature seeks to intervene in a constitutional challenge to a state law enacted through 2025 Wis. Act 126, concerning qualifications for candidate petition circulators. The case is being defended by the Commission and Attorney General.

### I. Legal background: the Legislature's recent role in litigating cases against the executive branch.

The Wisconsin Legislature's assertion that it can intervene for the State in constitutional litigation is of recent vintage.

In 2006, in *Helgeland v. Wisconsin Municipalities*, the Wisconsin court of appeals considered a legislative motion to intervene in a case challenging the constitutionality of a statute under Wis. Stat. § 803.09(1)–(2), the Wisconsin counterparts of Rule 24(a) and (b). The court of appeals upheld the circuit court's denial of intervention, concluding that "[u]nder our tripartite system of government, the legislature's role is to determine public policy by enacting legislation. In contrast, it is exclusively the judiciary's role to determine the constitutionality of such legislation and it is the executive's role to defend the constitutionality of statutes." *Helgeland v. Wis. Muns.*, 2006 WI App 216, ¶¶ 1, 14, 296 Wis. 2d 880, 724 N.W.2d 208 (citations omitted). The Legislature petitioned for review to the Wisconsin Supreme Court, but the court denied

the petition. *Helgeland v. Wis. Muns.*, 2007 WI 59, 299 Wis. 2d 327, 731 N.W.2d 637.

In December 2018, after the election of Governor Tony Evers and Attorney General Josh Kaul but before they took office, the Legislature passed 2017 Wis. Act 369. Act 369 included a wide swath of new provisions; several sought to impose legislative litigation control over the executive branch's litigation and settlement of court actions. *See Serv. Emps. Int'l Union, Loc. 1 v. Vos*, 2020 WI 67, ¶¶ 50–51, 393 Wis. 2d 38, 946 N.W.2d 35 ("*SEIU*"), *overruled in part on other grounds by Evers v. Marklein*, 2025 WI 36, 417 Wis. 2d 453, 22 N.W.3d 789).

One form of litigation control was legislative intervention. Act 369 purported to authorize the Legislature's Joint Committee on Legislative Organization to authorize the Legislature, or one house thereof, to intervene as the Legislature, Assembly, or Senate in certain circumstances. Wis. Stat. § 13.365(3). It also provided that, in the types of cases authorized by Wis. Stat. § 13.365(3), which include challenges to the validity of a statute, the Assembly, the Senate, or the Legislature "may intervene . . . at any time in [an] action." Wis. Stat. § 803.09(2m); *see also* Wis. Stat. § 13.365(1)–(2) (allowing intervention by the Assembly or Senate). To pay outside counsel for that purpose, the Joint Committee was given an unlimited, sum sufficient

appropriation. Wis. Stat. § 13.365(1)–(2) (citing appropriation under Wis. Stat. § 20.765(1)(a)–(b)).

After the passage of Act 369, the Legislature intervened in a multitude of cases. As of mid-2025, the Legislature had reportedly spent $26 million in taxpayer funds on private law firms to oppose executive orders, defend statutes, and other similar matters.[2] The top-paid firm has been the Legislature's counsel here, Troutman Pepper, which, according to publicly available data, had made $10.6 million representing the Legislature.[3]

Parties brought a series of cases challenging provisions in Act 369 and earlier laws on separation of powers grounds. The resulting recent Wisconsin Supreme Court decisions have clarified Wisconsin's separation of powers doctrine as it applies to legislative incursions into the power of the executive branch. *See, e.g.*, *Kaul v. Wis. State Legislature*, 2025 WI 23, 416 Wis. 2d 322, 21 N.W.3d 513; *Evers v. Marklein*, 2024 WI 31, 412 Wis. 2d 525, 8 N.W.3d 395 ("*Evers I*").

After the *Kaul* decision, a state circuit court concluded that it would violate the Wisconsin separation of powers for the Legislature to intervene in

[2] Francesca Pica, et al., *Wisconsin Legislature spent $26.2 million in taxpayer money on private attorneys since 2017*, Milwaukee J. Sentinel, July 17, 2025, https://www.jsonline.com/story/news/politics/2025/07/17/gop-legislature-paid-millions-to-lawyers-on-gableman-maps-cases/84230957007/.

[3] Pica, et al., *supra* n.2.

*Disability Rights Wisconsin v. Wisconsin Elections Commission*, a case seeking accommodations from a state law under the Americans with Disabilities Act. The Legislature has appealed that ruling, and the respondents have asked the Wisconsin Supreme Court to take the case directly. *Disability Rts. Wis. v. Wis. Elections Comm'n*, Case No. 2026AP0535, https://wscca.wicourts.gov/case/2026AP000535 (last visited Oct. 9, 2026).

## II. Procedural history of the underlying case.

Here, the underlying case involves a First Amendment challenge to 2025 Wis. Act 126, a Wisconsin law that requires circulators of candidate nomination papers, other than in Presidential contests, to be eligible to vote in Wisconsin. (Dkt. 1-1:10–18.) Plaintiff-Appellee Americans for Citizen Voting PAC filed suit in the Waukesha County Circuit Court, alleging that it supports candidates who "promote election integrity" and "support policies that ensure only United States citizens vote in American elections." (Dkt. 1-1:12.) It seeks to use an out-of-state circulator firm that hires non-Wisconsin circulators. (Dkt. 1-1:12.)

The Commission, represented by the Attorney General, removed the matter to federal court on May 4, 2026. (Dkt. 1.) Americans for Citizen Voting PAC moved for a temporary restraining order and preliminary injunction that day. (Dkt. 6.) On May 6, the district court set a deadline of May 8, two days later, for the Commission to respond to the requests for emergency relief. (Dkt. 8.)

The Commission responded to plaintiff's motion with a 30-page brief addressing the relevant First Amendment merits and other injunction factors, including the harms of suspending the law during the pending nomination cycle and plaintiff's delay in seeking emergency relief. (Dkt. 14.) It also filed a declaration by the Commission's Deputy Administrator Robert Kehoe that presented facts relevant both to the harms a temporary injunction would cause and interests underlying the law. (Dkt. 15.)

