**No.26-2581**

# In the United States Court of Appeals

## FOR THE SEVENTH CIRCUIT

AMERICANS FOR CITIZEN VOTING PAC,
PLAINTIFF-APPELLEE,
*v.*
MEAGAN WOLFE, *et al.*,
DEFENDANTS-APPELLEES,

APPEAL OF: WISCONSIN STATE LEGISLATURE,
PROPOSED INTERVENOR

On Appeal From The United States District Court
For The Eastern District of Wisconsin
Case No.2:26-cv-786
The Honorable Lynn Adelman, District Judge

## REPLY BRIEF OF THE WISCONSIN STATE LEGISLATURE

CARSON A. COX
TROUTMAN PEPPER LOCKE LLP
1001 Haxall Point, 15th Floor
Richmond, VA 23219
(804) 697-1338
carson.cox@troutman.com

ALEXANDER J. HILL
TROUTMAN PEPPER LOCKE LLP
600 Peachtree St. NE #3000
Atlanta, GA 30308
(404) 885-2763
alex.hill@troutman.com

MISHA TSEYTLIN
*Counsel of Record*
KEVIN M. LEROY
TROUTMAN PEPPER LOCKE LLP
225 W. Randolph St., Suite 2600
Chicago, IL 60606
(608) 999-1240 (MT)
(312) 759-1938 (KL)
(312) 443-0336 (fax)
misha.tseytlin@troutman.com
kevin.leroy@troutman.com

*Counsel for Proposed Intervenor Wisconsin State Legislature*

## TABLE OF CONTENTS


INTRODUCTION ........................................................................................ 1

ARGUMENT ........................................................................................ 2

I. Wisconsin Enacted A Legislative Intervention Statute Of Just The Type *Berger* Said Federal Courts Must Respect Under Rule 24(a)(2)'s Mandatory Intervention Analysis, And The District Court Had No Lawful Basis For Sidestepping That Clear Holding ........................................ 2

A. Defendants' Arguments On Rule 24(a)'s Interest And Adequacy-Of-Representation Elements—The Only Elements That They Dispute On Appeal—Are Wrong, Including Under *Berger* ........................................ 2

B. Defendants' Invocation Of Standard Separation-Of-Powers Principles Does Not Justify Defiance Of *Berger*'s Clear Holding ................ 8

II. Given Defendants' Failure To Develop Any Arguments In Defense Of The District Court Denying The Legislature Permissive Intervention Under Rule 24(b)(1)(B), This Court Can Simply Dispose Of This Appeal On This Ground, Including Under The Doctrines Of Appellate Forfeiture And Constitutional Avoidance ........................................ 18

CONCLUSION ........................................................................................ 21

## TABLE OF AUTHORITIES

### Cases

*Berger v. N.C. State Conf. of the NAACP*,
597 U.S. 179 (2022) .......... *passim*

*Bradley v. Vill. of Univ. Park, Ill.*,
59 F.4th 887 (7th Cir. 2023) .......... 20, 21

*Buckley v. Valeo*,
424 U.S. 1 (1976) .......... 12, 15

*Dalton v. Teva N. Am.*,
891 F.3d 687 (7th Cir. 2018) .......... 20

*Daniel v. Cook Cnty.*,
833 F.3d 728 (7th Cir. 2016) .......... 6

*Democratic Nat'l Comm. v. Bostelmann*,
949 N.W.2d 423 (Wis. 2020) .......... 2, 3

*Democratic Nat'l Comm. v. Bostelmann*,
977 F.3d 639 (7th Cir. 2020) .......... 2, 3

*Driftless Area Land Conservancy v. Huebsch*,
969 F.3d 742 (7th Cir. 2020) .......... 5

*Ernst v. Rising*,
427 F.3d 351 (6th Cir. 2005) .......... 12

*Evers v. Marklein*,
22 N.W.3d 789 (Wis. 2025) .......... 9

*Evers v. Marklein*,
8 N.W.3d 395 (Wis. 2024) .......... 13, 14, 15

*Helgeland v. Wis. Muns.*,
724 N.W.2d 208 (Wis. Ct. App. 2006) .......... 16

*INS v. Chadha*,
462 U.S. 919 (1983) .......... 13, 15

*Kaul v. Wis. State Legislature*,
21 N.W.3d 513 (Wis. 2025) .......... 13, 15

*Krislov v. Rednour*,
226 F.3d 851 (7th Cir. 2000) .......... 5

*La Union del Pueblo Entero v. Abbott*,
29 F.4th 299 (5th Cir. 2022) .......... 7

*Luft v. Evers*,
963 F.3d 665 (7th Cir. 2020) .......... 3, 5, 6, 7

*McCottrell v. White*,
933 F.3d 651 (7th Cir. 2019) .................... 20, 21

*Metro. Wash. Airports Auth. v. Citizens for Abatement of Aircraft Noise, Inc.*,
501 U.S. 252 (1991) .................... 12

*Serv. Emps. Int'l Union, Loc. 1 v. Vos*,
946 N.W.2d 35 (Wis. 2020) .................... 9, 13, 14

*Sutton v. Pfister*,
834 F.3d 816 (7th Cir. 2016) .................... 21

*Va. House of Delegates v. Bethune-Hill*,
587 U.S. 658 (2019) .................... 4, 16