The Legislature filed a four-page letter, indicating that it planned to move to intervene and asking for a briefing schedule for a preliminary injunction motion. (Dkt. 13.) It included no declaration but briefly discussed relevant legal issues. (Dkt. 13.)

The district court denied plaintiff's temporary restraining order motion on May 12, 2026. It concluded that the equities weighed against an injunction. It discussed Deputy Administrator Kehoe's declaration discussing the ongoing nomination paper period, and concluded, "[a]ccordingly, we are in a tight timeframe, and I agree with Deputy Administrator Kehoe that changing the rules now could create significant confusion among circulators, candidates, people wishing to file challenges, and election administrators themselves." (Dkt. 17:4.) The court cited Kehoe's explanation of how extending one deadline would impact another, since Wisconsin's fast-moving election pieces are interlocking. (Dkt. 17:4.) The court concluded that the plaintiff had not

overcome the presumption against change before an election under *Purcell v. Gonzalez*, 549 U.S. 1 (2006) (per curium), where the merits were not sufficiently clearcut in light of the Commission's briefing, plaintiff's delay in bringing suit, and the risks of changing the law during the ongoing nomination period. (Dkt. 17:6.)

The parties then briefed the Legislature's motion to intervene. The Commission argued that intervention under the circumstances would violate Wisconsin's separation of powers under either type of intervention. The district court agreed and denied the motion.

As to intervention as of right, the court wrote that defending a law against a First Amendment challenge "falls squarely within the executive's 'core' power of executing the law." (Dkt. 29:6 (citation omitted)); *Ams. for Citizen Voting PAC v. Wolfe*, 836 F. Supp. 3d 920, 926 (E.D. Wis. 2026). It reasoned that "[b]ecause the application of the statute would be unconstitutional under the Wisconsin constitution in this litigation," the Legislature had no protectable interest. (Dkt. 29:7.) It held that the Legislature also had no interest in defending the "efficacy and integrity" of its authority to enact laws. (Dkt. 29:10.)

The court additionally held that the Legislature did not show that the Commission and Attorney General's representation was inadequate where the Commission had removed the action, responded within one week to an

emergency motion with a 30-page brief, an affidavit, and three exhibits, and indicated its intent to defend the statute without reservation. (Dkt. 29:13.)

As to permissive intervention, the district court held that the Wisconsin constitution prohibited intervention, too, and that "moreover," it denied intervention as an exercise of its discretion. (Dkt. 29:15–16.)

This appeal followed. (Dkt. 32.) Meanwhile, in the district court, the parties have filed competing summary judgment motions, with briefing to conclude November 2, 2026. (Dkt. 40.)

**STANDARD OF REVIEW**

As to intervention as of right, Rule 24(a)(2) requires the court to allow intervention if the would-be intervenor can prove: "(1) timely application; (2) an interest relating to the subject matter of the action; (3) potential impairment, as a practical matter, of that interest by the disposition of the action; and (4) lack of adequate representation of the interest by the existing parties to the action." *State v. City of Chi.*, 912 F.3d 979, 984 (7th Cir. 2019) (citation omitted). Except for the timeliness factor, this Court reviews the factors de novo, *Driftless Area Land Conservancy v. Huebsch*, 969 F.3d 742, 746 (7th Cir. 2020).

Whether to allow permissive intervention is a highly discretionary decision. "[U]nlike the more mechanical elements of intervention as of right, it leaves the district court with ample authority to manage the litigation before

it." *Bost v. Ill. State Bd. of Elections*, 75 F.4th 682, 691 (7th Cir. 2023) (alteration in original) (citation omitted). A district court need not even "explicitly break out its reasoning" for denial of permissive intervention versus intervention as of right, so long as the "decision shows a thorough consideration of the interests of all the parties." *Ligas ex rel. Foster v. Maram*, 478 F.3d 771, 776 (7th Cir. 2007). Given this tremendous discretion, "[r]eversal of a district court's denial of permissive intervention is a very rare bird indeed, so seldom seen as to be considered unique." *Shea v. Angulo*, 19 F.3d 343, 346 n.2 (7th Cir. 1994) (citation omitted).

## SUMMARY OF THE ARGUMENT

The district court's decision was correct as to both types of intervention. Whether as of right or permissive, intervention here would violate the Wisconsin Constitution's separation of powers: the Legislature cannot constitutionally intervene to defend an enacted law that the Attorney General and executive branch are defending. In its most recent two terms, the Wisconsin Supreme Court has made clear what the Wisconsin court of appeals held twenty years ago: (1) the Legislature cannot execute the law in lieu of the executive branch, and (2) handling litigation for the State is part of executing the law.

The Legislature makes no serious effort to rebut the straightforward Wisconsin separation of powers precedent. It argues that the U.S. Supreme Court in *Berger* essentially overrode Wisconsin's constitution, but the Court did not decide issues of state constitutional law. Instead, it directed courts to ascertain who a State's validly appointed agents are. Here, under the Wisconsin Constitution, the Legislature is not a validly authorized agent for the State in the litigation at hand.

Beyond that constitutional failing, the district court properly denied the Legislature's motion for intervention as of right because it had no cognizable interest—either as the "State" or its own legislative interests—and because it failed to show that the Commission and Attorney General's defense of the case was inadequate. And the court appropriately exercised its discretion in denying permissive intervention based not only on the state constitutional bar, but also as a matter of its discretion.

## ARGUMENT

### I. Under either form of intervention, the Legislature's intervention would violate the Wisconsin Constitution's separation of powers.

Regardless of the intervention rule the Legislature proceeds under, intervention would violate Wisconsin's constitutional separation of powers because it would allow the Legislature to execute the law. As the Wisconsin Supreme Court recognized unanimously last year in *Kaul*, 416 Wis. 2d 322,

handling litigation is predominately a core power of the executive branch: the Legislature may not intrude unless the particular litigation implicates a constitutional role of the Legislature. The "interest" the Legislature claims here—a desire to ensure that a statute is upheld—is not such an instance.