*Williams v. Katz*,
23 F.3d 190 (7th Cir. 1994) .................... 19

**Constitutions**

N.C. Const. art. I, § 6 .................... 11

N.C. Const. art. III, § 1 .................... 12

N.C. Const. art. III, § 5 .................... 12

N.C. Const. art. III, § 7 .................... 13

U.S. Const. art. I, § 1 .................... 12

U.S. Const. art. II, § 1 .................... 12

Wis. Const. art. III, § 2 .................... 18

Wis. Const. art. IV, § 1 .................... 18

Wis. Const. art. VI, § 3 .................... 13

**Statutes And Rules**

2025 Wis. Act 126 .................... 5, 6

Fed. R. Civ. P. 24 .................... 2, 10, 19

Wis. Stat. § 6.02 .................... 6

Wis. Stat. § 8.15 .................... 6

Wis. Stat. § 8.16 .................... 6

Wis. Stat. § 803.09 .................... *passim*

**Other Authorities**

4 Oxford English Dictionary (J.A. Simpson & E.S.C. Weiner eds., 2d ed. 1989) ...... 17

## INTRODUCTION

Having no answer for the Legislature's argument that it satisfied all of the mandatory intervention elements—including because Wisconsin adopted just the type of legislative intervention statute that *Berger v. North Carolina State Conference of the NAACP*, 597 U.S. 179 (2022), held federal courts must honor—Defendants spend most of their Brief invoking generic separation-of-powers arguments just like the ones that failed in *Berger*. Defendants claim that defending a statute in court is executing that statute (except when the executive declines to defend that state law, in which case defending the statute is not executing it, for some reason). And since only the executive branch can execute state law, Defendants assert that Wisconsin violated the separation-of-powers doctrine by adopting a *Berger* statute that permits its legislature to defend state law in court. Defendants' argument fails, just as the analogous argument failed in *Berger*. Nothing in the Wisconsin Constitution, Wisconsin Supreme Court case law—or, indeed, any case from any other state of which the Legislature is aware—suggests that defending a law in court is executing that law, such that the executive branch has a "constitutional monopoly" on this task. *Berger*, 597 U.S. at 194. This Court should thus reverse the District Court's denial of the Legislature's request for mandatory intervention, honoring *Berger*'s holding.

There is also an alternative basis upon which this Court can grant full relief to the Legislature, including on appellate forfeiture grounds. The Legislature explained in detail in its Opening Brief that the District Court's basis for denying permissive intervention—that such intervention would violate the Wisconsin Constitution—is a

nonstarter under the Supremacy Clause and the Rules Enabling Act. Defendants' response to the Legislature's permissive intervention appeal is limited to one paragraph of argument, which does not even meaningfully address the Legislature's permissive intervention arguments. This lack of engagement with the Legislature's independent basis for intervention constitutes textbook appellate forfeiture, providing a clear path for resolving this appeal on a narrower ground.

## ARGUMENT

### I. Wisconsin Enacted A Legislative Intervention Statute Of Just The Type *Berger* Said Federal Courts Must Respect Under Rule 24(a)(2)'s Mandatory Intervention Analysis, And The District Court Had No Lawful Basis For Sidestepping That Clear Holding

#### A. Defendants' Arguments On Rule 24(a)'s Interest And Adequacy-Of-Representation Elements—The Only Elements That They Dispute On Appeal—Are Wrong, Including Under *Berger*

1. As the Legislature explained in its Opening Brief, the Legislature satisfied each of Rule 24(a)(2)'s four elements in light of *Berger*. Br.27–39. First, its motion was timely, as it moved less than a month after Plaintiff filed the Complaint and prior to any responsive pleadings. Br.27, 49. Second, the Legislature has an interest in this case under *Berger* because it has been duly authorized by the State to defend state law in court under Section 803.09(2m), Br.28–30, as this Court held in *Democratic National Committee v. Bostelmann*, 977 F.3d 639, 641 (7th Cir. 2020), after the Wisconsin Supreme Court answered this Court's certified question in *Democratic National Committee v. Bostelmann*, 949 N.W.2d 423, 426 (Wis. 2020). Third, this lawsuit directly impairs that interest because Plaintiff seeks an order striking down Act 126's "qualified elector" resident requirement. Finally, no other party adequately

represents that interest here. Br.33–39. Plaintiff is adverse. And Defendants do not adequately represent that interest because, under *Berger*, States can allocate the authority to represent their interests "among different officials who do not answer to one another," 597 U.S. at 191, "giv[ing] voice to [ ] different perspective[s]," *id.* at 198, and federal courts should respect that choice. *Id.* at 197–98. If more is needed, Defendants showed themselves unwilling to defend fully the "state's interests by looking at the whole electoral system" under *Luft v. Evers*, 963 F.3d 665, 671–72 (7th Cir. 2020). Instead, they have rested on less deferential pre-*Luft* cases for reasons that have nothing to do with fully defending state law; the same reasons that appear to explain Defendants' selective defense of other election laws. *See* Br.36–37.

2. Aside from Defendants' misguided arguments under standard separation-of-powers principles—addressed below, *see infra* pp.8–18—Defendants contest only two elements of the Legislature's intervention as of right: interest and adequacy of representation, Resp.30–37, but Defendants are wrong.