The Legislature offers no real rebuttal to the Wisconsin precedent demonstrating the Wisconsin constitutional separation of powers problem here. Instead, it posits that the U.S. Supreme Court essentially overrode those cases in *Berger*, so that what Wisconsin courts say doesn't matter. But the Supreme Court does not decide questions of state law; it said nothing suggesting it was weighing in on any State's constitution, much less Wisconsin's. To the contrary, it exhorted federal courts to look to state law to ascertain who the State authorizes to act as its agent in court. Here, the Wisconsin Constitution authorizes the executive branch, not the Legislature, to act as the agent for the State.

### A. Wisconsin's separation of powers divides governmental power among the three branches and allows the Legislature to make laws, not to execute them.

The Wisconsin Constitution divides governmental power among the three branches of government: the legislative, which makes the law; the executive, which executes the law; and the judiciary, which resolves disputes over what the law means. To preserve this balance of power, the legislative branch's

constitutional role ends when a bill becomes law; thereafter, the executive branch implements the enacted law.

**1. The Wisconsin Constitution guards against the concentration of power in a single branch.**

Wisconsin's separation of powers derives from three constitutional vesting clauses that divide the core powers of government among three branches. State administrative agencies (like the Commission) are "part of the executive branch" and carry out executive functions. *SEIU*, 393 Wis. 2d 38, ¶ 60; *see also* Wis. Stat. §§ 15.61 (creation of elections commission; part of subch. III ("Independent Agencies") of Wis. Stat. ch. 15 ("Structure of the Executive Branch")); 15.01(9) ("'Independent agency' means an administrative agency within the executive branch created under subch. III"); 15.02(2) ("independent agency" is a "principal administrative unit of the executive branch").

Separating these powers provides the "central bulwark of our liberty," *SEIU*, 393 Wis. 2d 38, ¶ 30, by guarding against the "concentration of governmental power" in a single branch, *Gabler v. Crime Victims Rts. Bd.*, 2017 WI 67, ¶ 4, 376 Wis. 2d 147, 897 N.W.2d 384. Through this separation, the constitution "ensure[s] that each branch will act on its own behalf and free from improper influence by the others." *Id.* ¶ 32.

Because the legislative branch writes the laws, the separation of powers doctrine is especially wary of its stripping away power from co-equal branches

through legislation. The legislative usurpation of executive power poses a particular danger because it results in the "same persons who have the power of making laws"—that is, legislators—"also [having] in their hands the power to execute them." *Id.* ¶ 5 (quoting John Locke, *The Second Treatise of Civil Government*, § 143 (1764)).

### 2. The legislative branch's power is to make laws, not to execute them.

The legislative branch "may not 'invest itself or its Members with either executive power or judicial power.'" *Metro. Wash. Airports Auth. v. Citizens for Abatement of Aircraft Noise, Inc.*, 501 U.S. 252, 274 (1991) (citation omitted). Policing this principle requires distinguishing between executive and legislative power. This task is "not always easy," *SEIU*, 393 Wis. 2d 38, ¶ 34, but some basic principles lie beyond debate.

Generally, "[l]egislative power, as distinguished from executive power, is the authority to make laws, but not to enforce them." *Koschkee v. Taylor*, 2019 WI 76, ¶ 11, 387 Wis. 2d 552, 929 N.W.2d 600 (citation omitted). More specifically, the Legislature has constitutional authority "to declare whether or not there shall be a law; to determine the general purpose or policy to be achieved by the law; [and] to fix the limits within which the law shall operate." *Id.* (alteration in original) (citation omitted). So, when the legislative branch wants to achieve a policy goal, it may enact statutes that empower the

executive branch to administer a new program and tell the executive branch how to do so.

After the lawmaking process is complete, the baton passes to the executive branch to execute the law. *Evers I*, 412 Wis. 2d 525, ¶ 15; *SEIU*, 393 Wis. 2d 38, ¶ 95. In *Evers I*, the Wisconsin Supreme Court emphasized that the "executive branch's role is to effectuate the policies passed by the legislature." 412 Wis. 2d 525, ¶ 15. When "executing the law, the executive branch must make decisions about how to enforce and effectuate the laws": to decide what the law requires and how to apply it. *Id.* ¶ 16.

*Evers I* struck down statutes giving the Legislature's Joint Committee on Finance the power to veto program decisions of the Wisconsin Department of Natural Resources because they allowed a legislative body to execute the law. The court held that the challenged statutes "effectively create a legislative veto," allowing the Legislature to

> interfere with and even override the executive branch's core power of executing the law. . . . The review process ultimately permits the members of the JFC to serve as gatekeeper to the exercise of a core executive function. . . . This unfettered interference by the committee oversteps the boundaries of legislative authority by arrogating the executive branch's core power to choose which conservation projects best carry out the statutory purposes of the Program.

*Id.* ¶ 24. The court held that once the statutes are enacted, the Legislature may not "insert itself into the machinery of the executive branch in an attempt to control the executive branch's ability to carry out the law." *Id.* ¶ 23.

Because the power to execute the law is vested in the executive branch, only the executive branch may exercise it. Neither the Legislature nor the executive branch may "possess directly or indirectly, an overruling influence over the other[ ] in the administration of their respective powers." *Id.* ¶ 16 (alteration in original) (citation omitted). If the Legislature wishes to influence how its laws are carried out, it may pass legislation.

It does not matter that the Legislature believes that its choices are better than those the executive branch may make. It is "entirely irrelevant" whether "[t]he legislature may see itself as a benign gatekeeper." *SEIU*, 393 Wis. 2d 38, ¶ 107.

### B. The defense of this litigation constitutes core executive power, implicating no legislative power.

The Attorney General and Commission's defense of the law here constitutes core executive power. The Legislature has no constitutional role to defend the State's interest in litigation here, and so intervention would unconstitutionally interfere with the executive branch's exercise of its own power.