Defendants claim that the Legislature has no interest in defending state law under Section 803.09(2m). Resp.31–33. *Bostelmann* resolved this issue. In *Bostelmann*, the Wisconsin Supreme Court on certification from this Court held that Section 803.09(2m) "unmistakably grants the Legislature an interest in defending the validity of state law when challenged in court." 949 N.W.2d at 426. This Court then applied that decision in that same case, allowing the Legislature to defend duly enacted absentee voting laws as intervenor. *Bostelmann*, 977 F.3d at 641. Defendants claim that *Bostelmann* is distinguishable because it did not "determin[e]

[Section 803.09(2m)'s] constitutionality under the separation of powers," Resp.32–33, but that argument turns upon the meritless generic separation-of-powers theory that Defendants raise, addressed below. *See infra* pp.8–18.

Defendants also argue the Legislature has no interest sufficient for intervention in defending election laws here, claiming that *Virginia House of Delegates v. Bethune-Hill*, 587 U.S. 658 (2019), held "that legislative bodies have no such interests once a law has been enacted, and lawmaking is complete." Resp.33–34. That mischaracterizes *Bethune-Hill*, which analyzed a legislature's interest in the absence of a statute authorizing the legislative body to defend the state law on the State's behalf. *See Bethune-Hill*, 587 U.S. at 663–64, 671. Wisconsin enacted the type of statute missing in *Bethune-Hill* by adopting Section 803.09(2m), which makes the Legislature here just like the legislative leaders in *Berger* in all relevant respects.

Moving to the inadequacy-of-representation element, Defendants argue that the Legislature invokes *Berger* to "suggest[ ] that it need not show inadequacy at all." Resp.34–37. But the Legislature's argument is that it satisfied this element not only by pointing to *Berger*, but also by enacting Section 803.09(2m), which is the type of statute that the U.S. Supreme Court held that a State should enact if it wants its legislature to defend its laws in court, including federal court. When a State enacts such a statute, *Berger* explained, federal courts should "greet[ ]" the "State's chosen representatives . . . with respect," with a "minimal burden" in showing inadequacy, and without any "presumption of adequate representation." 597 U.S. at 197–98; *see* Br.34–35. Because Wisconsin authorized the Legislature by statute to defend its laws

by enacting Section 803.09(2m), and because Plaintiff challenges the constitutionality of Act 126 in this lawsuit, the Legislature readily satisfies its Rule 24(a)(2) minimal burden. Br.35.

Even if the Legislature needed to do more to meet its "minimal burden" to show inadequacy under *Berger*, 597 U.S. at 198, and Section 803.09(2m), it made that showing by arguing that it would raise "[d]ifferent defenses" than Defendants, *Driftless Area Land Conservancy v. Huebsch*, 969 F.3d 742, 749 (7th Cir. 2020); Br.36–37. The Legislature explained that it would argue to the District Court that this Court's decision in *Luft* provides the controlling articulation of the applicable *Anderson/Burdick* framework. 963 F.3d at 671. *Luft* was a critically important change in this Court's First Amendment/election-law-challenge jurisprudence, shifting the inquiry from the challenged provision alone to the electoral system as a whole. Before *Luft*, to decide whether an election law violated the First Amendment, the court weighed a law's burden against "the extent to which [it] serve[d] the State's interests," *Krislov v. Rednour*, 226 F.3d 851, 859 (7th Cir. 2000), "looking at [the] provision in isolation," *Luft*, 963 F.3d at 671. *Luft* changed that, holding that courts must weigh the burden of any election law "against the state's interests by looking at *the whole electoral system*." *Id.* at 671–72 (emphasis added). Under *Luft*, a State can "offset" "more stringent" burdens of one election law with the more "liberal" features of other laws, *id.* at 671; Br.36–37, making it easier for States to defend their laws.

Applying the *Luft* standard here instead of the pre-*Luft* precedent greatly increases the chances that Act 126 will survive this lawsuit. Under *Luft*, the court

must consider Act 126's place within Wisconsin's scheme to decide whether more lenient election requirements may "offset" any burden that Act 126 imposes. 963 F.3d at 671. While Plaintiff complains that Act 126 limits who it can hire as circulators for the candidates it supports, *Luft* requires the court to consider the many laws that make it easier for Plaintiff to select circulators as well. *Id.* Wisconsin allows any U.S. citizen "age 18 or older" who resides in a Wisconsin election district to qualify as a circulator. Wis. Stat. § 6.02(1); *see* 2025 Wis. Act 126 (allowing use of any "qualified elector" of Wisconsin). The resident need not be a registered voter or meet any other qualifications. Wis. Stat. § 6.02(1). And the "resident" need only have resided in Wisconsin for twenty-eight days. *Id.* Each of these requirements greatly increases the pool of persons Plaintiff can choose from to select its circulators. *See id.* Once the circulators are selected, other permissive features of Wisconsin's electoral system serve to ease Plaintiff's right to support candidates, such as the reasonable number of signatures required for nomination papers. *Id.* §§ 8.15, 8.16. Under the pre-*Luft* standard, however, such considerations do not control, because that standard looks to the challenged provision in "isolation." *Luft*, 963 F.3d at 671.