#### 1. Litigating on behalf of the state is an executive power unless a specific constitutional role for the Legislature is impacted.

In *Helgeland*, decided in 2006, the Wisconsin court of appeals affirmed the denial of intervention to the Legislature in circumstances similar to those here. The Legislature argued that it had an interest in ensuring that the law

challenged there, which prohibited insurance benefits for same-sex partners, continued to be valid. The Court disagreed:

> [B]y claiming an interest in defending its statutes against constitutional challenges, the Legislature conflates the roles of our government's separate branches. Under our tripartite system of government, the legislature's role is to determine public policy by enacting legislation. In contrast, it is exclusively the judiciary's role to determine the constitutionality of such legislation, and it is the executive's role to defend the constitutionality of statutes.

*Helgeland*, 296 Wis. 2d 880, ¶ 14 (citations omitted). While the Legislature attempted to statutorily expand its intervention powers in 2018 through Act 369, including by passing Wis. Stat. § 803.09(2m), it could not change the constitutional separation of powers.

In *Kaul*, the Wisconsin Supreme Court applied the principles of *Evers I* to strike down different litigation control provisions of Act 369, relating to settlement authority, as to two broad categories of actions. The Attorney General sought a declaration that Act 369's requirement that he obtain permission to settle all plaintiff's-side civil actions violated the separation of powers as to civil enforcement violations and executive agency administration actions. *See Kaul*, 416 Wis. 2d 322, ¶¶ 1–3. The Wisconsin Supreme Court unanimously agreed.

In so holding, *Kaul* emphasized that "[l]itigation on behalf of the state is chiefly a core executive function." *Id.* ¶ 27. The court held that conducting litigation is not a core executive power only where a constitutional power of the

Legislature is implicated. *Id.* ¶ 28. *Kaul* rejected the Legislature's suggestion that representing the State in litigation is a shared power between the executive and legislative branches. *Id.* ¶¶ 26–27.

While *Kaul* involved the Attorney General's resolution of plaintiff's-side cases, the same principles apply here. The Attorney General is a "high constitutional executive officer." *SEIU*, 393 Wis. 2d 38, ¶ 60 (citation omitted); Wis. Const. art. VI, § 3. He is statutorily charged with defending state agencies named in civil litigation. Wis. Stat. § 165.25(6). Since 1849, the Attorney General has exercised the executive powers traditionally held by a State's chief legal officer, including representing the State and its entities in litigation. *See* Wis. Rev. Stat. ch. 9, §§ 36–41 (1849). As the Wisconsin court of appeals recognized in *Helgeland*, the Attorney General carries that law into effect when he defends executive agency clients in litigation. How he conducts that litigation, like the litigation in *Kaul*, is a core executive function into which the Legislature may not intrude.

Here, the defense of the plaintiff's claims involves the execution of the state election law through litigation, a task that lies within the executive branch's core power. A challenge to candidate circulator regulations considers the effect on the pool of circulators eligible under the law and the ability of candidates to get on the ballot; if the law causes substantial burdens, courts also consider

the election law interests it serves. *See Buckley v. Am. Const. Law Found., Inc.*, 525 U.S. 182, 195–97 (1999). As the executive branch agency that carries out the law, the Commission exercises executive discretion through litigation, opposing the preliminary relief to ensure that the law remains stable during the election period; describing the fast-moving process of nomination papers, challenges, ballot preparation, and mailing; and explaining the wide pool of circulators, their importance to the integrity of the election process, and the fraud concerns leading up to the law's passage, including the Commission's referral of several individuals to a district attorney.

#### 2. This litigation impacts no constitutional role of the Legislature.

In contrast to the executive branch, the Legislature has no constitutional role or power to act as the "state's litigator-in-chief or even the representative of the people at large." *Cf. Legislature v. Palm*, 2020 WI 42, ¶ 235, 391 Wis. 2d 497, 942 N.W.2d 900 (Hagedorn, J., dissenting).

The Legislature can constitutionally be a litigant in cases impacting its own constitutional powers, but such cases are the exception. In most cases, permitting the Legislature to defend the law alongside the Attorney General transfers core executive branch power to the Legislature.

The exceptions where the Legislature can intervene involve cases implicating its own constitutional powers. The Legislature can intervene to

challenge a gubernatorial veto because that veto affects the Legislature's constitutional role in passing bills. *SEIU*, 393 Wis. 2d 38, ¶ 72 n.21 (listing cases brought by Legislature challenging Governor's veto of passed budget bills). But that role no longer exists once a law is enacted: it is then up to the executive branch to carry out the law, including by defending it. *See Evers I*, 412 Wis. 2d 525.

The Legislature says it has a constitutional role to see laws it once passed—whether elections laws or anything else—upheld. (Appellant Br. 32.) But *Kaul*, *Evers I*, and *Helgeland* rebut that proposition. Defending a law is part of the executive branch's job to carry it out; the Legislature must pass the baton once its bills become law. *See Kaul*, 416 Wis. 2d 322, ¶¶ 23, 27; *Evers I*, 412 Wis. 2d 525, ¶¶ 15–16, 23; *Helgeland*, 296 Wis. 2d 880, ¶ 14.

Here, litigating the constitutionality of 2025 Wis. Act 126 implicates no part of the lawmaking process. The Legislature has no constitutional role to litigate the case alongside the Attorney General and Commission. To exercise its policy preference on this topic, the Legislature may engage in the lawmaking process by passing new legislation that regulates candidate circulators differently. *That* is the power the Wisconsin Constitution gives it: to "enact laws" for "suffrage." (Appellant Br. 31 (quoting Wis. Const. art. II, § 2, art. IV, § 17).) The Wisconsin Constitution does not give it the power to litigate whether an already-enacted statute passes muster under the Constitution.