Defendants' failure even to cite this favorable, controlling precedent that makes it much easier to defend the election law at issue[1] cannot be explained by a

[1] Even during the pendency of this appeal, Defendants did not invoke the *Luft* standard in their summary judgment briefing. *See* Defs.' Br. In Supp. Of Summ. J. & In Opp'n To Pl.'s Summ. J. Mot., *Ams. for Citizen Voting PAC v. Wolfe*, No.2:26-cv-786 (E.D. Wis. Oct. 1, 2026), Dkt.51; *see also Daniel v. Cook Cnty.*, 833 F.3d 728, 742 (7th Cir. 2016) (explaining that courts "routinely take judicial notice of . . . the contents of filings in other courts").

desire to provide the most robust defense available for Act 126. Whatever Defendants' motives for not citing this favorable standard for defending Act 126, *Berger* authorized States to allocate the authority to represent their interests "among different officials who do not answer to one another," 597 U.S. at 191, "giv[ing] voice to [ ] different perspective[s]," *id.* at 198, including to avoid a situation where such a critical argument is left on the cutting-room floor by Plaintiff's hand-picked state defendants. Thus, *Berger* recognized the benefits of multiple "duly authorized representatives" if a State wants them. *Id.* at 191. *Berger* also noted that the defendants were "represented by an attorney general who, though no doubt a vigorous advocate for his clients' interests, is also an elected official who may feel allegiance to the voting public or share the Board's administrative concerns," *id.* at 198; *see also id.* at 186 (noting the attorney general's earlier "support of a legal challenge" against "an earlier voter-ID law"); *La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 308 (5th Cir. 2022).

On that score, while Defendants point out that undersigned counsel litigated *Luft* in his prior position as Wisconsin Solicitor General, Resp.36, they do not mention that the Wisconsin Attorney General—who is counsel for them in the present matter—represented the *Luft* plaintiffs in the district court while in private practice, when he worked at the law firm from which he launched his run for this current office. *See generally* Pls.' Opp'n to Wis.'s Mot. to Stay Inj. & Ruling Pending Appeal at 5–9, *One Wis. Inst., Inc. v. Thomsen*, No.3:15-cv-324, 2016 WL 11712203 (W.D. Wis. Aug. 9, 2016). Perhaps the Attorney General's failure to rely upon the favorable *Luft*

standard here stems from a larger mission to make it easier to allow plaintiffs of the type whom he sees as his political allies from his prior practice to challenge election laws in future cases. But this Court need not speculate over such potential political or personal motivations. It should simply honor *Berger*'s instruction to "respect" a State's decision to designate legislatures as "duly authorized representatives" of their interests in cases challenging state law, including where the State has so authorized multiple representatives. 597 U.S. at 191, 197–98.

Defendants' inconsistent record of defending or not defending state election laws when named as defendants also supports honoring *Berger*'s requirement that federal courts "respect" Wisconsin's "sovereign choice," *id.* at 200, to authorize multiple State representatives. *Contra* Resp.36–37. Contrary to Defendants' protestations, Resp.36, it is readily apparent why Defendants' still unexplained failure to defend multiple election laws in multiple other cases is relevant here. That Defendants are not able (or willing) to explain why they failed to defend or abandoned the defense of multiple other election laws—seemingly each time aligned with the interest of the Attorney General's political party and allies—creates more than enough uncertainty as to their intent to defend Act 126 fully here, and especially so when paired with their refusal to rely upon the favorable *Luft* standard.

### B. Defendants' Invocation Of Standard Separation-Of-Powers Principles Does Not Justify Defiance Of *Berger*'s Clear Holding

1. As the Legislature explained in its Opening Brief, the District Court erred in engaging in a generic separation-of-powers analysis here, in light of *Berger*. Br.41–42. *Berger* held that States have "a legitimate interest in the continued enforce[ment]

of [their] own statutes" and, to protect that interest, States can empower legislatures as "duly authorized representatives" "to participat[e] in federal litigation challenging state law." Br.40–43 (quoting *Berger*, 597 U.S. at 191–92); *see* Br.23–27. Thus, where a State has so authorized its legislature to defend state law in court, federal courts must accord "[a]ppropriate respect" for that sovereign choice. *Id.* at 191; Br.25–26.

But rather than respecting Wisconsin's sovereign choice, the District Court conducted its own separation-of-powers analysis, with reasoning that would render *Berger* meaningless. Br.41–43. The District Court invoked only standard separation-of-powers principles found in every State's constitution, not anything unique to Wisconsin's Constitution. Br.41. And the District Court's generic separation-of-powers analysis fails on its own terms. Br.43–48. *Berger* correctly explained that the executive branch does not have "a constitutional monopoly on representing [the State's] practical interests in court," 597 U.S. at 194; to the contrary, allowing legislatures to defend state law promotes "the separation of government powers," *id.* at 191 (citation omitted). Unsurprisingly, Wisconsin precedent is in accord. Indeed, the Wisconsin Supreme Court has held that the Legislature can constitutionally intervene under Section 803.09(2m) in at least some circumstances, meaning that the executive's power to defend law cannot be exclusive. *See Serv. Emps. Int'l Union, Loc. 1 v. Vos*, 946 N.W.2d 35, 56 (Wis. 2020) ("*SEIU*"), *overruled in part on other grounds by Evers v. Marklein*, 22 N.W.3d 789 (Wis. 2025).