### C. Granting intervention here would transfer core executive branch power to the Legislature.

Allowing the Legislature to intervene here would intrude on the executive branch's core power by granting the Legislature the power to control the strategy, handling, and disposition of the case. An intervening party is a full participant in the lawsuit with all the rights of a party. *See Solid Waste Agency of N. Cook Cnty. v. U.S. Army Corps of Eng'rs*, 101 F.3d 503, 508 (7th Cir. 1996).

In the first Wisconsin case after *Kaul* deciding whether the Legislature can intervene in litigation that the executive branch is defending, a Wisconsin circuit court held that it would violate *Kaul* and the Wisconsin separation of powers for the Legislature to intervene. *Disability Rights Wisconsin v. Wisconsin Elections Commission* involved a challenge to a Wisconsin elections statute regulating how voters receive and return absentee ballots. *See Disability Rts. Wis. v. Wis. Elections Comm'n*, Case No. 24-CV-1141 (Wis. Cir. Ct. Dane Cnty. Jan. 26, 2026). The court denied the Legislature's motion to intervene because it would violate the separation of powers under *Kaul*:

> In light of [*Kaul*] . . . , WEC contends that "[a]llowing the [l]egislature to intervene here gives it the same power to control the handling of litigation rejected in Kaul."
>
> I agree. The present case will require WEC, through its counsel DOJ, to litigate whether the elections code unlawfully denies the plaintiffs some kind of right. Just as in *Kaul*, "DOJ's litigation in these categories of cases is, rather straightforwardly, the execution of laws enacted by the

> Legislature." Allowing the legislature to intervene under § 803.09(2m) would be to give the legislature a part of that core executive power to execute the laws. The separation of powers prohibits this and, accordingly, I conclude § 803.09(2m) is unconstitutional as applied to the specific facts of this case. I therefore deny the legislature's motion to intervene under § 803.09(2m).

(Dkt. 26 Ex. 1:15 (second and third alterations in original) (citation omitted).)[4]

Here, consistently, the district court held that "[d]efending the law against the constitutional challenge falls squarely within the executive's 'core' power of executing the law." (Dkt. 29:6.) The court held that the Legislature can participate in the execution of the law only where it has an institutional interest "rooted in the constitution," and it had no such interest here. It concluded that allowing intervention, whether as of right or permissive, would violate Wisconsin's Constitution. (Dkt. 29:7, 9, 10–11, 16.)

[4] The Legislature has appealed that ruling. *Disability Rts. Wis. v. Wis. Elections Comm'n*, Case No. 2026AP0535, https://wscca.wicourts.gov/case/2026AP000535 (last visited Oct. 9, 2026). On August 26, 2026, the Commission asked the Wisconsin Supreme Court to take the question directly so that the question is finally decided by the appellate courts—in part, because the question is arising both in state and federal court, and a ruling by the state supreme court will settle the question. *See id.*

That conclusion was correct. Like the litigation at issue in *Helgeland*, *Kaul*, and *Disability Rights*,[5] the case before this Court impacts no constitutional power of the Legislature. The district court correctly held that intervention here would run afoul of the Wisconsin Constitution.

### D. The Legislature has no persuasive answer to the separation of powers problem here.

The Legislature makes no real effort to argue that, under the Wisconsin Constitution, it can constitutionally intervene here. It ignores *Helgeland* and tries to override *Kaul* and *Evers I* with a theory that the U.S. Supreme Court in *Berger* held that no state's separation of powers doctrine can stand as a barrier to its intervention. But the U.S. Supreme Court does not rule on issues of state law, and it did not do so in *Berger*. The district court rightly rejected the Legislature's reading.

[5] While separation of powers principles vary from state to state, courts in other States have also recognized that allowing their Legislature to direct litigation violates the separation of powers. In *State ex rel. Woods v. Block*, 942 P.2d 428, 429–31 (Ariz. 1997), the en banc Arizona Supreme Court considered a state law that gave a legislatively-controlled committee the power to hire outside counsel and handle litigation relating to any federal law, regulation, or order. The committee appeared in pending cases and asserted positions contrary to those being asserted by the Attorney General on behalf of the State. *Id.* at 430–31. The Arizona Supreme Court held that the statute violated the Arizona separation of powers because conducting litigation on behalf of the State is an executive function, and both the committee and Attorney General were purporting to represent the State's interests. *Id.* at 437. Similarly, in *Stockman v. Leddy*, 129 P. 220, 223 (Colo. 1912), *overruled on other grounds by Denver Ass'n for Retarded Children, Inc. v. Sch. Dist. No. 1 of Denver*, 535 P.2d 200, 204 (Colo. 1975), the Colorado Supreme Court struck a law on separation of powers grounds that would have given the Legislature the power to prosecute or defend actions.

#### 1. *Berger* decided no state constitutional separation of powers question.

*Berger* addressed the criteria for intervention under Rule 24(a)(2), not whether a Legislature's intervention would violate a state constitution's separation of powers. The Legislature's mistaken view of *Berger* has expanded on appeal, with its reading now even further afield.

*Berger* considered whether North Carolina legislative intervenors satisfied the "interest" prong of Rule 24(a)(2), which requires a proposed intervenor to have a protected "interest" to intervene in federal court. A state statute authorized the legislative officials to intervene in litigation "as agents of the State." 597 U.S. at 193 (citation omitted). In answering whether the official had a protected interest, the Court relied on the scope of the state statute; the Court said that state officials had an interest where their "duly authorized" representatives appeared to defend a law. *Id.* at 191.

The Court made no suggestion that in ascertaining who a "duly authorized" representative for the State would be, courts may consider only a State's statutes, and cannot question whether that statute is constitutional. The Court thus did not determine whether the North Carolina statute was constitutional under its own constitution; it mentioned that issue only as a waived argument.

In opposing the legislators' intervention as a matter of right, the North Carolina executive branch officials primarily relied on their reading of the

state statute, arguing that it did not confer authority to represent that State's interests. *Id.* at 193. As an alternative argument, they asserted that the statute violated North Carolina's separation of powers doctrine. *Id.* at 193–94. The Court treated the constitutional argument as waived because the executive branch officials had agreed to permissive intervention—and intervention would present the same constitutional concerns whether it was mandatory or permissive. *Id.* at 194.