2. Defendants' argument that *Berger* did not decide any state separation-of-powers issue, Resp.25–27, is wrong, *infra* Part I.B.2.a. And their unsupported

contention that "defending" law constitutes "executing" that law, Resp.11–15, is similarly mistaken, and would render *Berger* meaningless, *infra* Part I.B.2.b.

a. Defendants wrongly assert that *Berger* did not grapple with just the type of standard separation-of-powers arguments that they raise. In *Berger*, the Board (represented by the North Carolina Attorney General) argued that "authorizing the legislative leaders to participate here violate[s] the State Constitution by usurping authority vested in the executive branch." 597 U.S. at 193–94. The Supreme Court rejected that argument for two reasons. First, the Court found the Board's argument "hard to follow" given that it conceded "that the legislative leaders may intervene permissively under Rule 24(b), and likely as a matter of right under Rule 24(a)(2) if the attorney general ceases to represent the Board." *Id.* at 194 (emphasis omitted). Second, the Board failed to "identify anything to support its suggestion that the State's executive branch holds a constitutional monopoly on representing North Carolina's practical interests in court." *Id.* To the contrary, North Carolina law allowed the legislature to "determine the scope of the attorney general's powers." *Id.* These same reasons apply with equal force to all of Defendants' arguments here.

First, Defendants' argument here is also "hard to follow," *id.* at 194, given that Defendants have conceded that the Legislature can intervene to defend Wisconsin law in certain circumstances. Specifically, Defendants have conceded that defending state law "could be viewed as a shared" power where "the executive branch has declined to defend" a particular law, Att'y Gen.'s Resp. Br., *Serv. Emps. Int'l Union, Loc. 1 v. Vos*, No.2019AP614, 2019 WL 4645564, at *40 (Wis. Sept. 17, 2019), and

where "a constitutional power of the Legislature is implicated," Pet. for Bypass, *Disability Rts. Wis. v. Wis. Elections Comm'n*, No.2026AP535 (Wis. Aug. 26, 2026). Those concessions are irreconcilable with Defendants' position here. By not disputing that the Legislature can constitutionally defend state law when the executive branch does not do so, for example, Defendants necessarily concede that defending state law is not executing that law. Defendants do not even attempt to explain the "logic" of why the constitutional question of whether the legislature is executing state law when it defends that law in court turns on the litigation position that an executive branch official happens to take in that case. *Berger*, 597 U.S. at 194.

Second, like the Board in *Berger*, Defendants failed to identify anything in the relevant state constitution's text, history, or precedent supporting their suggestion that the State's "executive branch holds a constitutional monopoly on representing [the State's] practical interests in court." *Id.*

In *Berger*, the Board invoked North Carolina's explicit separation-of-powers provision to argue that legislators could not intervene to defend state law on behalf of the State, notwithstanding a state statute authorizing such intervention. Br. for State Resp'ts at 51, *Berger*, No.21-248 (citing N.C. Const. art. I, § 6).[2] For support, the Board pointed to standard separation-of-powers principles and state supreme court cases involving the state legislature unconstitutionally delegating certain

[2] Available at https://www.supremecourt.gov/DocketPDF/21/21-248/213767/20220209154050548_21-248%20Berger%20v%20NAACP%20-%20Brief%20of%20State%20Respondents.pdf (last visited Oct. 30, 2026).

authority to specific committees. *Id.* at 51–52. And the Board relied on the U.S. Supreme Court's separation-of-powers precedent, like *Buckley v. Valeo*, 424 U.S. 1 (1976) (per curiam), for the proposition that a legislature cannot have "final decision-making authority" over the executive. *Id.* at 53–54. Again, the U.S. Supreme Court in *Berger* rejected these arguments because nothing the Board pointed to demonstrated that the executive was the sole body authorized to represent North Carolina's interests in defending state law in court. *Berger*, 597 U.S. at 194.

Defendants here make much the same arguments that the Board made in *Berger*, which the U.S. Supreme Court rejected. Defendants point to generic separation-of-powers principles, including citing U.S. Supreme Court cases for the position that the legislative branch "may not 'invest itself'" with "executive power." Resp.15 (quoting *Metro. Wash. Airports Auth. v. Citizens for Abatement of Aircraft Noise, Inc.*, 501 U.S. 252, 274 (1991)). To the extent that Defendants point to any aspect of the Wisconsin Constitution at all, they simply note that that Constitution creates an executive vested with authority to execute law and a legislature empowered to make law. Resp.13–18. That is the same as the U.S. Constitution, *see* U.S. Const. art. I, § 1; *id.* art. II, § 1, and, presumably, the same as the constitutions of every other State, *see Ernst v. Rising*, 427 F.3d 351, 363 (6th Cir. 2005) ("[E]ach State embrace[s] the bedrock principle of a constitutional separation of powers."), including North Carolina, *Berger*, 597 U.S. at 193–94; N.C. Const. art. III, §§ 1, 5 ("The Governor shall take care that the laws be faithfully executed."). So, as in *Berger*, nothing Defendants cite demonstrates or even suggests that the Wisconsin executive

branch holds a "constitutional monopoly" over defending state law in court, notwithstanding Wisconsin's adoption of a *Berger* statute. 597 U.S. at 194. Further, just as in North Carolina, the Wisconsin Constitution authorizes the Legislature to "determine the scope of the attorney general's powers"—a point that *Berger* emphasized as to North Carolina. *Id. Compare* Wis. Const. art. VI, § 3 ("The powers, duties and compensation of the . . . attorney general shall be prescribed by law"), *with* N.C. Const. art. III, § 7(2) (Attorney General's "duties shall be prescribed by law").