*Berger* held that courts should look to state law to determine their validly appointed agents. *Id.* at 193. And as the district court recognized here, figuring out which officials are "duly authorized" under state law depends not just on a State's statutes, but its constitution, too. The district court reasoned that the Wisconsin Legislature is not a "duly authorized" representative where the Wisconsin Constitution does not authorize it to represent the State, and that for the court to ignore the state constitution would be "evinc[ing] disrespect for [Wisconsin's] chosen means of diffusing its sovereign powers among various branches and officials." (Dkt. 29:8 (quoting *Berger*, 597 U.S. at 197) (alterations in original).)[6]

[6] The Legislature argues that the district court's citation to Justice Sotomayer's dissent in *Berger* illustrates that it misread the opinion. (Appellant Br. 42.) But the passage the district court was citing from Justice Sotomayer's opinion related only to what counts as adequacy under the fourth prong of Rule 24(a). It had nothing to do with States' constitutional principles as governing who is a "duly authorized" with an interest in the litigation. *See Berger*, 597 U.S. at 211–12 (Sotomayer, J., dissenting).

The Legislature tries without success to avoid that straightforward conclusion. Pasting together clauses from *Berger* and supplying its own verb, the Legislature describes *Berger* as "explain[ing]" that "'statutes authorizing the legislative leaders to participate' in the defense of state law do not violate separation-of-powers principles 'by usurping authority vested in the executive branch.'" (Appellant Br. 45 (second quoting *Berger*, 597 U.S. at 193–94).) *Berger* says nowhere that North Carolina's intervention statute didn't "violate separation-of-powers principles," and that phrase is not in the opinion. Instead, the Court said that North Carolina waived the question of whether the statute violated North Carolina's separation of powers and failed to offer "anything" to support its suggestion of what North Carolina's constitution required. *Berger*, 597 U.S. at 194. That is not a holding about the North Carolina constitution, much less about Wisconsin's.

### 2. *Berger* said to look at what state law requires, not to override it.

The Legislature adds a "Supremacy Clause" moniker to its theory, asserting that the district court lacked power to even adjudicate the Wisconsin constitutional problem here. (Appellant Br. 20, 40, 43.) But *Berger* said no such thing. The Court said that "States may organize themselves in a variety of ways," and that courts should respect those choices. *Berger*, 597 U.S. at 191, 193, 197. To the extent the Legislature is asserting some sort of preemption

theory, it offers no precedent and does not begin to do the hard work of showing that Wisconsin's constitutional law is preempted. *See, e.g.*, *Patriotic Veterans, Inc. v. Indiana*, 736 F.3d 1041, 1049 (7th Cir. 2013) (discussing standards for a court to find conflict preemption).

#### 3. *Berger* said nothing about the separation of powers under the U.S. Constitution.

The Legislature also posits that *Berger* reached a conclusion about the U.S. Constitution's separation of powers. (Appellant Br. 44, 46, 47.) It did not. The case was about whether North Carolina legislators could intervene in a challenge to a North Carolina law. The relationship between the branches of the federal government was not at issue.

Neither did *Immigration & Naturalization Service v. Chadha*, 462 U.S. 919, 940 (1983), take up the constitutionality of a federal statute that says Congress may appoint counsel if the executive branch official charged with enforcing a statute agrees with plaintiffs that it is unenforceable. (Appellant Br. 46.) And such a statute would not even be implicated in a situation like the one here, where the executive branch is actively defending a law.

Even if *Berger* had offered insights on the U.S. Constitution's separation of powers, Wisconsin would not be required to follow those principles in designing its own separation of powers. The Legislature offers no authority saying that Wisconsin has chosen to follow the U.S. Constitution's separation of powers

doctrine in lockstep. While it has followed it in many separation-of-powers areas, that is not uniformly the case, and sometimes it departs. *See, e.g.*, *State ex rel. Kaul v. Prehn*, 2022 WI 50, ¶ 43, 402 Wis. 2d 539, 976 N.W.2d 821 (contrasting the allocation of appointment authority between the legislative and executive branches under the U.S. and Wisconsin Constitutions).

#### 4. ***Berger* has numerous applications when multiple state officials participate in litigation.**

The Legislature also asserts that, if *Berger* means what the district court and Commission say, "there will be nothing left of *Berger*." (Appellant Br. 20, 35, 41–42.) Not so.

First, the separation of powers bar has no implications for situations where States choose to have multiple executive branch officials represent their interests in court. Wisconsin, for example, recognizes that the State's Superintendent of Public Instruction has an independent right to assert her interests in court, and that if the Governor or Attorney General will not do so, she can obtain her own counsel. *See Koschkee v. Evers*, 2018 WI 82, ¶ 14, 382 Wis. 2d 666, 913 N.W.2d 878. As a more general example, *United States Postal Service v. California*, No. 26A305, a recent challenge to U.S. Postal Service rules for ballot mailing that would have applied to the States, provides an instance of executive branch officials from a State taking different positions on a single issue. 2026 WL 2687160 (U.S.S.C. Sept. 14, 2026).

Second, even where intervention by legislative officials is on the table, the separation of powers question is unlikely to be uniform across all States. The Legislature asserts that all States' separation of powers doctrines are the same, (Appellant Br. 41, 46), but it provides no authority for that premise. As a general principle, state constitutions take varying approaches, with some recognizing a "strict" separation of powers and others applying more a fluid doctrine. *Compare, e.g.*, *Citizens for Strong Schs., Inc. v. Fla. State Bd. of Educ.*, 232 So. 3d 1163, 1170 (Fla. Dist. Ct. App. 2017) (Florida's organic law imposes a "strict" separation of powers between the branches of government), *with In re Emergency Remedy by Md. State Bd. of Elections*, 292 A.3d 319, 332 (2023) (Maine separation of powers doctrine should be applied with a "sensible degree of elasticity." (citation omitted)).