Defendants here also followed the lead of the Board in *Berger* by citing state separation-of-powers cases that do not hold—or, indeed, even suggest—that the executive branch holds a "constitutional monopoly" over defending state law. 597 U.S. at 194. Defendants invoke three Wisconsin Supreme Court separation-of-powers cases, *SEIU*, *Evers v. Marklein*, 8 N.W.3d 395 (Wis. 2024) ("*Evers I*"), and *Kaul v. Wisconsin State Legislature*, 21 N.W.3d 513 (Wis. 2025). Resp.12–24. Those cases, like the North Carolina cases that the Board relied upon in making the same argument in *Berger*, do nothing to support Defendants' position that the Wisconsin Constitution forecloses the longstanding, common practice of legislatures defending duly enacted laws. *See INS v. Chadha*, 462 U.S. 919, 940 (1983) ("We have long held that Congress is the proper party to defend the validity of a statute when an agency of government, as a defendant charged with enforcing the statute, agrees with plaintiffs that the statute is inapplicable or unconstitutional.").

In *SEIU*, the Wisconsin Supreme Court *upheld* legislative intervention, including under Section 803.09(2m), against a facial constitutional challenge. 946

N.W.2d at 51–57. There, plaintiffs and the Attorney General argued that multiple statutory provisions allowing the Legislature or its committees to "participate in litigation involving the State" violated Wisconsin's separation-of-powers doctrine. *Id.* at 51. The Legislature defended the challenged state laws in that case without any complaint from the Attorney General that such a defense involved executing the law. *See* Opening Br. of Legislative Defs.-Pet'rs/Defs.-Appellants, *SEIU*, No.2019AP614, 2019 WL 3555270 (Wis. Aug. 1, 2019). The Attorney General conceded in his *SEIU* briefing that "defending a challenged statute that the executive branch has declined to defend could be viewed as a power that is shared by the executive and legislative branches." Att'y Gen.'s Resp. Br., *SEIU*, No.2019AP614, 2019 WL 4645564, at *40. Ultimately, the Wisconsin Supreme Court "agree[d]" with the Legislature that "the attorney general's power to litigate on behalf of the State is not, at least in all circumstances, within the exclusive zone of executive authority." *SEIU*, 946 N.W.2d at 54. The Court explained that it saw "no constitutional violation in allowing the legislature to intervene in litigation concerning the validity of a statute, at least where [the Legislature's] institutional interests are implicated." *Id.* at 56.

*Evers I*, for its part, only confirms that the Wisconsin Constitution follows the same separation-of-powers principles as in the U.S. Constitution. 8 N.W.3d at 401. In *Evers I*, the petitioners challenged a statute that gave a legislative committee a "legislative veto" over certain of the executive's expenditures, *id.* at 399, 406, and the Court struck the law down as an unconstitutional usurpation of executive authority, *id.* at 401–09. In so doing, the court reiterated basic separation-of-powers principles,

such as that the Legislature cannot "attempt to control the executive branch's ability to carry out the law." *Id.* at 405–06. And it adopted the same standard the U.S. Supreme Court laid out in *Chadha*. *Id.* at 406–09. *Evers I* did not suggest that defending state law was executing state law. *Id.* To the contrary, the fact that it endorsed the same standard as *Chadha* indicates that defending Wisconsin law is not an exclusive executive power because *Chadha* itself stated that Congress is the "proper party to defend" federal law in certain circumstances. 462 U.S. at 939–40.

*Kaul* likewise underscores that Wisconsin's separation-of-powers doctrine is not different from federal separation-of-powers principles. There, the Attorney General challenged a statute requiring the Wisconsin Department of Justice to obtain approval from a legislative committee before settling two specific categories of cases that he believed involved "core executive power." *Kaul*, 21 N.W.3d at 516–17. In holding the statute unconstitutional as applied to those specific circumstances, the Court laid out Wisconsin's general separation-of-powers principles, including relying upon the U.S. Supreme Court's decision in *Buckley* (the same case the Board in *Berger* cited). *Id.* at 521–23. The Wisconsin Supreme Court then went on to explain that "where the Legislature has an institutional interest rooted in the constitution, such cases may fall within the borderlands of shared powers." *Id.* at 523. So, *Kaul* reaffirms that Wisconsin's separation-of-powers doctrine mirrors the federal doctrine and supports *Berger*'s conclusion that the executive branch does not hold "a constitutional monopoly on representing [the State's] practical interests in court." 597 U.S. at 194.

Defendants also invoke a Wisconsin Court of Appeals decision—*Helgeland v. Wisconsin Municipalities*, 724 N.W.2d 208 (Wis. Ct. App. 2006), *aff'd*, 745 N.W.2d 1 (Wis. 2008), Resp.17–18—but that case involved no holding about the constitutionality of a statute authorizing legislative intervention to defend state law. In *Helgeland*, the plaintiffs challenged the constitutionality of certain employee health insurance statutes and the Legislature sought to intervene to defend those laws. 724 N.W.2d at 215–16. Because Section 803.09(2m) did not yet exist, the Court analyzed only whether the Legislature met the requirements for either intervention as of right or permissive intervention under then-extant rules. *Id.* at 216–20, 226–28. Put another way, the Legislature in *Helgeland* stood in the same position as the Virginia House of Delegates in *Bethune-Hill*, which similarly attempted to intervene in litigation without a *Berger* statute on the books. *Bethune-Hill*, 587 U.S. at 663–64; *see supra* p.4. With the passage of Section 803.09(2m), the Legislature cured its deficiency and can now "stand in for the State" here, *Bethune-Hill*, 587 U.S. at 663, making this case just like *Berger*. Nothing in *Helgeland* even arguably suggests that something in the Wisconsin Constitution stops this controlling analysis.