* * * * *

Whether as of right or permissive, legislative intervention here would violate Wisconsin's separation of powers. The district court correctly denied intervention on that ground.

## II. The Legislature failed to satisfy the interest and inadequacy prongs for intervention as of right.

The constitutional problem resolves this appeal, since intervention would violate the Wisconsin Constitution's separation of powers under

Rule 24(a)(2) or (b). But beyond that infirmity, the Legislature failed to satisfy the interest and adequacy prongs of Rule 24(a)(2).

A party seeking intervention must meet all four of Rule 24(a)(2)'s elements: "(1) timely application; (2) an interest relating to the subject matter of the action; (3) potential impairment, as a practical matter, of that interest by the disposition of the action; and (4) lack of adequate representation of the interest by the existing parties to the action." *Bost v. Ill. State Bd. of Elections*, 75 F.4th 682, 686 (7th Cir. 2023) (quoting *City of Chi.*, 912 F.3d at 984); Fed. R. Civ. P. 24(a)(2). The movant bears the burden of establishing its entitlement to intervene as of right, and the failure to meet any of the elements requires denial of the motion. *Keith v. Daley*, 764 F.2d 1265, 1268 (7th Cir. 1985). Here, the Legislature cannot show the second and fourth factors: (1) a cognizable interest in the proceeding and (2) that any interests it has will not be adequately represented by the Commission and Attorney General.

### A. The Legislature does not have a cognizable interest.

First, the Legislature does not have an interest under Rule 24(a)(2)'s second prong because it has no constitutional role in litigating this case to see a law upheld. The district court framed the constitutional problem as a failure of the Legislature to have a protected interest under Rule 24(a)(2).

The Legislature claims that in *Democratic National Committee v. Bostelmann*, 2020 WI 80, 394 Wis. 2d 33, 949 N.W.2d 423, the Wisconsin Supreme Court recognized that it has an "interest" to participate in litigation to ensure that statutes continue to be enforced. (Appellant Br. 29–30.) But *Bostelmann* addressed the statutory scope of Wis. Stat. § 803.09(2m), not the statute's constitutionality under the separation of powers.

For the limited task of statutory interpretation, and in a situation where no executive branch official was defending the law,[7] *Bostelmann* held that Wis. Stat. § 803.09(2m) gave the Legislature a statutory interest not only if its legislative interests were implicated, but in defending state statutes. *Bostelmann*, 394 Wis. 2d 33, ¶ 8. But construing the scope of Wis. Stat. § 803.09(2m) is a separate inquiry from determining the statute's constitutionality under the separation of powers.

The court expressly declined to take up the latter question. The court stated that it did not address separation of powers concerns because of the rushed nature of that proceeding—a certification question from this Court. *Bostelmann*, 394 Wis. 2d 33, ¶ 4 & n.2 (question not a "wide-ranging

[7] The Attorney General had withdrawn as the defendants' counsel due to a conflict, and the appointed special counsel declined to appeal an adverse ruling. *Democratic Nat'l Comm. v. Bostelmann*, No. 20-CV-0249-WMC, 2020 WL 1505640, *1 (W.D. Wis. Mar. 28, 2020) (unpublished) (Attorney General withdrawing and replaced with outside counsel); *Democratic Nat'l Comm. v. Bostelmann*, 977 F.3d 639 (7th Cir. 2020) (Legislature only appealing party).

constitutional inquiry," and noting lack of time for parties to address the separation-of-powers issue). In fact, three Justices flagged the separation-of-powers question for future cases. *Id.* ¶ 26 (Dallet, J., dissenting). Here, the constitutional question is squarely presented, and Wisconsin precedent answers the question.

The Legislature also argues that the Supreme Court has recognized that Legislatures have their own protected interest in election laws generally. (Appellant Br. 31.) That is incorrect. The case it relies on, *Arizona State Legislature v. Arizona Independent Redistricting Commission*, 576 U.S. 787, 800 (2015), recognized a far more limited interest: standing to challenge a law that would have permanently deprived a legislature of its power to initiate redistricting legislation. That interest, like the right to sue over a Governor's veto in the Wisconsin cases, *see SEIU*, 393 Wis. 2d 38, ¶ 72 n.21—goes to the Legislature's protected interest in its constitutional lawmaking function. It is not a generalized interest in all election litigation.

The Legislature has no protected interest in seeing an already-enacted law upheld. In *Virginia House of Delegates v. Bethune-Hill*, 587 U.S. 658, 666–67 (2019), the Court distinguished *Arizona State Legislature* in concluding that a legislative body had no protected interest in appealing a judgment that invalidated a state law. It said that legislative bodies have no

such interests once a law has been enacted, and lawmaking is complete. *Id.* at 668–69.

The Legislature does not have a protected interest in this case.

### B. The Legislature fails to show that the existing defendants and Attorney General are inadequately defending the case.

Separately, the Legislature fails to show that any interests it might have are inadequately represented. Relying on *Berger*, the Legislature says that there is no presumption of adequacy, as there would be in a situation where a private party sought to intervene and the Attorney General were defending a law. But the Legislature takes *Berger* too far, suggesting that it need not show inadequacy at all. (Appellant Br. 35.) That is incorrect.

*Berger* did not stop once it decided that the presumption of adequacy did not apply: it explained why the defendant's representation there did not adequately protect the interest in defending the law. In the course of the case, the defendant (1) offered no witness affidavits, even though the other side did; (2) did not seek a stay of the trial court's initial order; (3) did not describe its job as defending the law, but instead obtaining guidance about which version of the law would be in place; and (4) potentially had a conflict, since its appointing authority (who could apparently remove them) filed an amicus brief asserting that the law was unconstitutional. *Berger*, 597 U.S. at 198, 187, 189.