b. Because Defendants cannot point to any text, history, or case law to support their theory that the Wisconsin Constitution prohibits legislative intervention to defend the constitutionality of its own laws, the Court should just follow *Berger*'s clear holding. *Supra* pp.2–3. But to the extent the Court reaches Defendants' separation-of-powers argument notwithstanding *Berger*, nothing supports the conclusion that a state legislature defending its duly enacted laws constitutes "executing" those laws.

Defending a law in court is not executing that law. To "execute" a law means to "follow out" the law or "carry" it "into effect." 4 Oxford English Dictionary 520 (J.A. Simpson & E.S.C. Weiner eds., 2d ed. 1989). To "defend" a law means "to support or uphold by speech or argument"; to "deny, repel, oppose (the plaintiff's plea)." *Id.* at 377. The Legislature is not seeking to carry Act 126 into effect. It wants to file briefs as a party to defend that statute's constitutionality as an agent of the State. Defendants cite no case in which any appellate court, federal or state, has ever held that defending a law in court is executing that law.[3]

Defendants offer no cogent meaning that would equate defending a state law with executing that law, so they turn to a treatise by John Locke, Resp.14–15, which only shows how far afield their argument has strayed. There is nothing "danger[ous]"

---

[3] Defendants' citation of two out-of-state cases only confirms how unprecedented their theory is. Resp.24 n.5. Both cases involved a legislature's agency-like execution of laws, not defending duly enacted laws in court. In *State ex rel. Woods v. Block*, 942 P.2d 428 (Ariz. 1997), the challenged statute authorized an Arizona legislative council to "maintain[ ] control over an executive agency" by "initiat[ng] and pursu[ing]" "any action" concerning any law that would "further" the council's purpose. *Id.* at 435–36. And, in *Stockman v. Leddy*, 129 P. 220 (Colo. 1912), the Colorado legislature appropriated money to itself for the investigation and protection of Colorado's state waters. *Id.* at 221–23.

A Wisconsin trial court recently concluded that, as applied to the specific facts of that case, the Legislature's attempted intervention to defend state law violated Wisconsin's separation-of-powers principles. *See* Decision & Order Denying the Legislature's Mot. to Intervene, *Disability Rts. Wis. v. Wis. Elections Comm'n*, No.2024CV1141 (Wis. Cir. Ct. Dane Cnty. Jan. 26, 2026). The Legislature has appealed that decision to the Wisconsin Court of Appeals, District II. *See Disability Rts. Wis. v. Wis. Elections Comm'n*, No.2026AP535 (Wis. Ct. App.). Respectfully, it is exceedingly unlikely that the Circuit Court's order will survive appellate review. *Compare* Opening Br. of Intervenor-Defendant-Appellant the Wis. State Legislature, *Disability Rts. Wis.*, No.2026AP535 (July 13, 2026), *and* Reply Br. of Intervenor-Defendant-Appellant the Wis. State Legislature, *Disability Rts. Wis.*, No.2026AP535 (Aug. 27, 2026), *with* Br. of Pls.-Resp'ts, *Disability Rts. Wis.*, No.2026AP535 (Aug. 12, 2026).

about allowing a state legislature to submit a brief defending the constitutionality of state laws. *Contra* Resp.14–15. To the contrary, allowing States to "allocate authority among different officials who do not answer to one another" fosters the "separation of government powers." *Berger*, 597 U.S. at 191.

Finally, it bears special emphasis that Defendants have no meaningful answer to the Legislature's point that the District Court's approach would render *Berger* a nullity. Br.41–42. Defendants' theory is as simple as it is unprecedented: defending a statute in court is executing that statute, and legislatures cannot execute statutes (except, for some reason, if the executive chooses not to defend the specific law). Resp.17–24. Defendants argue that under their theory, *Berger* could still apply when "multiple executive branch officials represent their interests in court." Resp.29. But *Berger* considered whether two members of a "*state legislature* [were] entitled to" participate in the case. *Berger*, 597 U.S. at 183 (emphasis added). Defendants also posit that *Berger* may apply in some other States because "the separation of powers question is unlikely to be uniform across all States." Resp.30. But Defendants' argument is that defending state law is executing that law, and Defendants do not cite any state constitution that permits a legislature to execute law.