Here, no such facts are in play. The Commission and Attorney General swiftly responded to plaintiff's motion for a temporary restraining order with a 30-page brief comprehensively addressing the relevant First Amendment merits and other injunction factors, as well as a declaration that addressed both the harms presented by a temporary injunction and compelling reasons for the law. (Dkt. 14–15.) Indeed, the Legislature's description of the facts in its brief cites from those materials. (Appellant Br. 9.) The Legislature, in contrast, filed a letter indicating that it planned to move to intervene, asking for a briefing schedule for the preliminary injunction motion, and briefly discussing some of the legal factors. (Dkt. 13.)

In light of those filings, inadequacy is nowhere in sight. The Legislature offers two ideas: (1) Defendants' brief did not mention *Luft v. Evers*, 963 F.3d 665 (7th Cir. 2020), a case looking at absentee voting regulations, and (2) in a few other cases, the Commission has employed litigation strategies the Legislature disagrees with. (Appellant Br. 36–39.) Those points do not come close to showing inadequacy.

As the district court pointed out, a mere difference in legal strategy is not a basis for inadequacy. (Dkt. 29:14 (citing cases).) But even if strategic disagreements mattered, it is hard to imagine that the voter ID ruling in *Luft* would change the strategy of the case.

This case will involve the application of U.S. Supreme Court and lower court precedent—*Buckley* and its progeny—to assess a challenge to a candidate nomination paper regulation. The Legislature, whose counsel litigated *Luft* in the Seventh Circuit, points out that *Luft* examined voting regulations in the context of all a voter's opportunities to vote. (Appellant Br. 36.) As an initial matter, it is hard to imagine that a case about voting regulations would have overridden the case law governing signature gathering regulations. But in any event, *Buckley* and lower courts have conducted a similar inquiry to that for voting regulations: they ask about the burdens of the law based on the effect on the eligible pool of circulators—geographic limits (for Wisconsin's law, the whole State), any requirement that they be registered to vote or affiliated with a political party (not at issue in Wisconsin), and how many signatures the candidate needs (in Wisconsin candidate contests, between a few hundred and a few thousand). *Buckley*, 525 U.S. at 195–97. Analogizing to *Luft* would not change that basic inquiry.

The Legislature's argument about its satisfaction with the Commission's strategies in some other cases also shows no inadequacy here. It cites no case where a court has measured inadequacy for intervention purposes based on other cases not before the court. Instead, the Legislature's argument illustrates the constitutional problem at hand—the Legislature wants to take back the constitutional ball it was supposed to hand off, litigating the statute's defense

as it deems best. But the Wisconsin Constitution leaves that job to the executive branch. *Evers I*, 412 Wis. 2d 525, ¶¶ 15, 23–24. As the district court noted, the frequency of the Legislature's intervention efforts and money spent suggests that it is making no individualized consideration of the adequacy of the Attorney General and executive branch's representation. (Dkt. 29:15.)

So even aside from the constitutional bar, the Legislature fails the second and fourth prongs of the intervention test and is not entitled to intervene as of right.

### III. The Legislature fails to show that the district court's denial of permissive intervention was outside its discretion.

The Legislature also fails to show that the district court acted outside its broad discretion in denying permissive intervention. The district court rightly recognized, just as the *Berger* Court did, that the constitutionality of intervention does not hinge on whether it is as of right or permissive. (Dkt. 29:16); *Berger*, 597 U.S. at 194.

Rule 24(b) provides that a court may permit intervention as a matter of discretion if (1) the motion is timely and (2) the movant "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). The court, in exercising its discretion, must consider "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). Thus, a court may deny

permissive intervention where "adding the proposed intervenors could unnecessarily complicate and delay all stages of this case." *One Wis. Inst., Inc. v. Nichol*, 310 F.R.D. 394, 399 (W.D. Wis. 2015).

Here, nothing about the district court's denial makes this case the "rare bird" where reversal would be appropriate.[8] *Shea*, 19 F.3d at 346 n.2 (citation omitted). Beyond the Court's conclusion that the separation of powers problem barred permissive intervention, it added that, "[m]oreover, it is well within my purview to decline permissive intervention, which is a 'wholly discretionary' determination. . . . I find that neither intervention as of right nor permissive intervention are appropriate." (Dkt. 29:16.) Given the wide latitude given the district court on permissive intervention, the court was well within its power to deny intervention here.

---

[8] The Legislature also cites *Liebert v. Wisconsin Elections Commission*, 345 F.R.D. 169 (W.D. Wis. 2023), where a district court granted the Legislature's motion to intervene in a challenge to a state law. (Appellant Br. 51–52.) That motion was decided before *Evers I* and *Kaul*, and the court did not decide whether intervention would violate Wisconsin's separation of powers. And given the wide discretion granted to trial courts for permissive intervention, one court's grant does not mean another court cannot deny.

## CONCLUSION

The Commission asks this Court to affirm the district court.

Dated this 9th day of October 2026.

Respectfully submitted,

JOSHUA L. KAUL
Attorney General of Wisconsin

s/ Charlotte Gibson
CHARLOTTE GIBSON
Assistant Attorney General
State Bar #1038845

HANNAH S. JURSS
Assistant Attorney General
State Bar #1081221

Attorneys for the Commission Appellees

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 957-5218 (Gibson)
(608) 266-8101 (Jurss)
(608) 294-2907 (Fax)
charlie.gibson@wisdoj.gov
hannah.jurss@wisdoj.gov

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS**

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B), typeface requirements of Fed. R. App. P. 32(a)(5), and type style requirements of Fed. R. App. P. 32(a)(6).

This brief contains 8573 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and has been prepared in a proportionally spaced typeface using Microsoft Word 2013 in 13 point Century Schoolbook.

Dated this 9th day of October 2026.

s/ Charlotte Gibson
CHARLOTTE GIBSON
Assistant Attorney General

**CERTIFICATE OF SERVICE**

I certify that on October 9, 2026, I electronically filed the foregoing Brief of Wisconsin Elections Commission Appellees with the clerk of court using the CM/ECF system, which will accomplish electronic notice and service for all participants who are registered CM/ECF users.

Dated this 9th day of October 2026.

s/ Charlotte Gibson
CHARLOTTE GIBSON
Assistant Attorney General