## II. Given Defendants' Failure To Develop Any Arguments In Defense Of The District Court Denying The Legislature Permissive Intervention Under Rule 24(b)(1)(B), This Court Can Simply Dispose Of This Appeal On This Ground, Including Under The Doctrines Of Appellate Forfeiture And Constitutional Avoidance

A. As the Legislature explained in its Opening Brief, it satisfied the requirements for permissive intervention because it timely moved for intervention, it

brought "different interests and perspectives" that will assist the courts in fulfilling their duty to "say what the law is," and its participation would not present any practical difficulties or delays. Br.48–50 (citations omitted). The District Court's only basis for denying permissive intervention—that granting permissive intervention would violate the Wisconsin Constitution—is contrary to the Supremacy Clause and the Rules Enabling Act. Br.52–54. That is because intervention under Rule 24(b) is a federal-law inquiry regarding "a purely procedural right," and so "even in a diversity suit it is the Federal Rules of Civil Procedure rather than state law that dictate the procedures, including who may intervene." Br.48 (citing *Williams v. Katz*, 23 F.3d 190, 192 (7th Cir. 1994)). So, by relying on state-constitutional-law principles to trump this federal inquiry, the District Court inverted the supremacy of federal law over state law. Br.52. In any event, even if this issue arose in Wisconsin courts, the District Court's separation-of-powers reasoning would not apply because in Wisconsin permissive intervention is "an exercise of the judiciary's constitutional authority," such that courts can admit any party they consider necessary to assist courts in fulfilling their "duty to say what the law is." Br.54 (citations omitted).

B. Defendants devote just three paragraphs to permissive intervention, only one of which consists of actual argument. Resp.37–38. Defendants do not contest that the Legislature meets both permissive intervention elements. Br.49; Resp.37–38. Defendants do not dispute that the Legislature's participation would further the additional principles of permissive intervention, including that its intervention would not cause delay or prejudice to any party. Br.49–50; Resp.37–38. Defendants do not

contest that the District Court violated the Supremacy Clause by interpreting the Wisconsin Constitution to limit permissive intervention under Federal Rule of Civil Procedure 24(b). Br.52–53; Resp.37–38. Defendants mention the Supremacy Clause only as that relates to the Legislature's mandatory intervention arguments under *Berger*. *See* Resp.27–28 (citing to Br.20, 40, 43, which are all cites to arguments in the Legislature's mandatory intervention section under *Berger*). Defendants do not dispute that principles of constitutional avoidance weigh in favor of deciding this appeal on grounds of permissive intervention. Br.50–52; Resp.37–38. And Defendants do not dispute the Legislature's argument that if this issue arose in state court, their separation-of-powers arguments would not apply because, in Wisconsin, whether to grant permissive intervention is a matter of the judiciary's constitutional authority.

The few points Defendants attempt to make are so abbreviated as to constitute forfeiture. *Bradley v. Vill. of Univ. Park, Ill.*, 59 F.4th 887, 897–98 (7th Cir. 2023) (collecting cases); *McCottrell v. White*, 933 F.3d 651, 670 n.12 (7th Cir. 2019) (finding "single-sentence argument" waived); *Dalton v. Teva N. Am.*, 891 F.3d 687, 692 (7th Cir. 2018) (holding "one sentence" and "inadequately briefed" argument "forfeited"). In response to the Legislature's robust explanation of how it met the permissive intervention requirements and why the Supremacy Clause forecloses the District Court's approach, Br.48–54, Defendants dedicate a single sentence to their contention that a district court has "wide latitude" in allowing permissive intervention and half a sentence to their argument that Wisconsin's separation-of-powers doctrine prohibits the Legislature's permissive intervention here, Resp.37–38. That is

forfeiture of any response. *Bradley*, 59 F.4th at 897–98; *McCottrell*, 933 F.3d at 670 n.12. And while Defendants tout the District Court's broad discretion in deciding permissive intervention motions, Resp.37–38, a district court abuses its discretion when it makes its decision based upon an error of law, *Sutton v. Pfister*, 834 F.3d 816, 821 (7th Cir. 2016). And here, the Legislature showed that the District Court committed multiple errors of law, which Defendants do not meaningfully address in their appellate briefing.

Defendants' failure to engage with the Legislature's arguments on these points allows this Court to decide this appeal on permissive intervention grounds, including based upon principles of appellate forfeiture and constitutional avoidance.

## CONCLUSION

This Court should reverse the order of the District Court and remand with instructions to the District Court to grant the Legislature's Motion To Intervene.

Dated: October 30, 2026

Respectfully submitted,

/s/ Misha Tseytlin

CARSON A. COX
TROUTMAN PEPPER LOCKE LLP
1001 Haxall Point, 15th Floor
Richmond, VA 23219
(804) 697-1338
carson.cox@troutman.com

ALEXANDER J. HILL
TROUTMAN PEPPER LOCKE LLP
600 Peachtree St. NE #3000
Atlanta, GA 30308
(404) 885-2763
alex.hill@troutman.com

MISHA TSEYTLIN
*Counsel of Record*
KEVIN M. LEROY
TROUTMAN PEPPER LOCKE LLP
225 W. Randolph St., Suite 2600
Chicago, IL 60606
(608) 999-1240 (MT)
(312) 759-1938 (KL)
(312) 443-0336 (fax)
misha.tseytlin@troutman.com
kevin.leroy@troutman.com

*Counsel for Proposed Intervenor Wisconsin State Legislature*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), I certify the following:

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) and Circuit Rule 32(c) because it contains 5,733 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and Circuit Rule 32(b), and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6), because it has been prepared in a proportionately spaced typeface using Microsoft Word in 12-point Century Schoolbook font.

Dated: October 30, 2026

/s/ *Misha Tseytlin*
MISHA TSEYTLIN

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of October, 2026, I filed the foregoing with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to all registered CM/ECF users.

Dated: October 30, 2026

/s/ *Misha Tseytlin*
MISHA TSEYTLIN